IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00985-RPM

Coors Brewing Company,

       Plaintiff,

v.

Jacobs Engineering Group Inc.,
Jacobs Construction Services, Inc.,

       Defendants.

---

## Jacobs' Motion for Partial Summary Judgment
### (1) Against Coors' Tort Claims and
### (2) Enforcing the Contracts' Limitation of Liability Clauses

---

Table of Contents

Table of Contents ............................................................................................................ i

Table of Authorities ................................................................................................. ii-iii

Introduction ..................................................................................................................... 1

Early Resolution is Important ..................................................................................... 2

Undisputed Facts ........................................................................................................... 3

Argument and Legal Authority ................................................................................... 5

I.    Coors' Tort and Unjust Enrichment Claim Fail as a Matter of
Virginia and Colorado Law ................................................................... 5

    A.    Count 2: Breach of Fiduciary Duty Against JEG Fails ................................. 6

    B.    Counts 3 and 6: Negligence Against JEG and JCS Fails ............................ 9

    C.    Count 4: Negligent Misrepresentation Against JEG Fails ........................ 11

    D.    Count 7: Unjust Enrichment Against Both JEG and JCS Fails ................. 13

II.    The Limitation of Liability Clauses in the  Project Agreement and the
Alliance Agreement Are Valid and Enforceable ................................. 15

    A.    The Project Agreement's Limitation of Liability Clause
Applies to All Coors' Claims Against Jacobs in this Action .................... 16

        1.    All Coors' Claims "Aris[e] Out of the Project" ............................ 16

            a.    Counts 1-4 Against JEG "Aris[e] out of the
Project" and Are Subject to the Limitation of
Liability Clause ................................................................. 17

            b.    Counts 5 and 6 "Aris[e] out of the Project" and
Are Subject to the Limitation of Liability Clause ............. 18

            c.    Count 7 "Aris[es] out of the Project" and Is
Subject to the Limitation of Liability Clause .................... 19

2. The Exceptions to the Limitation of LiabilityClause Do Not Apply.................................................................... 20

3. The Limitation of Liability Clause Limits Jacobs' Total Potential Liability for All Coors' Claims to the Amount of Jacobs' "Fee"............................................................ 21

B. Virginia Law Rejects Coors' Likely Attempts to Avoid the Contractual Limitation of Liability Clause.................................22

1. The Virginia Supreme Court Regularly has Approved of Contracts Limiting, or Even Eliminating Altogether, a Contracting Party's Liability...................................................... 22

2. The Virginia Legislature Expressly Permits Engineers to Enter into Agreements that Limit their Liability .......................... 25

3. A Federal District Court in Virginia has Created a Test for the Enforceability of Limitation of Liability Clauses under Virginia Law, and the Project Agreement's Limitation of Liability Clause Easily Passes the Test ................. 27

C. The Reperformance Clause in the Alliance Agreement Limits Coors' Remedy for Any Allegedly Deficient Services Provided under that Agreement to Reperformance of Such Services at No Cost to Coors...................................................................30

1. The Reperformance Clause Applies To All Coors' Claims Against JEG, Counts 1-4 and 7 ....................................... 31

2. The Reperformance Clause Is Enforceable................................. 32

III. Conclusion ............................................................................................... 33

Certificate of Service ............................................................................................35

## Table of Authorities

### Cases

*1745 Wazee LLC v. Castle Builder, Inc.*,
  89 P.3d 422 (Colo. App. 2003) ........................................................................... 29, 33

*Augusta Mutual Ins. Co. v. Mason*,
  645 S.E.2d 290 (Va. 2007) ...................................................................................... 8

*Blake Construction Co. v. Alley*,
  353 S.E.2d 724 (Va. 1987) .................................................................................... 10

*BRW Inc. v. Dufficy & Sons, Inc.*,
  99 P.3d 66 (Colo. 2004) ......................................................................... 6, 7, 10, 12

*C&O Railway Co. v. Clifton Forge-Waynesboro Tel. Co.*,
  224 S.E.2d 317 (Va. 1976) ............................................................................... 19, 24

*City of Westminster v. Centric-Jones Constructors*,
  100 P.3d 472 (Colo. App. 2003) ..................................................................... 6, 10

*Ellis & Myers Lumber Co. v. Hubbard*,
  96 S.E. 754 (Va. 1918) ......................................................................................... 13

*Estes Express Lines, Inc. v. Chopper Express, Inc.*,
  641 S.E.2d 476 (Va. 2007) .................................................................................... 24

*Fidelity & Casualty Co. of N.Y. v. Copenhaver Contracting Co.*,
  165 S.E. 528 (Va. 1932) ....................................................................................... 22

*Filak v. George*,
  594 S.E.2d 610 (Va. 2004) ............................................................................... 6, 12

*Foreign Mission Bd. v. Wade*,
  409 S.E.2d 144 (Va. 1991) ...................................................................................... 6

*Hiett v. Lake Barcroft Community Assoc., Inc.*,
  418 S.E.2d 894 (Va. 1992) ............................................................................... 24, 28

*Hubert v. Cowan*,
  501 P.2d 1352 (Colo. App. 1972) ......................................................................... 13

*Interbank Invs., LLC v. Eagle River Water and Sanitation Dist.,*
    77 P.3d 814 (Colo. App. 2003) .................................................................... 13, 14

*Jones v. Dressel,*
    623 P.2d 370 (Colo. 1981) ................................................................. 24, 28, 32

*Kocinec v. Public Storage, Inc.,*
    489 F. Supp. 2d 555 (E.D. Va. 2007) ........................................... 27, 28, 29, 30

*Lewis v. Lewis,*
    --- P.3d ----, 2008 WL 2581563 (Colo. 2008) ......................................... 13

*Maupin v. Whiting,*
    1 Call 224 (Va. 1798) ..................................................................... 13

*Nedrich v. Jones,*
    429 S.E.2d 201 (Va. 1993) ............................................................... 13

*Nido v. Ocean Owners' Council,*
    378 S.E.2d 837 (Va. 1989) ............................................................... 24

*O'Connell v. Bean,*
    556 S.E.2d 741 (Va. 2002) ................................................................. 8

*P.J. Berry Co. v. Denver Am. Family Lodge West, Inc.,*
    663 P.2d 264 (Colo. App. 1983) ........................................................ 13

*Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.,*
    507 S.E.2d 344 (Va. 1998) ........................................................ 5, 11, 12

*Rinehart v. Pirkey,*
    101 S.E. 353 (Va. 1919) ................................................................... 13

*Ripley Heatwole Co. v. John E. Hall Electrical Contractor, Inc.,*
    69 Va. Cir. 69, 2005 WL 4827398 (Va. Cir. Ct. 2005) ............................ 29

*Sensenbrenner v. Rust, Orling & Neale,*
    374 S.E.2d 55 (Va. 1988) ............................................................. 10, 21

*Town of Alma v. Azco Construction, Inc.,*
   10 P.3d 1256 (Colo. 2000) ................................................................................. 12, 15

*Virginia Transformer Corp. v. P.D. George Co.,*
   932 F. Supp. 156 (W.D. Va. 1996) ........................................................................ 12

<u>Miscellaneous</u>

VA. CODE ANN. § 54.1-411 ............................................................................ 25, 26, 27

26 WILLISTON ON CONTRACTS § 68:1 ...................................................................... 14

REST. (2D) CONTRACTS § 376 .......................................................................... 14, 28

Defendants Jacobs Engineering Group Inc. ("JEG") and Jacobs Construction Services, Inc. ("JCS," and collectively with JEG, "Jacobs") respectfully request that this Court grant partial summary judgment against plaintiff Coors Brewing Company's ("Coors") tort and unjust enrichment claims (Counts 2-4, 6, and 7), and enforce these sophisticated parties' agreed limitations of liability contained in their written contracts.

<u>Introduction</u>

Coors alleges in its Complaint that Jacobs provided deficient services in connection with the construction of Coors' new brewing facility in Elkton, Virginia (the "Project"). Coors alleges that Jacobs provided services for the Project pursuant to a Construction Services Agreement dated April 11, 2005 (the "Project Agreement," attached as Exhibit B to Coors' Complaint), and to a lesser extent also pursuant to an Engineering Services Agreement dated May 17, 1999 and subsequently amended numerous times (the "Alliance Agreement," attached as Exhibit A to Coors' Complaint). (Compl. ¶¶ 4, 5.)

All of Coors' claims against Jacobs seek recovery for economic losses allegedly caused by Jacobs' failure to perform its duties under these two contracts. This is a contract dispute.

- Coors has alleged that JEG provided deficient services under the Alliance Agreement and that JCS provided deficient services under the Project Agreement. Although Coors brought several tort and unjust enrichment claims against both JEG and JCS, these claims allege nothing more than that JEG and JCS failed to properly perform their duties under the two contracts.

- The Project Agreement is governed by Virginia law, and the Alliance Agreement is governed by Colorado law. Under Virginia and Colorado law, tort and unjust enrichment claims based on the alleged failure to perform contractual duties are not cognizable claims and should be dismissed.

Jacobs seeks partial summary judgment dismissing Coors' tort and unjust enrichment claims because these causes of action, as alleged, fail as a matter of law. This purely legal issue

may be resolved without discovery to determine the truth or falsity of Coors' underlying allegations.

The Project Agreement and the Alliance Agreement contain unambiguous, bargained-for, written provisions that expressly limit Jacobs' liability to Coors for the kinds of claims Coors is asserting against Jacobs in this case.

- The limitation of liability provision in § 23.2 of the Project Agreement limits Coors' total recovery in this action to the amount of the "fee" that Coors pays Jacobs under that agreement.

- The limitation of liability provision in § 3.2 of the Alliance Agreement limits Coors' recovery for any deficiencies in services provided under that agreement to the reperformance of such services at no cost to Coors.

The extent to which these two contractual limitation of liability provisions limit Jacobs' liability for the claims in Coors' Complaint is a purely legal question appropriate for summary judgment.  There are no genuine issues of disputed material fact.  Even so, prior to and in connection with filing this motion, Jacobs has invited Coors to identify and request, formally or informally, particular discovery materials, if any, that Coors claims it needs in order to respond. Jacobs again confirms that, if Coors does identify such particular discovery materials that it legitimately claims it needs in order to respond to this motion, then Jacobs will agree to extend Coors' response date and will accommodate any such legitimate requests.

<u>Early Resolution is Important</u>

The sophisticated parties in this case agreed in writing to limit Jacobs' liability to the amount of its profit, or "fee," on this project – approximately $4.3 million – and did so with the assistance of counsel in an arms-length negotiation.  Despite its written, informed agreement to limit Jacobs' liability, Coors improperly seeks $85 million in damages, as reflected in Coors'

"computation of damages" on page 20 of the Court's August 6, 2008 Scheduling Order.

The early resolution of the issues raised in this motion will help the parties more efficiently litigate this case. The parties' almost certainly will litigate (and perhaps be able to resolve) this case differently depending on whether the amount properly at issue is $4.3 million or $85 million. This Court should enforce the parties' written agreement to limit liability, and should not countenance Coors' improper attempt to seek damages *twenty times higher* than the limit to which it agreed.

<u>Undisputed Facts</u>

The following undisputed facts come straight out of Coors' Complaint and the exhibits to the Complaint, including the Project Agreement and the Alliance Agreement.

Coors attached the Project Agreement as Exhibit B to its Complaint. The Project Agreement is a "cost-plus-fee" contract under which Coors agreed to pay Jacobs for all costs of the project plus a profit, or "fee," of 1.3% of the total installed cost. Section 1.5 of the Project Agreement provides that the "<u>Contract Sum</u> is that amount to be paid, on a cost-plus-incentive basis, to [JCS] for the performance of the Work. The provisions relating to the Contract Sum and commercial agreement are set forth on Exhibit A." Exhibit A to the Project Agreement is titled "Contract Sum – Payment Provisions" and says in all capital letters across the top that "CONTRACTOR SHALL BE PAID ON A **COST PLUS FEE (FIXED PLUS INCENTIVE)** BASIS AS DESCRIBED BELOW" and provides that Coors will pay Jacobs a "maximum Fee of 1.3% of Total Installed Cost." (Emphasis in original).

Coors alleges in ¶ 40 of its Complaint that "[t]he total installed cost of the Project exceeded $333,000,000." Thus, as specified in Exhibit A to the Project Agreement, Jacobs

"maximum Fee" is approximately $4.3 million.

Section 23.2 of the Project Agreement is referred to as the "Limitation of Liability Clause" and provides:

> Limitation of Liability. This Agreement is intended to set forth the Parties' *sole and exclusive remedies for any and all claims arising out of the Project* to the extent covered by Exhibit J and Sections 13.2 and 13.3. For claims other than those associated with CONTRACTOR's indemnification obligations hereunder, arising out of the Project and are not covered by Exhibit J and Sections 13.2 and 13.3, *CONTRACTOR's liability shall not exceed the Fee as specified in Exhibit A.* Any and all releases, limitations on liability, restrictions, exclusions, or indemnities running in favor of a Party to this Agreement shall *include in the aggregate the parent or affiliated or subsidiary companies*, and their officers, directors, employees, agents and representatives of that Party.

(All emphasis in this motion is added unless otherwise stated.)

The parties to the Project Agreement are Coors and JCS. (Compl. ¶ 5; Answer ¶ 5.) JEG is JCS's parent company and, thus, is within § 23.2's protective scope. *See* Dickinson Affidavit at ¶ 2 (attached as Exhibit A-1). Section 26.8 of the Project Agreement provides, and the parties agree, that Virginia law governs the Project Agreement, including the Limitation of Liability Clause. (Compl. ¶ 49; Answer ¶ 49.)

Section 3.2 of the Alliance Agreement is referred to as the "Reperformance Clause" and provides:

> During the performance of its services and for a period of twelve (12) months after its services are completed, JE shall without additional compensation correct or revise any errors or deficiencies in its designs, drawings, specifications or other services provided pursuant to this Agreement. Excluding JE's liabilities under Article 8, the foregoing provisions of this Section 3.2 express the *exclusive remedies of CBC for deficiencies in the services, whether asserted on the basis of contract, negligence, or otherwise*.

The parties to the Alliance Agreement are Coors and JEG. (Compl. ¶ 3; Answer ¶ 3.) Section 29 of the Alliance Agreement provides, and the parties agree, that Colorado law governs the

Alliance Agreement, including the Reperformance Clause.  (Compl. ¶ 11; Answer ¶ 11.)

Interpreting the reach of these two liability-limiting provisions raises a purely legal question, calling for a legal construction of these two provisions in light of Coors' allegations. Jacobs asks that this Court determine the extent to which these two liability-limiting provisions, by their plain and unambiguous terms, limit the damages Coors can recover for the claims it asserts against Jacobs.  The factual disputes as to the merits of Coors' underlying claims – Jacobs strongly disputes Coors' allegations – are not relevant to the purely legal issues raised in this motion.

Argument and Legal Authority

Part I explains that Coors' tort and unjust enrichment claims fail as a matter of law.  Part II explains that the limitation of liability provisions in the Project Agreement and the Alliance agreement are valid and enforceable as a matter of law.

I.

Coors' Tort and Unjust Enrichment Claims
Fail as a Matter of Virginia and Colorado Law

Courts in both Virginia and Colorado, including both states' highest courts, have consistently rebuffed efforts by litigants to turn contract claims into tort claims, as Coors seeks to do here.

In *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344 (Va. 1998), the Virginia Supreme Court explained that, under Virginia law, although a party "can, in certain circumstances, show both a breach of contract and a tortious breach of duty," "'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'"  *Id.* at 347 (quoting *Foreign Mission Bd. v. Wade*, 409

S.E.2d 144, 148 (Va. 1991)).  In *Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004), the Virginia Supreme Court explained that "[t]he law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society."

Contract claims masquerading as tort claims have fared no better in Colorado.  In *Town of Alma v. AZCO Construction, Inc.*, 10 P.3d 1256, 1264 (Colo. 2000), the Colorado Supreme Court held, under Colorado law, "that a party suffering only economic loss from a breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law.  Economic loss is defined generally as damages other than physical harm to persons or property."  *See also BRW Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004) ("If . . . the duty of care owed by [the defendants] was memorialized in the contracts, it follows that the plaintiff has not shown any duty independent of the interrelated contracts and the economic loss rule bars the tort claim and holds the parties to the contracts' terms."); *City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 482-84 (Colo. App. 2003) (applying "economic loss rule" to preclude tort suit between two parties to a commercial construction contract).

Under both Virginia law and Colorado law, the Court should dismiss Coors' tort and unjust enrichment claims because they all are based entirely on Jacobs' alleged breaches of contractual duties and none of them involve alleged violations of any "duties involving the safety of persons and property."

A.    <u>Count 2: Breach of Fiduciary Duty Against JEG Fails</u>

Coors alleges in Count 2 of its Complaint that:

- "JEG agreed to comply with the National Society of Professional Engineers Code of Ethics in performing its services under the Alliance Agreement" (Compl. ¶ 20 (citing Alliance Agreement § 3.1));

- "The National Society of Professional Engineers Code of Ethics required JEG to act for Coors as its faithful agent or trustee" (Compl. ¶ 21); and

- JEG breached this "fiduciary duty" (*i.e.*, the duty "to act for Coors as its faithful agent or trustee") "by, among other things, failing to adequately prepare its cost estimate for the Project" (Compl. ¶ 23).

In short, Coors alleges that JEG *contractually agreed* to take on the fiduciary duties enumerated in the National Society of Professional Engineers Code of Ethics ("NSPE Code"), and then breached these fiduciary duties by failing to adequately perform certain estimating services it had contracted to provide to Coors under the Alliance Agreement. (*See* Compl. ¶ 4 ("Under the Alliance Agreement, JEG provided . . . estimating . . . services for Coors on [the Project]."

The Colorado Supreme Court contemplated this precise situation in *BRW Inc.*, 99 P.3d at 74, and held that when a tort claim alleges breach of a duty of care that "was memorialized in the contracts" between the plaintiff and defendant, "it follows that the plaintiff has not shown any duty independent of the interrelated contracts and the economic loss rule bars the tort claim and holds the parties to the contracts' terms." Here, Coors' own allegations state that the fiduciary duty allegedly breached ("to act for Coors as its faithful agent or trustee") existed *because JEG agreed as part of the Alliance Agreement to comply with the NSPE Code*. This duty, as Coors admits, was "memorialized in the contracts" between the parties, in section 3.1 of the Alliance Agreement (*see* Compl. ¶ 20). As the Colorado Supreme Court explained in *BRW Inc.*, the economic loss rule bars any tort claim predicated on a breach of this duty, including Coors' breach of fiduciary duty claim in Count 2.

Virginia law is identical in all relevant respects. In Virginia, a plaintiff cannot maintain a

tort claim for breach of fiduciary duty where the fiduciary duty allegedly breached "existed solely because of the contractual relationship" between the parties. *Augusta Mutual Ins. Co. v. Mason*, 645 S.E.2d 290, 295 (Va. 2007). In *Augusta Mutual*, the Virginia Supreme Court held that although an insurance agent did owe fiduciary duties, as an agent, to the insurance company (the principal) for whom she was working, she only owed those duties to the insurance company because of the written Agency Agreement she had executed with the company. *Id.* Although it was true that some of the agent's fiduciary duties "arose by implication" rather than by the express terms of the contract, that did not alter the result, which was that the insurance company could not assert a valid tort claim for breach of fiduciary duty against the agent. *Id.* The insurance company's only claims against the agent, including for breach of implied fiduciary duties, were wholly contractual in nature. *Id.* Similarly, in *O'Connell v. Bean*, 556 S.E.2d 741, 743 (Va. 2002), the Virginia Supreme Court held that a client's allegations of breach of fiduciary duty and constructive fraud against her attorney were "actions for breaches of the implied terms of [the attorney's] contract," and not tort actions.

Any fiduciary duty JEG allegedly had "to act for Coors as its faithful agent or trustee" existed by virtue of the parties' contract. (Compl. ¶ 20 (citing Alliance Agreement § 3.1).) Moreover, Coors alleged that JEG breached this duty by failing to properly perform another duty that "existed solely because of the contractual relationship" between the parties – JEG's duty "to adequately prepare its cost estimate for the Project." As in *Augusta Mutual* and *O'Connell*, under Virginia law Coors' allegations in Count 2 state at most a claim for breach of contract between Coors and JEG. Because Coors has not alleged (and could not prove) any breach of a fiduciary duty that existed outside and independent of Coors' and JEG's contractual relationship,

Coors has not stated a valid tort claim for breach of fiduciary duty under Virginia law.

  This Court should dismiss Count 2 of Coors' Complaint.

B.  <u>Counts 3 and 6: Negligence Against JEG and JCS Fails</u>

  Coors alleges in Count 3 that JEG committed negligence by breaching duties "to provide planning, estimates, designs, drawings, specifications, and other services reflecting the highest professional quality, and reasonable care and skill usually exercised by design professionals, engineers, or architects and as otherwise applicable." (Compl. ¶¶ 28, 29.) But as Coors acknowledges elsewhere in its Complaint, these alleged duties were if anything *contractual* duties. (Compl. ¶¶ 12, 13).[1]

  Count 6 alleges that JCS committed negligence by breaching duties "to provide design, engineering, construction, and other services using the ordinary and reasonable care and skill usually exercised by design professionals, engineers, or architects and as otherwise applicable." (Compl. ¶¶ 66, 67.) Again, however, as Coors acknowledges elsewhere in its Complaint, these alleged duties were if anything *contractual* duties. (Compl. ¶¶ 50-52, 54.)

  Because both negligence counts allege the breach of duties assumed by JEG and JCS under the two agreements, these claims are invalid under both Colorado and Virginia law and should be dismissed. Coors is limited to its contractual remedies.

  Virginia, like Colorado, has adopted the "economic loss" rule, which provides that negligence claims cannot be brought when the damage or loss alleged is "purely economic loss" caused by a party's failure to properly perform under a contract. *Blake Construction Co. v.*

---

[1] For instance, paragraph 12 of Coors' Complaint alleges that "[t]he Alliance Agreement provided, among other things, that JEG was responsible to Coors for the professional quality, the technical accuracy, and the performance and coordination of all designs, drawings, specifications, and other services provided by JEG." Paragraph 13 alleges that "[a]ll services provided by JEG under the Alliance Agreement were required to be of the 'highest professional quality'" (quoting Alliance Agreement § 3.1).

*Alley*, 353 S.E.2d 724, 726 (Va. 1987).   *Compare Town of Alma*, 10 P.3d at 1264 (similar

holding by Colorado Supreme Court under Colorado law); *BRW Inc.*, 99 P.3d at 74 (same); *City

of Westminster*, 100 P.3d at 482-84 (Colorado appellate court applying economic loss rule to

preclude negligence claims between two parties to a commercial construction contract).   "There

can be no actionable negligence where there is no breach of a duty '"to take care for the safety of

the person or property of another."'"   *Blake Construction*, 353 S.E.2d at 726 (quoting two earlier

Virginia Supreme Court decisions).

In *Sensenbrenner v. Rust, Orling & Neale*, 374 S.E.2d 55, 58 (Va. 1988), the Virginia

Supreme Court explained the distinction as follows:

> Tort law is not designed . . . to compensate parties for losses suffered as a result of
> a breach of duties assumed only by agreement.   That type of compensation
> necessitates an analysis of the damages which were within the contemplation of
> the parties when framing their agreement.   It remains the particular province of
> the law of contracts.
>
> The controlling policy consideration underlying tort law is the safety of persons
> and property – the protection of persons and property from losses resulting from
> injury.   The controlling policy consideration underlying the law of contracts is the
> protection of expectations bargained for.   If that distinction is kept in mind, the
> damages claimed in a particular case may more readily be classified between
> claims for injuries to persons or property on one hand and economic losses on the
> other.

*Id.* at 58 (internal citation omitted). The Virginia Supreme Court at least twice has applied the

above distinction to hold that allegations of negligence against architects and builders sounded in

contract and not in tort. *See id.* at 56, 58; *Blake Construction*, 353 S.E.2d at 725, 727; *compare

City of Westminster*, 100 P.3d at 482-84 (Colorado appeals court holding that economic loss rule

precludes negligence claims between parties to a commercial construction contract). The *Blake

Construction* court's holding is particularly relevant here:

> The parties involved in a construction project resort to contracts and contract law to protect their economic expectations. Their respective rights and duties are defined by the various contracts they enter. Protection against economic losses caused by another's failure properly to perform is but one provision the contractor may require in striking his bargain. Any duty on the architect in this regard is purely a creature of contract.

*Blake Construction*, 353 S.E.2d at 727. In short, "[a] tort action cannot be based solely on a negligent breach of contract." *Richmond Metro.*, 507 S.E.2d at 347.

Coors' negligence claims against JEG and JCS seek recovery of purely economic damages caused by JEG's and JCS's alleged failures to properly perform contractual duties. Count 3 seeks recovery of "costs and expenses suffered by Coors" allegedly because of "JEG's deficient services" (Compl. ¶¶ 30, 31), while Count 6 seeks recovery of "costs and expenses suffered by Coors" allegedly because of "JCS's deficient services" (Compl. ¶¶ 68, 69). Coors nowhere alleges that either JEG or JCS harmed Coors by causing destruction of property or injury to persons – nor could Coors plausibly do so. Both of Coors' negligence claims seek recovery only for "economic losses caused by another's failure properly to perform" contractual duties, *Blake Construction*, 353 S.E.2d at 727 – here, the additional "costs and expenses" allegedly "suffered by Coors" because of JEG's and JCS's alleged failures to provide adequate services under the two contracts. Neither claim alleges any breach of a "duty '"to take care for the safety of the person or property of another."'" *Id.* at 726. Both negligence counts accordingly fail to state valid claims under either Colorado or Virginia law.

This Court should dismiss Count 3 and Count 6 of Coors' Complaint.

C.   Count 4: Negligent Misrepresentation Against JEG Fails

Coors' Count 4 for negligent misrepresentation (or constructive fraud) against JEG fails for the same reasons as its other negligence claims. Coors acknowledges in Count 4 that JEG

performed the allegedly negligent estimate, and provided the allegedly false information to Coors, as part of JEG's duties under the Alliance Agreement. (Compl. ¶ 37 ("Coors paid JEG under the Alliance Agreement for performing the estimate."); *id.* ¶ 41 ("JEG, under the Alliance Agreement, supplied false information to Coors concerning the Project's estimated total installed cost."). In Count 4 Coors seeks purely economic damages for breach of a contractual duty, the recovery of "costs and expenses that Coors would not . . . have incurred" without JEG's alleged failure to properly perform the estimate it performed for Coors under the Alliance Agreement. Thus, as with Coors' other negligence claims, Coors' negligent misrepresentation claim in Count 4 is barred as a matter of law in Colorado (and in Virginia) by the economic loss rule.

The Colorado Supreme Court addressed precisely this issue in *BRW, Inc.* There, as here, a plaintiff brought a negligent misrepresentation claim alleging that misrepresentations "occurred during performance" of its contract with the defendants. *BRW, Inc.*, 99 P.3d at 75. The Colorado Supreme Court held that in such circumstances "the contracts' terms are controlling" and "the economic loss rule bars the negligent misrepresentation claim." *Id.*; *see also Town of Alma v. Azco Construction, Inc.,* 10 P.3d 1256, 1264 (Colo. 2000); *Filak,* 594 S.E.2d at 613-14 (any losses plaintiffs suffered as a result of the defendant's alleged negligent or innocent misrepresentations were only recoverable in an action for breach of contract; whatever duties the defendant may have assumed with respect to making such representations arose solely from the alleged contract); *Virginia Transformer Corp. v. P.D. George Co.,* 932 F. Supp. 156, 162 (W.D. Va. 1996) (under Virginia law, economic loss rule applies to constructive fraud allegations).

This Court should dismiss Count 4 of Coors' Complaint.

D.   Count 7: Unjust Enrichment Against Both JEG and JCS Fails

Coors makes one last attempt to circumvent the force of contract law in Count 7 by invoking this Court's equitable power to restore "fees, costs, and other monies" paid to JEG and JCS according to the terms of the Alliance Agreement and Project Agreement, under a theory of "unjust enrichment." (Compl. ¶¶ 73, 76.) This claim is just as deficient as the claims for negligence.

A claim of unjust enrichment invokes the court's equitable power to impose a remedy of "quasi-contract." *See Lewis v. Lewis*, --- P.3d ----, 2008 WL 2581563, at *7 (Colo. 2008); *Rinehart v. Pirkey*, 101 S.E. 353, 354 (Va. 1919). As a creature of equity, the remedy of quasi-contract is available only if there is no adequate remedy at law. *See Hubert v. Cowan*, 501 P.2d 1352, 1354 (Colo. App. 1972); *Maupin v. Whiting*, 1 Call 224, 224 (Va. 1798). The existence of an express agreement between the parties, however, establishes the basis for a legal remedy of monetary damages. Accordingly, courts in Colorado and Virginia refuse to entertain a quasi-contract claim when there is an express agreement between the parties. *See Interbank Invs., LLC v. Eagle River Water and Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003), *cert. denied*, 2003 WL 22284310 (No. 03SC304) (Colo. Oct. 6, 2003); *P.J. Berry Co. v. Denver Am. Family Lodge West, Inc.*, 663 P.2d 264, 266 (Colo. App. 1983); *Nedrich v. Jones*, 429 S.E.2d 201, 207 (Va. 1993) ("The law will not impose an implied contractual relationship upon parties in contravention of an express contract."); *Ellis & Myers Lumber Co. v. Hubbard*, 96 S.E. 754, 760 (Va. 1918).

The common law recognizes two exceptions to this general rule. A party can recover on a quasi-contract claim, even in the presence of an express contract, if (1) "the party will have no

right under an enforceable contract," for instance, because "an express contract failed or was rescinded," or (2) the quasi-contract "covers conduct outside the express contract or matters arising subsequent to the express contract." *Interbank*, 77 P.3d at 816 (internal quotation marks omitted); *see also* REST. (2D) CONTRACTS § 376; 26 WILLISTON ON CONTRACTS § 68:1. Neither exception applies here.

Coors has not alleged that the contract is unenforceable and, though the amount that Coors can recover under the contract is clearly limited, a limitation does not equal "no right." In fact, the Colorado Court of Appeals has concluded that substituting a quasi-contract for the express contract in such circumstances "would inappropriately allow implied-in-law contracts to encroach on express contracts." *Interbank*, 77 P.3d at 818. The court rejected the suggestion that "the threshold for judicial implication of a quasi-contract" should be "the adequacy of the remedy under an express contract, rather than the enforceability of that contract." *Id.* It held instead that the express contract governs regardless of the claimed inadequacy of the contractual remedy – indeed, even where "only nominal damages are available under the express contract." *Id.* at 819.

Coors' quasi-contract claim arises from conduct covered by the express terms of the contract. It does not fall into any exception that would permit a separate cause of action for unjust enrichment. In this way, it is similar to all of Coors' tort claims seeking recovery for the purely economic losses that Coors blames on JEG's and JCS's various alleged failures to perform their contractual duties under the Project Agreement and the Alliance Agreement.[2]

---

[2] Count 7 of Coors' Complaint is sparse. It incorporates all the preceding allegations, which as explained above are all allegations that JEG and JCS failed to properly perform contractual duties. (Compl. ¶ 72.) Then it states in conclusory fashion the elements of an unjust enrichment claim. (Compl. ¶¶ 73-76.) Coors has not alleged any

Coors cannot pursue relief on these grounds under either Colorado or Virginia law because, in both states, the sole remedy for Coors' alleged economic losses is to pursue breach of contract claims against JEG and JCS – to "resort to . . . contract law to protect [its] economic expectations." *Blake Construction*, 353 S.E.2d at 727. *See also Town of Alma*, 10 P.3d at 1264 ("We hold that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for a beach absent an independent duty of care under tort law.").

This Court should dismiss Count 7 of Coors' Complaint.

II.

The Limitation of Liability Clauses in the<br>Project Agreement and the Alliance Agreement Are Valid and Enforceable

All of Coors' claims are subject to the Limitation of Liability Clause in § 23.2 of the Project Agreement. That includes Coors' breach of contract claims and its tort and unjust enrichment claims, to whatever extent they survive summary judgment as discussed in Part I above. Section 23.2 limits Coors' total possible recovery for all claims "arising out of" the Project to the amount of the "Fee" Jacobs is to be paid under that contract, an amount capped under the contract at 1.3% of the "Total Installed Cost" of the project and expressly defined in the contract as "CONTRACTOR's profit." Project Agreement, Ex. A.

The Reperformance Clause in § 3.2 of the Alliance Agreement provides an additional and further limit on Coors' remedies as to certain of its claims against JEG in this action. It forecloses any monetary remedy for allegedly deficient services provided under the Alliance

---

misconduct by JEG or JCS falling outside the scope of the two express contracts, the Alliance Agreement and the Project Agreement.

Agreement.  Coors' sole remedy is the reperformance of such services at no cost to Coors.

The Project Agreement's Limitation of Liability Clause and the Alliance Agreement's Reperformance Clause are valid and enforceable under the relevant law.

A.    The Project Agreement's Limitation of Liability Clause Applies to All Coors' Claims Against Jacobs in this Action

The Limitation of Liability Clause in § 23.2 of the Project Agreement states that, "[f]or claims other than those associated with CONTRACTOR's indemnification obligations hereunder, arising out of the Project and are not covered by **Exhibit J** and Sections 13.2 and 13.3, CONTRACTOR's liability shall not exceed the Fee as specified in **Exhibit A**."  All Coors' claims in this action against JCS and against JEG "aris[e] out of the Project."  None of Coors' claims are "associated with" any indemnification obligations imposed by the agreement, nor are they "covered by Exhibit J or Sections 13.2 and 13.3," which are the insurance provisions of the agreement.

Coors freely and at arms-length negotiated and agreed to this limitation of liability, and did so as a sophisticated party represented by counsel.  All Coors' claims against JCS and JEG are subject to § 23.2's limitation of liability.

1.    All Coors' Claims "Aris[e] Out of the Project"

The first step in determining whether any particular claim is covered by the Project Agreement's Limitation of Liability Clause is to determine whether the claim "aris[es] out of the Project."  Project Agreement § 23.2.  The Project Agreement defines "Project" in section 1.11:

> Project is the desired result of the Work, which is the subject of the Agreement Documents.  The Project is described as an expansion of COORS facilities in Elkton, Virginia to include a brew house grain handling, fermentation, yeast handling, beer processing, utilities, waste treatment plant, and associated infrastructure, as more fully specified in **Exhibit B**, Scope of Work.

In its Complaint, Coors defines "Project" in much the same way, as "Coors' new 7,000,000-barrel-per-year brewing facility in Elkton, Virginia (the 'Project')." (Compl. ¶ 4.) All of Coors' claims in this action "aris[e] out of" the Project, *i.e.*, the project to "expan[d] . . . COORS facilities in Elkton, Virginia" in the manner described in section 1.11 of the Project Agreement.

<ol type="a" start="1">
<li>**Counts 1-4 Against JEG "Aris[e] out of the Project" and Are Subject to the Limitation of Liability Clause**</li>
</ol>

Coors' Counts 1-4 against JEG all "aris[e] out of the Project" and are subject to § 23.2's limitation of liability.

- In Count 1, Coors asserts a breach of contract claim against JEG based on JEG's alleged failure "to provide services of the highest professional quality *on the Project*." (Compl. ¶ 15).

- In Count 2, Coors asserts a breach of fiduciary duty based on JEG's alleged failure "to adequately prepare its cost estimate *for the Project*." (Compl. ¶ 23).

- In Count 3, Coors asserts a negligence claim based on alleged deficiencies in JEG's provision of "planning, estimates, designs, drawings, specifications, and other services," all of which JEG performed *for the Project*. (Compl. ¶¶ 28-29; *see also* Compl. ¶ 4 (stating that the services JEG provided under the Alliance Agreement were provided "for Coors *on Coors' new 7,000,000-barrel-per-year brewing facility in Elkton, Virginia*")).

- In Count 4, Coors asserts a negligent misrepresentation claim based on JEG's "estimate and . . . representations regarding the total installed cost *for the Project*." (Compl. ¶ 38).

Coors has framed its Counts 1-4 as claims against JEG, which was not a party to the Project Agreement, and Coors suggests that some of these claims involve conduct that occurred prior to April 11, 2005, the date on which Coors alleges that the Project Agreement was signed. (Compl. ¶ 5.) The Project Agreement expressly addresses these two issues and, by its terms, confirms that these claims indeed are subject to § 23.2's Limitation of Liability Clause.

First, § 23.2 of the Project Agreement itself provides that "[a]ny and all releases,

limitations on liability, restrictions, exclusions, or indemnities running in favor of a Party to this Agreement *shall include in the aggregate the parent or affiliated or subsidiary companies.*" This, of course, makes perfect sense because the Limitation of Liability Clause expressly is designed to cover any claims that "aris[e] out of the Project." JEG is the parent company of JCS, the Jacobs entity that signed the Project Agreement. *See* Dickinson Affidavit at ¶ 2.

Second, § 26.13 of the Project Agreement is titled "Work Prior to Agreement Execution" and provides:

> Work Prior to Agreement Execution.  If [sic] the event that the CONTRACTOR commences any portion of the Work prior to the execution of this Agreement, the provisions in this Agreement Documents shall apply to such Work in the same manner as if the Agreement had been executed before the Work was commenced."

Section 23.2's Limitation of Liability Clause expressly "run[s] in favor of" JCS's parent company JEG.   Section 26.13 further confirms that "the provisions in the Agreement Documents" – which, of course, includes § 23.2's Limitation of Liability Clause – *"shall apply* to such Work *in the same manner* as if the Agreement had been executed before the Work was commenced."

Sections 23.2 and 26.13 of the Project Agreement together provide that the Limitation of Liability Clause applies to JEG's Project-related work performed prior to execution of the Project Agreement. This is true even if – and expressly if – the alleged misconduct is JEG's and occurred prior to the execution of the Project Agreement.

      b.     <u>Counts 5 and 6 "Aris[e] out of the Project" and Are Subject to the Limitation of Liability Clause</u>

In Count 5, Coors alleges that JCS breached the Project Agreement by not properly managing the Project, not completing the Project on time, billing Coors for rework done on the

Project that should not have been billed, and not "adequately control[ling] the Project's cost." (Compl. ¶ 61.)  All such claims address JCS's performance on the Project, alleging that JCS failed to properly perform Project-related duties such as managing subcontractors, *see* Project Agreement §§ 2.3 (coordination of work), 4.5 (selection of and responsibility for subcontractors), and billing Coors for its own and its subcontractors' work, *see id.* § 6.2(g) (correction of certain errors "without additional compensation"), and Ex. A (billing and payment process).  All such claims thus self-evidently "aris[e] out of the Project."

Coors alleges in Count 6 that JCS "breached its duties by providing deficient services to Coors" on the Project and seeks to recover damages on a negligence theory.  (Compl. ¶¶ 65-70.) These claims likewise address JCS's performance on the Project.  If such claims are valid, *but see supra* § I.B, they likewise "aris[e] out of the Project" and are covered by the plain language of the Limitation of Liability Clause.

Coors may try to argue that tort claims should not be covered by a contractual limitation of liability, but the contract to which the parties agreed limits JCS's liability for *all* "claims . . . arising out of the Project," not just for breach of contract claims.  *Cf., e.g., C&O Railway Co. v. Clifton Forge-Waynesboro Tel. Co.*, 224 S.E.2d 317, 322 (Va. 1976) (holding that defendant could "exempt itself, by contract, from liability for negligence").  If Coors wanted a liability limitation that covered only breach of contract claims, it could have negotiated for that.  It did not.

c.    Count 7 "Aris[es] out of the Project" and Is Subject to the Limitation of Liability Clause

Coors offers no new factual allegations in Count 7.  It instead simply incorporates by reference all its preceding allegations (Compl. ¶ 72), and then states in conclusory fashion that

JEG's and JCS's conduct has satisfied the elements of an unjust enrichment claim (Compl. ¶¶ 73-76). Because all of the preceding factual allegations "aris[e] out of the Project," Count 7's identical factual allegations do, as well.

2.    The Exceptions to the Limitation of Liability Clause Do Not Apply

Section 23.2's limitation on liability for "claims . . . arising out of the Project" does not apply to claims "covered by" §§ 13.2 and 13.3 or Exhibit J of the Project Agreement. Sections 13.2 and 13.3 and Exhibit J describe certain insurance plans Coors was permitted (and in some cases required) to purchase for the Project. None of Coors' claims in this action, however, are "covered by" the kinds of insurance plans provided for in sections 13.2 and 13.3 and Exhibit J. Most of the types of insurance policies listed in Exhibit J and Articles 13.2 and 13.3 – for instance, commercial general liability and builder's risk policies – cover injuries to persons or damage to property, and Coors has not alleged any claims based on injuries to persons or damage to property. Although Exhibit J did give Coors the option of providing professional liability (errors and omissions) insurance, which might have covered some of Coors' claims, Coors did not actually provide such insurance, so Exhibit J has no application here. *See* Dickinson Affidavit at ¶ 3. Even if Coors had provided professional liability insurance that covered some or all of its claims here, that would not have increased Jacobs' exposure above the liability cap; Coors' (hypothetical) insurance policy would have covered any such damages.

Section 23.2 also does not apply to "claims . . . associated with CONTRACTOR's indemnification obligations hereunder." The Project Agreement's indemnification provisions do not apply to Coors' claims in this case. Some of these provisions require JCS to indemnify Coors for third-party claims, *see* Arts. 14.1.1, 14.1.2, and Coors has not alleged damages based

on any claims third parties have brought against Coors, such as for property damage or personal injury. Other provisions require JCS to indemnify Coors for certain claims for loss or damage to Coors' property or other property for which Coors is responsible, Art. 14.2; for claims made against Coors for payments for goods or services for which Coors has already paid JCS, Art. 14.3(a); for certain intellectual property infringement claims, Art. 14.3(b); and for fines or penalties assessed against Coors as a result of JCS's or its subcontractors' failure to comply with applicable laws, Art. 14.3(c). Coors has alleged no such claims in this action.

3.     <u>The Limitation of Liability Clause Limits Jacobs' Total Potential Liability for All Coors' Claims to the Amount of Jacobs' "Fee"</u>

In *Sensenbrenner*, 374 S.E.2d at 58, the Virginia Supreme Court held that "[t]he controlling policy consideration underlying the law of contracts is the protection of expectations bargained for." In *Blake Construction*, 353 S.E.2d at 727, the Virginia Supreme Court recognized in a nearly identical context that "[t]he parties involved in a construction project resort to contracts and contract law to protect their economic expectations," and "[t]heir rights and duties are defined by the various contracts they enter."

In this case, the parties to the Project Agreement bargained for limited liability for all claims "arising out of the Project" (except to the extent such claims were covered by certain contractual insurance or indemnification provisions), and ensured that this liability limitation applied to all work done for the Project, including work performed prior to execution of the Project Agreement, regardless of whether a party or a related entity performed the work. Jacobs agreed to enjoy only a modest profit, or "fee," of just 1.3% of the total installed cost – here, just about $4.3 million on a $333 million project per Coors' allegations – in exchange for Coors' agreement that Jacobs' total potential liability would be limited to the amount of Jacobs' fee.

That is the written, signed bargain struck by these sophisticated parties represented by counsel in an arms-length negotiation.

Jacobs asks that this Court uphold the terms of the parties' bargain. This Court should hold as a matter of law that all Coors' claims against both JEG and JCS (to the extent such claims are valid under applicable state law) "aris[e] out of the Project" and are neither "associated with" any contractual indemnification obligations JCS owes Coors nor "covered by" the contract's owner-controlled insurance provisions, and thus that Jacobs' total potential liability for Coors' claims in this case "shall not exceed the fee as specified in **Exhibit A.**" Project Agreement § 23.2.

B.     Virginia Law Rejects Coors' Likely Attempts to Avoid the Contractual Limitation of Liability Clause

Coors may attempt to argue that the Limitation of Liability Clause to which it agreed in the Project Agreement is unenforceable under Virginia law, and that Coors is permitted to seek damages far in excess of "the fee specified in **Exhibit A.**"  That is incorrect – the Virginia Supreme Court upholds such limitations of liability.

1.     The Virginia Supreme Court Regularly has Approved of Contracts Limiting, or Even Eliminating Altogether, a Contracting Party's Liability

In *Fidelity & Casualty Co. of N.Y. v. Copenhaver Contracting Co.*, 165 S.E. 528 (Va. 1932), the Virginia Supreme Court expressly addressed whether a plaintiff suing a construction company for breach of contract could seek to recover more than the contract's damages provision allowed, and the answer was "no."  The agreement between a contractor and a construction company in *Copenhaver Contracting* provided that if the construction company failed to complete the project by a date certain, the contractor could either take over the work and

complete it, charging the defaulting party for the cost of completion, or charge the construction company $10 for each day that the breach continued, as liquidated damages. *Id.* at 531. The court held that because the two companies had "agreed upon the damages for delay, no higher damages could now be claimed for the same." *Id.*

In more recent cases, the Virginia Supreme Court repeatedly has approved under Virginia law the enforcement of contract clauses that *entirely* absolve parties of liability for negligence (so-called "pre-injury release" provisions, also known as "exculpatory clauses"), so long as the claims in question relate to property damage and not to personal injury. As explained above, Coors' claims against Jacobs in this case are essentially all contract-based claims, *i.e.*, claims that Jacobs caused Coors economic damages by failing to perform as promised under the two contracts, rather than tort-based claims, *i.e.*, claims for injuries to persons or property. *See supra* Part I (explaining why Coors' tort and unjust enrichment claims fail as a matter of Virginia law). Virginia cases addressing the validity of exculpatory clauses appear to involve only the application of such clauses to tort claims, and uniformly uphold the exculpatory clauses (except in cases where damages for personal injury are at issue). The logic of these cases applies even more forcefully to clauses limiting liability for contract-based damages because, with contract claims, the injury in question is directly related to the subject matter of the contract rather than matters external to the contract (as is the case with most tort claims of injuries to persons or property). The relative paucity of Virginia case law addressing the application of exculpatory or limitation of liability clauses to *contract-based* claims is entirely unsurprising in light of Virginia courts' willing enforcement of exculpatory clauses to limit, or even eliminate, liability for *extra-contractual* tort damages, as well as Virginia's staunch protection of freedom of contract for

sophisticated parties like Jacobs and Coors.

The Virginia Supreme Court first clearly addressed the validity of exculpatory clauses in *C&O Railway Co. v. Clifton Forge-Waynseboro Tel. Co.*, 224 S.E.2d 317 (Va. 1976), holding that a railway company "may exempt itself, by contract, from liability for negligence" when it is acting in its capacity as a private landowner rather than a common carrier. *Id.* at 322; *see also Estes Express Lines, Inc. v. Chopper Express, Inc.*, 641 S.E.2d 476, 480, n. 8 (Va. 2007) (noting that, "at least since *C&O Railway Co.*, we have upheld even pre-injury release provisions relating to property damage, and no evidence has arisen that this has in any way engendered public harm"); *Hiett v. Lake Barcroft Community Assoc., Inc.*, 418 S.E.2d 894, 896 (Va. 1992) (noting that the court's cases since 1890 "uph[eld] the right to contract for the release of liability for property damage"); *Nido v. Ocean Owners' Council*, 378 S.E.2d 837, 838 (Va. 1989) (condominium council could contractually limit its liability for certain property damage caused to condominium owners). *Compare Jones v. Dressel*, 623 P.2d 370, 372, 378 (Colo. 1981) (affirming validity of exculpatory clause exempting recreational skydiving company from all liability for any harms, including personal injury, caused by the company's negligence). The court in *C&O Railway Co.* reasoned that so long as the parties are acting in a private rather than a public or quasi-public capacity, and "neither public welfare nor public policy was involved," then the court would enforce the parties' arms-length agreement to relieve the negligent party of liability. *C&O Railway Co.*, 224 S.E.2d at 322.

Jacobs acted with Coors in a private, not a public or quasi-public, capacity. Jacobs is entitled to have this Court enforce its arms-length limitation of liability agreement with Coors.

2.    The Virginia Legislature Expressly Permits Engineers to Enter into Agreements that Limit their Liability

While the Virginia Legislature has chosen to regulate the architecture and engineering professions to some degree, *the Virginia Legislature's regulations expressly permit architects and engineers to enter into agreements limiting or shifting liability for their conduct*. Section 54.1-411 of the Virginia Code it titled "Organization for practice; registration," and expressly permits architectural and engineering companies to enter into insurance or indemnification agreements that limit or shift their liability.  It provides:

> A.   Nothing contained in this chapter or in the regulations of the Board shall prohibit the practice of architecture, engineering, land surveying or the offering of the title of certified landscape architect or certified interior designer by any corporation, partnership, sole proprietorship, limited liability company, or other entity provided such practice or certification is rendered through its officers, principals or employees who are correspondingly licensed or certified.  No such organization shall limit the liability of any licensee or certificate holder for damages arising from his acts or limit such corporation, partnership, sole proprietorship, limited liability company, or other entity from liability for acts of its employees or agents.  *No such corporation*, partnership, sole proprietorship, limited liability company, or other entity, or any affiliate thereof, *shall*, on its behalf or on behalf of any such licensee or certificate holder, *be prohibited from* (i) purchasing or maintaining insurance against any such liability; *(ii) entering into any indemnification agreement with respect to any such liability*; or (iii) receiving indemnification as a result of any such liability.

VA. CODE ANN. § 54.1-411.

Section 54.1-411 permits architects and engineers to join together in various legal entities for the purpose of practicing their professions, so long as this "practice . . . is rendered through [such entity's] officers, principals, or employees who are correspondingly licensed." *Id.*  It specifies, however, that adopting this permitted form of organization – *i.e.*, organizing as a corporation, partnership, or other legal entity that practices architecture or engineering "through its officers, principles, or employees who are correspondingly licensed" – cannot in and of itself

"limit the liability of any licensee . . . for damages arising from his acts or limit such corporation . . . or other entity from liability for acts of its employees or agents." *Id.* Importantly, though, the statute then expressly *permits* these architectural or engineering entities to enter into insurance or indemnification agreements through which they can limit or shift "any such liability." *Id.*

Coors has suggested that it will try to interpret § 54.1-411 by focusing on (and misreading) the second sentence, ignoring the third sentence, and ignoring the subject of the section reflected in its title and text, which is "[o]rganization for practice; registration." Coors' suggested misreading contradicts the language of the statute itself, contradicts the Virginia Supreme Court's steadfast enforcement of exculpatory clauses in sophisticated parties' contracts, and defies the legislative history and intent behind the statute.

- In 1982, Clifton A. Woodrum was the Virginia state legislator who sponsored House Bill 604 which became, in part, § 54.1-411. *See* Woodrum Affidavit at ¶ 2 (attached as Exhibit A-2). Woodrum confirms that "[t]he legislative intent of [§ 54.1-411] was to allow architects, engineers and land surveyors to practice their professions in a corporate form while not limiting their professional responsibility by such corporate organization. . . . To the best of my recollection, *it was not intended by this statute to prohibit or forbid architects, engineers and land surveyors from contractually limiting their liability* in the course of their work." *Id.* at ¶ 8.

- In 1982, Robert Nebiker was the "legislative liaison for the Board of Architects, Engineers and Land Surveyors and the Department of Professional and Occupational Regulation during the passage of House Bill 604, which became, in part, § 54.1-411. *See* Nebiker Affidavit at ¶ 2 (attached as Exhibit A-3). Nebiker confirms that "our intent was that the corporate organization of an engineer, architect or land surveyor, should not, solely by virtue of such corporate organization, act as a shield to limit the professional liability of engineers, architects and land surveyors. *It was not our intent in seeking this change to prohibit, or forbid, architects, engineers and land surveyors from contractually limiting their liability* in the course of their work." *Id.* at ¶¶ 6-7.

The Virginia Legislature's public policy preference is clear from the language and intent

of § 54.1-411: Architects and engineers cannot hide behind some corporate or other legal form to *unilaterally* escape professional liability, such as, for example, for tort claims made by members of the public injured by their faulty work. ***But the Virginia Legislature's policy absolutely entitles architects and engineers – like other private entities – to enter into arms-length agreements to allocate and limit their liability with parties that willingly take such liability on, as through insurance or indemnification agreements like the Limitation of Liability Clause to which Jacobs and Coors agreed.*** The Limitation of Liability Clause clearly indicates the parties' bargained-for agreement as to which party bears what level of risk as between these two commercially sophisticated parties to a large construction contract.

Virginia "courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain." *Estes Express*, 641 S.E.2d at 478. Here, there is no credible public policy reason to prohibit enforcement of the Project Agreement's Limitation of Liability Clause. And the Virginia Legislature has spoken on the subject and clearly indicated that engineers may enter into agreements with other willing parties to limit or shift liability (even if they cannot unilaterally absolve themselves of liability through use of a particular corporate form).

3.   <u>A Federal District Court in Virginia Has Created a Test for the Enforceability of Limitation of Liability Clauses Under Virginia Law, and the Project Agreement's Limitation of Liability Clause Easily Passes the Test</u>

Of course, almost all the cases cited above deal with exculpatory clauses that *fully* release a defendant from liability. In this case, by contrast, the clause in question does not fully release Jacobs, but only limits Jacobs' liability for breach. Such also was the case in *Kocinec v. Public Storage, Inc.*, 489 F. Supp. 2d 555 (E.D. Va. 2007), where a federal district court noted that

courts in Virginia have "consistently referred to both provisions – those that limit liability and those that foreclose liability – as 'exculpatory.'" *Id.* at 559, n. 2. The RESTATEMENT (SECOND) OF CONTRACTS, however, suggests that courts should treat clauses merely limiting liability more leniently than clauses wholly exempting a party from liability. REST. (2D) CONTRACTS § 195, cmt. a. There is every reason to give the Limitation of Liability Clause significant deference here, because the clause leaves open the possibility that Jacobs will lose its *entire fee*, *i.e.*, *all* of its profits under the Agreement. *See* Project Agreement, Ex. A (defining "Fee" as "CONTRACTOR's profit").

In *Kocinec*, the district court set out a three-part test for whether exculpatory clauses should be enforced under Virginia law – although no Virginia state court appears to have applied this same test. The court held that exculpatory clauses could be enforced in Virginia only if the party invoking the clause shows "'(1) that the agreement does not contravene public policy, (2) that it could be readily understood by a reasonable person in the plaintiff's position, and (3) that it clearly and unequivocally releases the defendant from precisely the type of liability alleged by the plaintiff.'" 489 F. Supp. 2d at 559 (quoting *Hiett v. Barcroft Beach, Inc.*, 18 Va. Cir. 315, 318, 1989 WL 646461 (1989), *rev'd on other grounds*, *Hiett*, 418 S.E.2d 894). *Compare Jones*, 623 P.2d, at 376 (listing similar factors applicable under Colorado law). The Limitation of Liability Clause in § 23.2 of the Project Agreement satisfies the *Kocinec* test.

In addressing the first prong of this test, the district court noted that the only types of entities that have historically been restricted in Virginia from employing exculpatory clauses in their business contracts are entities that are "quasi-public in nature," such as common carriers (though only when acting in that capacity). *Id. Compare Jones*, 623 P.2d at 377 (contract

between company providing skydiving services and consumer does not "affec[t] the public interest"; exculpatory clause valid); *1745 Wazee LLC v. Castle Builder, Inc.*, 89 P.3d 422, 426 (Colo. App. 2003) (providing construction services "in a large commercial . . . project" does not involve "a public duty" or "an essential service to members of the public"; exculpatory clause in construction contract valid). In *Ripley Heatwole Co. v. John E. Hall Electrical Contractor, Inc.*, 69 Va. Cir. 69, 2005 WL 4827398 (Va. Cir. Ct. 2005), a Virginia trial court offered additional examples of the kinds of parties that might not be permitted to use exculpatory clauses in their contracts, listing public utilities, monopolies, and suppliers of inherently dangerous products. *Id.* at *3. Coors and Jacobs are not quasi-public entities, in the same way that common carriers are, and the Project Agreement at issue here concerned the purely private matter of the construction of Coors' private brewing facility. Nor is Jacobs a monopoly or a supplier of inherently dangerous products. Coors has alleged nothing to the contrary.

Similarly, the Virginia Legislature, in §§ 54.1-411 of the Virginia Code has confirmed the state's public policy preference that engineers – like nearly all private entities – are free to enter into contracts that limit their liability. That public policy preference is particularly true when, as here, two sophisticated parties (Jacobs and Coors) negotiate, agree on, memorialize in writing, and sign contracts that expressly limit Jacobs' liability.

The other two prongs of the *Kocinec* test are solidly in Jacobs' favor, as well. Section 23.2's limitation of liability language is clear: the liability cap applies broadly to all "claims . . . arising out of the Project," except to the extent such claims are covered by certain (inapplicable) contractual indemnification and insurance provisions. Given the sophistication of the parties to the contract – two large corporate entities with substantial in-house legal departments – the

Limitation of Liability Clause easily passes the second and third prongs of the *Kocinec* court's test as well, should the Court choose to apply it.

This Court should enforce § 23.2's Limitation of Liability Clause in the Project Agreement.

C.      The Reperformance Clause in the Alliance Agreement Limits Coors' Remedy for Any Allegedly Deficient Services Provided under that Agreement to Reperformance of Such Services at No Cost to Coors

In addition to the limitation of liability provided by § 23.2 of the Project Agreement, JEG's liability for Coors' Counts 1-4 and 7 is further limited by the Reperformance Clause of the Alliance Agreement. The Reperformance Clause in § 3.2 of the Alliance Agreement requires JEG, "[d]uring the performance of its services and for a period of twelve (12) months after its services are completed," to "without additional compensation correct or revise any errors or deficiencies in its designs, drawings, specifications or other services provided pursuant to this Agreement." The Reperformance Clause also specifies that, other than JEG's "liabilities under Article 8," which contains insurance and indemnification provisions similar to those in the Project Agreement,[3] "the foregoing provisions of this Section 3.2 express the *exclusive remedies of [Coors] for deficiencies in the services, whether asserted on the basis of contract, negligence, or otherwise.*"

All of Coors' claims against JEG are based on Coors' allegations of "deficiencies in the services" that Coors alleges JEG provided under the Alliance Agreement, and none of Coors' claims are for liabilities covered by the Alliance Agreement's insurance and indemnification

---

[3] The parties amended the Alliance Agreement in 2000, replacing Article 8 "in its entirety" with a new indemnification and insurance section. *See* Amendment Number One to Engineering Services Agreement § 5 ("Alliance Agreement Am. 1"), attached as part of Exhibit A to Coors' Complaint. As explained below, these amended indemnification and insurance provisions are also very similar to the provisions in the Project Agreement, and none of Coors' claims against JEG are covered under these amended provisions, either.

provisions. Coors' remedy for all its claims against JEG is therefore limited to demanding reperformance of any such deficient services that were completed less than 12 months prior to Coors' demand.

1.   The Reperformance Clause Applies To All Coors' Claims Against JEG, Counts 1-4 and 7

Each of Coors' claims against JEG seeks damages for alleged "deficiencies in the services" Coors alleges JEG provided under the Alliance Agreement:

- Coors alleges in Count 1 that "JEG breached the Alliance Agreement by failing to provide services of the highest professional quality on the Project." (Compl. ¶ 15.)

- Coors alleges in Count 2 that JEG breached a fiduciary duty that it agreed in the Alliance Agreement to undertake, by "failing to adequately prepare its cost estimate for the Project" (Compl. ¶ 21, 23) – a service Coors elsewhere alleges JEG provided under the Alliance Agreement (e.g., Compl. ¶¶ 4, 37).

- Coors alleges in Count 3 that JEG committed negligence "by providing deficient services" to Coors, such as "planning, estimates, designs, drawings, [and] specifications," under the Alliance Agreement. (Compl. ¶¶ 28, 29.)

- Coors alleges in Count 4 that JEG "under the Alliance Agreement . . . supplied false information to Coors concerning the Project's estimated total installed cost," and thus committed the tort of negligent misrepresentation. (Compl. ¶¶ 41, 45.)

- Coors alleges in Count 7 that JEG was "unjustly enriched" by the "benefits" Coors conferred "upon JEG . . . in the payment of fees, costs, and other monies" under the Alliance Agreement, insofar as JEG provided deficient services that were not of "reasonably equivalent value in return." (Compl. ¶¶73, 74.)

None of these claims are covered by the Alliance Agreement's indemnification and insurance provisions, originally located at Article 8 of the agreement but since revised and moved (in the First Amendment to the Alliance Agreement) to Article 5. As with the similar provisions in the Project Agreement, the indemnification and insurance provisions in the Alliance Agreement address various kinds of potential liability unrelated to the claims Coors is

making against JEG in this case: personal injury and damage to property (Alliance Agreement Am. 1 §§ 5.1, 5.2, 5.7); intellectual property liability (Alliance Agreement Am. 1 § 5.4); and failure to comply with laws and environmental liability (Alliance Agreement Am. 1 § 5.5).

All of Coors' claims against JEG are subject to the Reperformance Clause, which makes reperformance at JEG's cost "the exclusive remed[y] of [Coors] for deficiencies in the services, whether asserted on the basis of contract, negligence, or otherwise," and which limits Coors' remedy to reperformance of deficient services completed less than 12 months prior to Coors' demand.

2.    The Reperformance Clause Is Enforceable

The Alliance Agreement is governed by Colorado law.  Alliance Agreement § 29.  In *Jones v. Dressel*, 623 P.2d 370 (Colo. 1981), the Colorado Supreme Court explained that to determine whether to enforce an exculpatory contract clause like the Reperformance Clause under Colorado law, Colorado courts assess (1) whether the contract involves "a duty to the public," (2) "the nature of the service performed," (3) "whether the contract was fairly entered into," and (4) "whether the intention of the parties is expressed in clear and unambiguous language."  *Id.* at 376; *see also id.* at 377 (contract between company providing skydiving services and consumer does not "affec[t] the public interest"; exculpatory clause upheld as valid).

The Alliance Agreement was an agreement to build a *private* industrial facility, and it was entered into by two very sophisticated corporate entities with extensive in-house legal representation.  Coors has not alleged, and could not seriously suggest, that the contract was not "fairly entered into."  Indeed, this case is very similar to the situation presented in *1745 Wazee*

*LLC v. Castle Builder, Inc.*, 89 P.3d 422, 426 (Colo. App. 2003), where the Colorado Court of Appeals held that providing construction services "in a large commercial . . . project" does not involve "a public duty" or "an essential service to members of the public," and thus held an exculpatory clause in a construction contract valid. Here, Jacobs and Coors expressed "in clear and unambiguous language" their intention to make the reperformance remedy "the exclusive remed[y] of [Coors] for deficiencies in the services" provided by JEG, "whether asserted on the basis of contract, negligence, or otherwise." Alliance Agreement § 3.2.

This Court should enforce the Alliance Agreement's Reperformance Clause as a matter of Colorado law.

### III.
### Conclusion

This Court should grant partial summary judgment in favor of Jacobs and should (1) dismiss Counts 2, 3, 4, 6, and 7 of Coors' Complaint because neither Virginia nor Colorado law permits Coors to assert tort and unjust enrichment claims for injuries allegedly caused by alleged failures to perform contractual duties, (2) hold that, in accordance with § 23.2 of the Project Agreement, Coors' total possible monetary recovery in this case is limited to the amount of Jacobs' fee as that term is defined in the Project Agreement, and (3) hold that, in accordance with § 3.2 of the Alliance Agreement, Coors' sole remedy for its claims against JEG is to seek reperformance of the allegedly deficient services completed less than 12 months prior to Coors' demand.

Respectfully submitted this 8th day of October, 2008.

867698v2/010479                                   33

GREENBERG TRAURIG LLP

By:    *s/ David G. Palmer*
        DAVID G. PALMER
        MICHAEL R. DAVIS
        1200 17th Street, Suite 2400
        Denver, CO  80202
        Telephone: 303-572-6500
        Facsimile: 303-572-6540
        E-mail: PalmerDG@gtlaw.com
              DavisM@gtlaw.com

and

SUSMAN GODFREY LLP

NEAL S. MANNE
GEOFFREY L. HARRISON
SHAWN L. RAYMOND
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: 713-651-9366
Facsimile: 713-654-6666
E-mail:  NManne@susmangodfrey.com
           GHarrison@susmangodfrey.com
           SRaymond@susmangodfrey.com

STEPHEN SHACKELFORD, JR.
MANUEL BERRELEZ
901 Main Street, Suite 5100
Dallas, TX 75202-3775
Telephone: 214-754-1900
Facsimile: 214-754-1993
E-mail:
        SShackelford@susmangodfrey.com
        MBerrelez@susmangodfrey.com

ATTORNEYS FOR DEFENDANTS
JACOBS ENGINEERING GROUP, INC.
and
JACOBS CONSTRUCTION SERVICES,
INC.

867698v2/010479

34

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th of October 2008, a true and accurate copy of the above and foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF system which sent notification via email upon:

Martin D. Litt
E-mail: martin.litt@hro.com
James N. Phillips
E-mail: james.phillips@hro.com
HOLME ROBERTS & OWEN LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
Telephone: 303-861-7000
Facsimile: 303-866-0200

Robert C. Chambers
E-mail: rcchambers@smithcurrie.com
Charles W. Surasky
E-mail: cwsurasky@smithcurrie.com
John M. Mastin, Jr.
E-mail: jmmastin@smithcurrie.com
SMITH CURRIE AND HANCOCK
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, GA 30303-1227
Telephone: 404-521-3800
Facsimile: 404-688-0671

GREENBERG TRAURIG LLP


*s/ Jennifer Stafford*

By:    Jennifer Stafford
       1200 17th Street, Suite 2400
       Denver, CO 80202
       Telephone: 303-572-6500
       Facsimile: 303-572-6540
       Email: StaffordJL@gtlaw.com

867698v2/010479                           35