# UNITED STATES DISTRICT COURT

## DISTRICT OF COLORADO

### Senior District Judge Richard P. Matsch

Civil Action No. 08-cv-00985-RPM
(Consolidated with Civil Action No. 09-cv-00271-RPM

COORS BREWING COMPANY and
BRIGGS OF BURTON, PLC,

                                       Plaintiffs,

       vs.

JACOBS ENGINEERING GROUP INC.,
JACOBS INDUSTRIAL SERVICES, INC., a/k/a/
JACOBS CONSTRUCTION SERVICES, INC., and
JACOBS CONSTRUCTION, INC.,

                                      Defendants.

       And

_____

JACOBS ENGINEERING GROUP INC. and
JACOBS CONSTRUCTION SERVICES, INC.,

                           Third Party Plaintiffs,

       vs.

BRIGGS OF BURTON, PLC,

                           Third Party Defendant.

_____

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT JACOBS CONSTRUCTION SERVICES, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS ON DEFENDANT'S CONTRACTUAL LIMITATION OF LIABILITY

_____

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..............................................................................................ii

I.     INTRODUCTION ...............................................................................................1

II.    PARTIES AND RELEVANT AGREEMENTS..................................................1

III.   LEGAL ARGUMENT.........................................................................................3

       A.     A RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS
              MUST BE GRANTED WHERE THE COMPLAINT FAILS TO STATE
              A CLAIM THAT IS PLAUSIBLE ON ITS FACE. .................................3

       B.     THE QUESTIONS PRESENTED HEREIN ARE MATTERS OF LAW
              THAT ARE PROPERLY ADDRESSED BY THE COURT VIA
              MOTION FOR JUDGMENT ON THE PLEADINGS. ...........................4

       C.     THE CONTRACTUAL LIMITATION OF LIABILITY IS VALID AND
              ENFORCEABLE UNDER VIRGINIA LAW.........................................6

              1.     Recent Legislation Confirms that Virginia Code
                     Section 54.1-411 Always Has Permitted the Enforcement
                     of Agreements to Limit Corporate Liability. .............................6

              2.     A Plain Reading of Virginia Code Section 54.1-411
                     Authorizes Contractual Liability Limitations Contained in
                     Construction or Engineering Services Contracts. ....................8

              3.     Virginia Common Law Strongly Favors Freedom of
                     Contract and Courts Routinely Enforce Contractual
                     Liability Limitations. ..............................................................14

              4.     Recent Decisions Arising in Several States Confirm that
                     Public Policy Sanctions Contractual Liability Limitations
                     to Allocate Risk and Costs in Commercial Construction
                     Services Contracts...................................................................16

       D.     CLAUSE 23.2 OF THE CSA LIMITS COORS' RECOVERY UNDER
              COUNT FIVE TO JCS' FEE..............................................................17

IV.    CONCLUSION..................................................................................................19

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

Brown v. Thompson,
374 F.3d 253 (4th Cir. 2004) ............................................................................................7

Corder v. Lewis Palmer Sch. Dist. No. 38,
568 F. Supp. 2d 1237 (D.Colo. 2008)................................................................................3

Corder v. Lewis Palmer School District No. 38,
566 F.3d 1219 (10th Cir. 2009) ........................................................................................3

Donahue v. Warner Bros. Pictures, Inc.,
194 F.2d 6 (10th Cir. 1952) ............................................................................................11

Douglas Randall, Inc. v. AFA Protective Systems,
516 F. Supp. 1122 (E.D. Pa. 1981) .................................................................................16

Georgetown Steel Corp. v. Union Carbide Corp.,
806 F. Supp. 74 (D.S.C. 1992), judgment rev'd on other grounds, 7 F.3d 223 (4th Cir.
1993) (unpublished) appeal after remand, 100 F.3d 950 (4th Cir. 1996) ...............16

Gill v. Rollins Protective Services Co.,
722 F.2d 55 (4th Cir. 1983) ............................................................................................14

Hawaii v. Office of Hawaiian Affairs,
129 S. Ct. 1436 (U.S. 2009)............................................................................................12

Kocinec v. Public Storage, Inc.,
489 F. Supp. 2d 555 (E.D. Va. 2007) .............................................................................14

Mistry Prabhudas Manji Engineering v. Raytheon Engineers & Constructors, Inc.,
213 F. Supp. 2d 20 (D.C. Mass. 2002) ...........................................................................16

National Motels, Inc. v. Howard Johnson, Inc.,
373 F.2d 375 (4th Cir. 1967) ..........................................................................................14

Nelson v. State Farm Mutual Automobile Insurance Co.,
419 F.3d 1117 (10th Cir. 2005) ........................................................................................3

Park University Enterprises, Inc. v. American Casualty Co.,
442 F.3d 1239 (10th Cir. 2006) ........................................................................................3

Roanoke Properties Limited Partnership v. Dewberry & Davis,
    No. 93-59-CIV-2-BO, 1996 U.S. Dist. LEXIS 10521 (E.D.N.C. June 3, 1996)....................10

Rowson v. County of Arlington, Virginia,
    786 F. Supp. 555 (E.D. Va. 1992) ...........................................................................................7

Silver v. JTH Tax, Inc.,
    Civil Action No. 2:05cv126, 2005 U.S. Dist. LEXIS 36976 (E.D. Va. June 21, 2005)...........5

The Bromptons @ Cherrydale, LLC v. Meyer Consulting Engineers Corp.,
    Civil Action No. 06-1418 (Cir. Court Aug. 02, 2004).............................................................8

Trumball Investments, Ltd. v. Wachovia Bank, N.A.,
    No. 1:05CV15 (GBL), 2005 U.S. Dist. LEXIS 7195 (E.D. Va. Apr. 15, 2005) .....................14

Witt v. United Cos. Lending Corp. (In re Witt),
    113 F.3d 508 (4th Cir. 1997) .................................................................................................11

### STATE CASES

1745 Wazee, LLC v. Castle Builders, Inc.,
    89 P.3d 422 (Colo. App. 2003) ..............................................................................................16

Abell v. Commonwealth of Virginia,
    221 Va. 607 (Va. 1980).............................................................................................................7

Ames v. American National Bank,
    163 Va. 1 (1934) ....................................................................................................................17

Anderson v. Longmont Toyota, Inc.,
    102 P.3d 323 (Colo. 2004).....................................................................................................11

Bentley Funding Group, L.L.C. v. SK&R Group, L.L.C.,
    269 Va. 315 (Va. 2005).....................................................................................................5, 17

Berry v. Klinger,
    225 Va. 201 (1983) ................................................................................................................17

Blaylock Grading Co. v. Neal Smith Engineering,
    189 N.C. App. 508 (N.C. Ct. App. 2008) .............................................................................16

BWT Management, Inc. v. Gayle,
    49 Va. Cir. 365 (Va. Cir. Ct. 1999).........................................................................................4

Chesapeake and Ohio Railway Co. v. Clifton Forge-Waynesboro Telephone Co.,
    216 Va. 858 (Va. 1976).....................................................................................................5, 14

Commonwealth of Virginia v. Boone,
   30 Va. App. 439 (1999) ..................................................................................................7

Craig v. Dye,
   259 Va. 533 (Va. 2000)..................................................................................................5

Doswell Limited Partnership v. Virginia Electric & Power Co.,
   251 Va. 215 (Va. 1996)............................................................................................5, 17

Estes Express Lines, Inc. v. Chopper Express, Inc.,
   273 Va. 358 (Va. 2007)................................................................................................14

Fidelity and Casualty Company of New York v. Copenhaver Contracting Company, Inc.,
   159 Va. 126 (Va. 1932)...........................................................................................12, 15

Garrison v. First Federal Savings & Loan Association,
   241 Va. 335 (Va. 1991)................................................................................................10

Geoghegan Sons & Co. v. Arbuckle Bros.,
   139 Va. 92 (Va. 1924)....................................................................................................5

Gerald R. Moore & Sons v. Drewry,
   251 Va. 277 (Va. 1996)...........................................................................................11, 15

Great Falls Hardware Co. of Reston v. South Lakes Village Center Associates, L.P.,
   238 Va. 123 (1989) ......................................................................................................17

Greater Richmond Civic Recreation, Inc. v. A. H. Ewing's Sons, Inc.,
   200 Va. 593 (Va. 1959).................................................................................................5

Herndon v. St. Mary's Hospital, Inc.,
   266 Va. 472 (Va. 2003).................................................................................................7

Howie v. Atlantic Home Inspection, Inc.,
   62 Va. Cir. 164 (Cir. Ct. 2003) ...................................................................................14

Isbell v. Commercial Investment Associates, Inc.,
   273 Va. 605 (Va. 2007).................................................................................................11

Lasership, Inc. v. Watson,
   2009 Va. Cir. LEXIS 64 (Va. Cir. Ct. Aug. 12, 2009) ...............................................4

Lerner v. Gudelsky Co.,
   230 Va. 124 (Va. 1985).................................................................................................17

Mitchell v. Mitchell,
   227 Va. 31 (Va. 1984)....................................................................................................7

Mosteller Mansion v. Mactec Engineering & Consulting of Georgia, Inc.,
    2008 N.C. App. LEXIS 1011 (May 20, 2008) review denied, 362 N.C. 473 (2008)..............16

Phoenix Medical Electronics Services Inc. v. Klamm,
    18 Va. Cir. 128 (Cir. Ct. 1989) .............................................................................14

Precision Planning, Inc. v. Richmark Communities, Inc.,
    298 Ga. App. 78 (Ga. Ct. App. 2009) .....................................................................16

Pride v. Southern Bell Telephone and Telegraph Company,
    244 S.C. 615 (S.C. 1964) .......................................................................................17

Ripley Heatwole Co. v. John E. Hall Electrical Contractor, Inc.,
    69 Va. Cir. 69 (Cir. Ct. 2005) ................................................................................14

School Board of Chesterfield County v. School Board of City of Richmond,
    247 S.E. 2d 380 (Va. 1978)....................................................................................13

Smit v. Shippers' Choice of Virginia, Inc.,
    277 Va. 593 (Va. 2009)............................................................................................9

Virginia Department of Labor and Industry v. Westmoreland Coal Company,
    233 Va. 97 (Va. 1987)............................................................................................10

Waikoloa Limited Partnership v. Arkwright,
    268 Va. 40 (Va. 2004)..............................................................................................5

## FEDERAL STATUTES AND RULES

Federal Rule of Civil Procedure, 12(c) ........................................................................1, 3

## STATE STATUTES AND RULES

Code of Virginia 1950 Annotated, § 54.1-411 (2009)......................................... passim

## MISCELLANEOUS

General Assembly of the Commonwealth of Virginia, House Bill 797, 2010 ..........................6–8

Pursuant to Federal Rule of Civil Procedure, 12(c), Defendant JACOBS CONSTRUCTION SERVICES, INC. ("JCS") respectfully submits its Motion for Judgment on the Pleadings as it applies to the liability limitation provision in the underlying contract relevant to Count Five of Plaintiff's Complaint ("Motion").

## I.

## INTRODUCTION

By this Motion, JCS urges this Court to enforce a provision in the Construction Services Agreement ("CSA") between JCS and Coors which limits JCS' liability for damages arising from Count Five of the Complaint.  Legislation has unfolded which disposes of Coors' efforts to invalidate the relevant provision.  Specifically, Coors has argued that section 54.1-411 of the Virginia Code made any liability limiting term of the CSA void as against public policy.  Recently, the legislature for the Commonwealth of Virginia clarified the intent of section 54.1-411, and in doing so, confirmed that the code section should be read to permit liability limiting provisions.  To the extent Coors refuses to concede the point and endeavors to revive its now rejected argument by suggesting that the legislative undertaking is not retroactive, the drafters made clear that they were only clarifying the meaning of the code section to reflect its original intent.  As Coors' fundamental objection to the provision is not instructive, and as the statute and the great weight of case law support enforcement of the provision, the Court should find that as a matter of law, CSA Clause 23.2 is binding upon the Parties.

## II.

## PARTIES AND RELEVANT AGREEMENTS

Coors alleges in its Complaint that the Jacobs defendants are liable for damages arising from the design and construction of a new, state-of-the-art brewing facility in Elkton,

Virginia ("Project").  There are two written agreements which relate to the underlying

Complaint, the first being a general Engineering Agreement between JACOBS ENGINEERING

GROUP ("JEG") and Coors (the "Alliance Agreement," which is attached as Exhibit "A" to the

Complaint), dated May 17, 1999 (applying Colorado law).  The Alliance Agreement operated as

an existing omnibus contract, which allowed Coors to secure JEG's engineering services on an

"as needed" basis for a variety of Coors projects.  The second agreement arises between

Defendant JCS and Coors (the "CSA," which is attached as Exhibit "B" to the Complaint), dated

April 11, 2005 (applying Virginia law).  The CSA constituted a discreet contract tailored to the

work JCS would perform on the Project.  JEG undertook preliminary design and some initial

construction work pursuant to the Alliance Agreement, while the balance of the Project work

was performed by JCS under the CSA.  For purposes of this Motion, the *sole* moving party is

Defendant JCS and the *sole* contract at issue is the CSA.  (Complaint ¶¶ 48–64.)

Count Five of the Complaint alleges that the claim for Breach of Contract *only*

arises as against JCS pursuant to the terms of the CSA.  (JCS and Coors are collectively referred

to herein as the "Parties.")  As an affirmative defense, JCS alleges that Coors' Count Five claim

for breach of the CSA is barred in whole or in part by the applicable limitation of liability provi-

sion.  (Answer ¶ 91.)  JCS seeks enforcement of CSA, Clause 23.2 which limits JCS' liability for

all claims arising out of the Project (if at all) to an amount not to exceed its Fee.  (CSA at

Clause 23.2.)[1]

---

[1] It is anticipated that Coors will respond to this Motion by arguing that the enforceability of the subject liability limitation provision was raised before this Court in connection with Jacobs' earlier filed Partial Motion for Summary Judgment (Document 27) ("Earlier Motion").  While the Earlier Motion did seek judgment on the breach of contract claim, it did so in conjunction with the Jacobs defendants' effort to dispose of several other claims.  The entirety of the Earlier Motion was denied by the Court without prejudice; indeed, at the September 30, 2009, scheduling conference the Court made clear that it would entertain arguments raised by Jacobs in the Earlier Motion at a later date.  (Request for Judicial Notice ("RJN"), Ex. "A," Scheduling Conference Transcript of Proceedings at 15:5–17.)  As this Motion raises only a narrow question of law, it is ready for judicial determination.

# III.

## LEGAL ARGUMENT

**A.      A RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS MUST BE GRANTED WHERE THE COMPLAINT FAILS TO STATE A CLAIM THAT IS PLAUSIBLE ON ITS FACE.**

"After pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. PROC. 12(c).  When reviewing a motion for judgment on the pleadings, the court must look for plausibility in the complaint.  Corder v. Lewis Palmer Sch. Dist. No. 38, 566 F.3d 1219, 1223–24 (10th Cir. 2009).  The court accepts all well-pleaded factual allegations in the complaint as true and views them in the light most favorable to the non-moving party.  See Nelson v. State Farm Mut. Auto. Ins. Co., 419 F.3d 1117, 1119 (10th Cir. 2005) (concluding that the standard applied to a 12(b)(6) motion for failure to state a claim is the same as that to be applied to a motion brought under Rule 12(c)).

To withstand a motion for judgment on the pleadings, the Complaint must "include 'enough facts to state a claim to relief that is plausible on its face.'"  Corder, 566 F.3d at 1223–24, quoting Teigen v. Renfrow, 511 F.3d 1072, 1078 (10th Cir.2007) (internal citations omitted).  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  Id., quoting Robbins v. Okla., 519 F.3d 1242, 1247 (10th Cir. 2008).  If the Complaint fails to "plead 'enough facts to state a claim to relief that is plausible on its face,' the defendant is entitled to judgment on the pleadings."  Corder v. Lewis Palmer Sch. Dist. No. 38, 568 F. Supp. 2d 1237, 1242 (D. Colo. 2008), citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In ruling on a motion for judgment on the pleadings, the Court may consider the complaint, any material that is attached to the complaint, and the answer.  Park Univ. Enters., Inc. v. Am. Cas. Co., 442 F.3d 1239, 1244 (10th Cir. 2006).

Here, Count Five of the Complaint alleges that JCS breached the CSA by failing to adequately perform Project-related duties.  (Complaint ¶ 61.)  As a result of the purported breach, Count Five alleges that Coors was damaged in an amount to be proven at trial. (Complaint ¶¶ 62–63.)  As an affirmative defense, JCS pleaded that Coors' claim is barred in whole or in part by applicable limitations of liability.  (Answer ¶ 91.)  Specifically, Count Five is barred in part by the Limitation of Liability set forth in Paragraph 23.2 of the Agreement:

> Limitation of Liability.  This Agreement is intended to set forth the Parties' sole and exclusive remedies for any and all claims arising out of the Project to the extent covered by **Exhibit J** and Sections 13.2 and 13.3.  For claims other than those associated with CONTRACTOR's indemnification obligations hereunder, arising out of the Project and are not covered by **Exhibit J** and Sections 13.2 and 13.3, CONTRACTOR's liability shall not exceed the Fee as specified in **Exhibit A**.  Any and all releases, limitations on liability, restrictions, exclusions, or indemnities running in favor of a Party to this Agreement shall include in the aggregate the parent or its affiliated or subsidiary companies, and their officers, directors, employees, agents and representatives of that Party.

(CSA Clause 23.2.)

By and through this motion, JCS respectfully requests that the Court adjudicate JCS' affirmative defense enforcing Clause 23.2 of the CSA as against Count Five of the Complaint.

### B.     THE QUESTIONS PRESENTED HEREIN ARE MATTERS OF LAW THAT ARE PROPERLY ADDRESSED BY THE COURT VIA MOTION FOR JUDGMENT ON THE PLEADINGS.

"[I]t is the duty of a court, not a jury, to determine whether an enforceable contract exists."  BWT Mgmt., Inc. v. Gayle, 49 Va. Cir. 365, 366 (Va. Cir. Ct. 1999) (internal citations omitted); see also, Lasership, Inc. v. Watson, 2009 Va. Cir. LEXIS 64, *9 (Va. Cir. Ct. Aug. 12, 2009) (the determinations of whether there is a legally enforceable contractual obligation is a question of law for the court to decide).  The Court's duty includes the determination of

whether a contractual provision is contrary to public policy.  <u>See, e.g.</u>, <u>Chesapeake & Ohio Ry.</u>
<u>Co. v. Clifton Forge-Waynesboro Tel. Co.</u>, 216 Va. 858 (Va. 1976) (question of whether a
liability limitation provision is void as against public policy resolved by the court as a matter of
law).

It is the duty of the court to construe a written contract, as a matter of law, when it
is clear and unambiguous on its face.  <u>Greater Richmond Civic Recreation, Inc. v. A. H. Ewing's</u>
<u>Sons, Inc.</u>, 200 Va. 593, 596 (Va. 1959); <u>Geoghegan Sons & Co. v. Arbuckle Bros.</u>, 139 Va. 92,
100 (Va. 1924) ("[w]here a written contract is clear and unambiguous on its face it is the duty of
the court to construe it"); <u>Bentley Funding Group, L.L.C. v. SK&R Group, L.L.C.</u>, 269 Va. 315,
324 (Va. 2005) ("When the terms of the parties' documents are clear and unambiguous the inter-
pretation of those terms presents a question of law." (internal citations omitted)); <u>Waikoloa Ltd.</u>
<u>P'ship v. Arkwright</u>, 268 Va. 40, 46–47 (Va. 2004) (where language is plain and unambiguous,
its interpretation presents a question of law); <u>Craig v. Dye</u>, 259 Va. 533, 537 (Va. 2000) ("the
interpretation of a contract is a question of law" for the court ) (internal citations omitted).

Moreover, "[t]he question whether an agreement is ambiguous is not one of fact
but one of law, and the function of the court is to construe the contract made by the parties, not to
make a contract for them."  <u>Doswell Ltd. P'ship v. Va. Elec. & Power Co.</u>, 251 Va. 215, 222–23
(Va. 1996), citing <u>Wilson v. Holyfield</u>, 227 Va. 184, 187 (1984).  "Contracts are not rendered
ambiguous merely because the parties or their attorneys disagree upon the meaning of the
language employed to express the agreement."  <u>Id.</u>  "Even though an agreement may have been
drawn unartfully, the court must construe the language as written if its parts can be read together
without conflict."  <u>Id.</u>  Where a Court is asked to determine the enforceability of a contractual
liability limitation, Virginia law places the burden on the party attempting to invalidate that term.
<u>Silver v. JTH Tax, Inc.</u>, Civil Action No. 2:05cv126, 2005 U.S. Dist. LEXIS 36976, at *23 (E.D.
Va. June 21, 2005) ("In Virginia, waivers and limitations of liability in contracts are

enforceable" and "[t]he burden lies on the party attempting to prove that a contract term is invalid, and not on the party seeking to enforce the waiver"), citing <u>Merriman v. Cover, Drayton & Leonard</u>, 104 Va. 428 (1905).

C.   **THE CONTRACTUAL LIMITATION OF LIABILITY IS VALID AND ENFORCEABLE UNDER VIRGINIA LAW.**

1.   **Recent Legislation Confirms that Virginia Code Section 54.1-411 Always Has Permitted the Enforcement of Agreements to Limit Corporate Liability.**

Virginia public policy fully sanctions liability limitation provisions such as the one contained in the CSA.  On March 9, 2010, Governor McDonnell signed into law House Bill 797 ("H.B. 797").  (RJN, Ex. D, Bill Summary.)  H.B. 797 is a "technical" amendment to section 54.1-411, clarifying that it does not, and has never, precluded an engineering firm from limiting its liability by contract.  (<u>See</u>, RJN, Ex. G, Commonwealth of Virginia House of Delegates 2010 Regular Session, February 10, 2010 DVD; <u>see also</u> RJN, Ex. D, Bill Summary.) Specifically, H.B. 797 clarifies section 54.1-411 to read:

> Nothing contained in this chapter . . . shall prohibit the practice of architecture, [or] engineering . . . by a corporation, partnership, sole proprietorship, limited liability company, or other entity provided such practice or certification is rendered through its officers, principals or employees who are correspondingly licensed or certified.  ***No individual practicing architecture [or] engineering . . . under the provisions of this section shall be relieved of responsibility that may exist for services performed by reason of his employment or other relationship with such entity.***  No such corporation, partnership, sole proprietorship, limited liability company, or other entity, or any affiliate thereof, shall . . .be prohibited from (i) purchasing or maintaining insurance against any such liability; (ii) entering into any indemnification agreement with respect to any such liability; (iii) receiving indemnification as a result of any such liability; *or (iv) limiting liability through contract.*  (Emphases added.)

The Virginia legislature's clear and unequivocal clarification should dispel any doubt as to the validity and enforceability of Clause 23.2 of the CSA.  Technical amendments,

such as H.B. 797, "to clarify existing law" to "correct a misinterpretation," or to "overrule wrongly decided cases," are not changes to the meaning or effect of the law, but rather, are efforts to make what was intended all along even more unmistakably clear.[2]  Such amendments are to be afforded <u>great weight</u> in statutory construction.  <u>Brown v. Thompson</u>, 374 F.3d 253, 260 (4th Cir. 2004) ("the Supreme Court has long instructed that "such declarations – i.e., 'subsequent legislation declaring the intent of an earlier statute' – be accorded 'great weight in statutory construction.'") (internal citations omitted).

The Virginia legislature intended that H.B. 797 merely clarify the meaning of section 54.41-411.  The summary of H.B. 797 itself indicates that it is a "technical amendment." (RJN, Ex. D, Bill Summary.)  Moreover, on February 10, 2010, Del. Morgan H. Griffith, the bill's sponsor, testified that H.B. 797 would merely clarify that section 54.41-411 was never intended to restrict an engineering firm's ability to contractually limit its liability:

> Mr. Speaker, ladies and gentlemen, ***when this whole limited liability and professional corporation concept was put in play, it was believed that when they put that—that language in the code that they would be able to contract for the corporation to limit its liability.***  Case came out, said, wait a minute, that's not actually in the code, when you look at it, you'll see it's not in there. ***It was assumed that that would be the case***.  And so what the bill simply does is it says that they can do that. . . . But the real meat is on line 28, which says that—they—they—the corporation, not the individual, but the corporation, can limit by contract its liability when dealing with a third party.

---

[2] <u>Brown</u>, 374 F.3d at 260; <u>see also</u>, <u>Commonwealth of Va. v. Boone</u>, 30 Va. App. 439, 442–43 (1999); <u>Mitchell v. Mitchell</u>, 227 Va. 31, 36 (Va. 1984) ("In our view, this 1977 amendment merely clarified what had always been the meaning and intent of the statute"); <u>Herndon v. St. Mary's Hosp., Inc.</u>, 266 Va. 472, 477 (Va. 2003) (finding General Assembly amendment to be mere clarification of the preexisting law); <u>see also</u>, <u>Abell v. Commonwealth of Va.</u>, 221 Va. 607 (Va. 1980) (finding that a decision was not retroactively applied where it was merely a clarification of the law previously in force); <u>see also</u>, <u>Rowson v. County of Arlington, Va.</u>, 786 F. Supp. 555, 558–59 (E.D. Va. 1992) ("There is a line of cases standing for the proposition that in general, where Congress enacts [a] statute to clarify the Supreme Court's interpretation of previous legislation thereby returning the law to its previous posture, the Act must be applied retroactively" (internal citations omitted)).

(RJN, Ex. G, Commonwealth of Virginia House of Delegates 2010 Regular Session,

February 10, 2010 DVD (emphases added).)[3]

As Del. Griffith made clear, H.B. 797 was a direct response to the ruling in The

Bromptons @ Cherrydale, LLC v. Meyer Consulting Engineers Corp., ("The Bromptons") Civil

Action No. 06-1418 (Cir. Court Aug. 02, 2004).  (See RJN, Ex. G, Commonwealth of Virginia

House of Delegates 2010 Regular Session, February 10, 2010 DVD; see also, Notice of

Lodgment ("NOL"), Ex. E, ACEC News Articles.)  Although The Bromptons settled before trial,

the court expressed the view that liability limitations in professional services contracts were

unenforceable pursuant to section 54.1-411 as written.  (See, NOL, Ex. E, ACEC News Articles;

RJN, Ex. G, Commonwealth of Virginia House of Delegates 2010 Regular Session, February 10,

2010 DVD.)  Because section 54.1-411 was never intended to preclude liability limitations in

professional services contracts, the Virginia House and Senate passed H.B. 797 to provide

guidance to the courts on the import of the code section and thus prevent future

misinterpretations of the statute.  Thus, the legislature rejected the rationale for rejecting the

liability limitation in The Bromptons and commensurately denied the argument advanced by

Coors in opposition to Jacobs' Earlier Motion.  (See Docket, Doc. 33, pp. 13–17 & 19.)

> **2.**      **A Plain Reading of Virginia Code Section 54.1-411 Authorizes**
> **Contractual Liability Limitations Contained in Construction or**
> **Engineering Services Contracts.**

Section 54.1-411 of the Virginia Code is entitled "Organization for practice;

registration."  This Code section deals with corporate formation and permits architects and

engineers to organize as a corporation for the purpose of practicing their professions, so long as

---

[3] Video Footage of Del. Griffith's Statements made on the floor of the Virginia House are
available from the House.  The Video Footage and transcription are lodged with the Court
simultaneous with the filing of this Motion.

their practice "is rendered through [such entity's] officers, principals, or employees who are correspondingly licensed." Va. Code § 54.1-411. Section 54.1-411 specifies, however, that the **act of organizing** into a legal entity does not, in itself, "limit the liability of any licensee . . . for damages arising from his acts or limit such corporation . . . or other entity from liability for acts of its employees or agents." Id. Once organized as a professional corporation, section 54.1-411 expressly permits the corporation to enter into individual insurance or indemnification agree-ments to limit or shift its liability. Id. Specifically, section 54.1-411 provides in relevant part:

> Nothing contained in this chapter or in the regulations of the Board shall prohibit the practice of architecture, engineering, land survey-ing or the offering of the title of certified landscape architect or certified interior designer by any corporation, partnership, sole proprietorship, limited liability company, or other entity provided such practice or certification is rendered through its officers, prin-cipals or employees who are correspondingly licensed or certified. No such *organization* shall limit the liability of any licensee or certificate holder for damages arising from his acts or limit such corporation, partnership, sole proprietorship, limited liability company, or other entity from liability for acts of its employees or agents.

Id. (emphasis added).

Coors previously offered an out-of-context reading of the sentence beginning "[n]o such organization shall limit the liability of any licensee for damages arising from his acts," suggesting that the sentence bars contractual limitations of liability that would otherwise be permissible. Such an interpretation is contrary to the express language of section 54.1-411, legislative intent, and established common law.[4]

The express language of section 54.1-411 allows engineers to organize as a professional corporation. Id. The express language clarifies that the **act of organization** does not limit the liability of either the individual engineers or the corporation. Id. The express

---

[4] Notably, statutory construction is a matter of law properly addressed by the Court. Smit v. Shippers' Choice of Va., Inc., 277 Va. 593, 597 (Va. 2009) ("statutory construction is a question of law").

language provides that, once organized, a professional corporation may limit or shift its liability through insurance or agreements for indemnification.  Id.  The express language does **not** purport to restrict the professional corporation's freedom to negotiate and enter into contractual limitations of liability, nor does it purport to overturn or otherwise repeal the long and established Virginia legal precedent and policy favoring a corporation's freedom to contract, including freedom to distribute risk between contracting parties through liability limitations.  Id.

To the extent that the Court concludes that a plain reading of section 54.1-411 is insufficient to resolve the issue, the court may apply the rules of statutory construction to determine legislative intent, "the paramount object of statutory construction."  Va. Dep't of Labor & Indus. v. Westmoreland Coal Co., 233 Va. 97, 101–02 (Va. 1987).  Here, Coors relies on a misconceived and isolated reading of one sentence of the statute.  Such a reading is inconsistent with the time-honored rule of statutory construction that a provision must be read as a whole.[5]  When section 54.1-411 is read as a whole, it is evident the sentence relied on by Coors, simply clarifies that the use of a professional corporation will not automatically eliminate all potential liability.  Section 54.1-411's intent is to proscribe structuring an organization in such a way as to limit an agent's liability for his acts or an entity's liability for the acts of its agents.  This reading is consistent with paragraph B of section 54.1-411, which requires that an identifiable licensed agent of the entity have control over the work:  "The person or persons named shall be responsible and have control of the regulated services rendered by the entity."  This requirement ensures that established common law rules of principal/agent liability will continue to govern the practice of such a profession through a corporate entity.  This is precisely the reading that was afforded section 54.1-411 in Roanoke Props. Ltd. P'ship v. Dewberry & Davis, No. 93-59-CIV-2-BO, 1996 U.S. Dist. LEXIS 10521 (E.D.N.C. June 3, 1996) (applying Virginia law):

---

[5] Garrison v. First Fed. Sav. & Loan Ass'n, 241 Va. 335, 340 (Va. 1991) ("Rules of statutory construction dictate that a statute should be construed as a whole, and, if it is subject to more than one interpretation, that which will carry out the legislative intent should be applied").

Plaintiff further contends that the limitation of liability provision in P 22 of Attachment B to the contract is void.  Plaintiff argues that Virginia Code § 54.1-411(a) precludes engineers or engineering firms from limiting their liability.  Plaintiff misconstrues, however, the scope of the statute.  That statute, which pertains to the organization of entities offering engineering services to the public, merely proscribes structuring an organization in such a way as to limit an agent's liability for his acts or an entity's liability for the acts of its agent.  In fact, Virginia law provides that parties to a contract may determine how liability will be apportioned. <u>Chesapeake & Ohio Ry. v. Clifton Forge-Waynesboro Tel. Co.</u>, 216 Va. 858, 863 (1976).

(<u>Id.</u>)

Moreover, Coors' previously suggested reading of this code is contrary to the

established rule of statutory construction that a statute may not be read to contradict a common

law rule or prior judicial precedent, absent clear and unequivocal statutory language.[6]  As set

---

[6] <u>See, e.g.</u>, <u>Witt v. United Cos. Lending Corp. (In re Witt)</u>, 113 F.3d 508, 513 (4th Cir. 1997) ("It is firmly entrenched that Congress is presumed to enact legislation with knowledge of the law . . . absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction."  Holding that absent a "clear manifestation," the statute at issue would not be read to overrule established judicial precedent.  "If Congress intended such a revolutionary change in the law, . . . it would have made clear its intention to do so.") (internal citations omitted); <u>Gerald M. Moore & Son, Inc.</u>, 251 Va. 277 ("When construing a statute in derogation of the common law, we apply several established principles.  A statutory provision will not be held to change the common law unless the legislative intent to do so is plainly manifested.  Statutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms."); <u>Isbell v. Commercial Inv. Assocs., Inc.</u>, 273 Va. 605, 613 (Va. 2007) ("When construing a statute in derogation of the common law. . . . A statutory provision will not be held to change the common law unless the legislative intent to do so is plainly manifested. . . . Statutes in derogation of the common law are to be strictly construed and not be enlarged in their operation by construction beyond their express terms."); <u>Donahue v. Warner Bros. Pictures, Inc.</u>, 194 F.2d 6, 24 (10th Cir. 1952) ("It is a well-settled rule of statutory construction that a legislature will be presumed not to have intended to overturn by statute long-established principles of law, unless such intent clearly appears, either by express declaration or by necessary implication. It is further a rule of statutory construction that rules of the common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language."); <u>Anderson v. Longmont Toyota, Inc.</u>, 102 P.3d 323, 330 (Colo. 2004) ("Had the General Assembly intended to modify the reopening provisions of section 8-43-303 when it adopted section 8-42-105(4), it would have expressed such an intent in the statutory language it chose to utilize, or the legislative history, or both.  In neither do we find the legislature's intent to repeal or modify the ICAO's

forth below, Virginia courts unequivocally expound a Virginia policy favoring freedom of contract and the enforcement of contractual liability limitations.[7]  Indeed, the Virginia Supreme Court has specifically upheld the enforceability of liability limitations in construction and engineering contracts.  See Fidelity & Cas. of N.Y. v. Copenhaver Contracting Co. Inc., 159 Va. 126, 135 (Va. 1932).  Section 54.1-411 does not purport to overrule or interfere with the common law rule that contractual liability limitations are valid and enforceable.  As such, it may not be read to eviscerate JCS' freedom to contractually limit its liability.[8]

Had the legislature intended to prohibit contractual limitations of liability in this circumstance, it knew how to do so.  For example, in section 56-119, which prohibits common carriers from limiting liability by contract, the Virginia legislature used express and explicit language precluding the use of contractual liability limitations:

> No **contract**, receipt, rule, or regulation shall exempt any transportation company from the liability of a common carrier which would exist had no **contract** been made or entered into and no such **contract**, receipt, rule or regulation for the exemption for injury or loss occasioned by the neglect or misconduct of such transportation company as a common carrier shall be valid.

(Emphasis added.)  The common carrier statute clearly bars contractual exemptions from liability, showing that where the legislature intends to impose such a restriction on a party's freedom to contract, it expressly so provides.

The Virginia legislature's failure to include an express prohibition on contractual liability limitations was *purposeful*, as section 54.1-411 was *never intended* to prohibit an engineering corporation from entering into agreements that contained limitations on its liability.

---

remedial authority to reopen workers' compensation awards, as it did in the two cases before us."); Haw. v. Office of Hawaiian Affairs, 129 S. Ct. 1436, 1445 (U.S. 2009) ("repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal [is] clear and manifest.").

[7] See, e.g., Section III.C.3, infra.

[8] See Footnote 6, supra.

Clifton A. Woodrum, the sponsor of what is today section 54.1-411, has declared that the

purpose of the statute was to allow architects, engineers, and land surveyors to practice their

professions in a corporate form, while not limiting their professional responsibility by such

corporate organization.  (RJN, Ex. B, Affidavit of Clifton A. Woodrum.)  Mr. Woodrum, in

retrospect, acknowledged that the sentence relied on by Coors may be subject to ambiguity, but

was <u>never intended to prohibit engineers from contractually limiting their liability</u>.  <u>Id.</u>  Rather, it

was merely intended to make clear that the fact of organization shall not limit the liability of the

individual engineer.  <u>Id.</u>  Mr. Woodrum's statements are further supported by Robert Nebiker,

the legislative liaison for the Board of Architects, Engineers and Land Surveyors and the

Department of Professional and Occupational Regulation during the passage of what is today

section 54.1-411.  (RJN, Ex. C, Affidavit of Robert Nebiker.)  Mr. Nebiker confirmed that the

Board and Department sought introduction of section 54.1-411 to clarify who was permitted to

practice through a professional organization.  <u>Id.</u>  The Board and Department did not intend that

section 54.1-411 prohibit architects or engineers from contractually limiting their liability.  <u>Id.</u>

The statements from Mr. Woodrum and Mr. Nebiker, the founders of today's section 54.1-411,

are uncontestable evidence of the legislature's true intent.  Indeed, in Virginia, courts may

properly consult affidavits of legislators or others involved in the passage of a bill to construe

statutory language.  <u>See, e.g.</u>, <u>Sch. Bd. of Chesterfield County v. Sch. Bd. of City of Richmond</u>,

247 S.E. 2d 380, 383 (Va. 1978) (suggesting by implication that the "testimony of a member of

the General Assembly who was also a member of the task force" that had recommended adop-

tion of the legislation at issue was the kind of "extrinsic evidence of legislative intent" that *could*

be "admitted to construe a legislative act" *if* the act were ambiguous "on its fact").

**3.** **Virginia Common Law Strongly Favors Freedom of Contract and Courts Routinely Enforce Contractual Liability Limitations.**

The recent legislative clarification of the code and the plain reading of the statute are consistent with Virginia common law, which has long upheld the enforceability and validity of contractual liability limitations.  See, e.g., The Chesapeake & Ohio Ry. Co., 216 Va. 858 (upholding a railway companies' freedom to contract away its own negligence when not acting as a common carrier); Ripley Heatwole Co. v. John E. Hall Elec. Contractor, Inc., 69 Va. Cir. 69, 71 (Cir. Ct. 2005) (noting that a "contractual provision specifically limiting a party's liability" embodies "one of the essential purposes of contract law—the freedom of parties to limit their risks in commercial transactions"); Howie v. Atl. Home Inspection, Inc., 62 Va. Cir. 164, 167–70 (Cir. Ct. 2003) (upholding contract provision limiting a termite inspector's liability to the cost of inspection); Phoenix Med. Elec. Servs. Inc. v. Klamm, 18 Va. Cir. 128, 129 (Cir. Ct. 1989) ("Since the contract specifically limits liability to the cost of repairing or correcting the defects, claims other than for such cost are demurrable."); Gill v. Rollins Protective Servs. Co., 722 F.2d 55, 58–59 (4th Cir. 1983) ("a party . . . may exempt itself from liability for negligence in a contract with a party on equal footing"); Nat'l Motels, Inc. v. Howard Johnson, Inc., 373 F.2d 375, 379 (4th Cir. 1967) (holding that it is not against public policy to contract to limit one's own liability); Kocinec v. Pub. Storage, Inc., 489 F. Supp. 2d 555, 558 (E.D. Va. 2007) (Virginia courts "regularly enforce exculpatory agreements"); Trumball Invs., Ltd. v. Wachovia Bank, N.A., No. 1:05CV15 (GBL), 2005 U.S. Dist. LEXIS 7195, at *10 (E.D. Va. Apr. 15, 2005) ("Virginia courts regularly enforce exculpatory agreements."); see also, Estes Express Lines, Inc. v. Chopper Express, Inc., 273 Va. 358, 364 (Va. 2007) ("the law looks with favor upon the making of contracts between competent parties upon valid consideration and for lawful purposes. [citation]  Furthermore, although contracts that violate public policy are void, courts are averse to

holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain.  [citations]" (internal markings omitted).

These decisions recognize that sophisticated entities (such as Jacobs and Coors) must be afforded the freedom to contractually allocate risk, responsibility, and costs in commercial transactions.  Virginia common law favors freedom of contract, including enforcing liability limitations.  Specific to this context, the Virginia Supreme Court has upheld the enforceability of liability limitations in construction and engineering services contracts.  As early as 1932, in Fidelity and Casualty of New York, 159 Va. at 135, the Virginia Supreme Court upheld the enforceability of liability limitations in construction contracts.  There, the parties to a construction contract agreed to a provision that limited the remedy for a breach to liquidated damages of $10 a day.  Id. at 134–35.  In Fidelity, the Virginia Supreme Court recognized that liability limitations were long held to be enforceable by Virginia courts.  Id. at 135, citing Welsch v. McDonald, 85 Va. 500 (1888), Crawford v. Heatwole, 110 Va. 358 (1909), Note in 34 L.R.A. (N.S.) 587, 17 C.J. 931, 8 R.C.L., and ELLIOT ON CONTRACTS, Vol. 4, p. 986.

In Gerald R. Moore & Sons v. Drewry, 251 Va. 277 (Va. 1996), the Virginia Supreme Court held that an engineering firm's liability was limited.  There, the Court held that an engineering firm could not be liable in negligence where the damages arose out of an engineering services contract.  In essence, the contract itself functioned as a limitation on tort claims alleging economic losses.  Id.  The Virginia Supreme Court did not find section 54.1-411 to be at all relevant in its analysis or to its holding, implicitly recognizing that section 54.1-411 was not intended to prohibit contractual liability limitations.  Id.

4.      **Recent Decisions Arising in Several States Confirm that Public Policy Sanctions Contractual Liability Limitations to Allocate Risk and Costs in Commercial Construction Services Contracts.**

Virginia law is in line with the great weight of authority upholding the enforce-ability of liability limitations in construction and engineering services contracts.  As an example, within just the last few years, courts in North Carolina,[9] Georgia,[10] and Pennsylvania[11] have all **denied** challenges to the enforceability of liability limitations in construction services contracts on public policy grounds.  Moreover, numerous other states similarly conclude that where two sophisticated commercial entities enter into a construction services agreement limiting an engineer or contractor's liability, such provisions are valid and enforceable in a court of law.[12]

---

[9] Blaylock Grading Co. v. Neal Smith Eng'g, 189 N.C. App. 508 (N.C. Ct. App. 2008) (reversing a trial court decision that held a risk allocation provision contained in an engineering services contract, and noting that an agreement to allocate risk between two sophisticated, professional parties who conducted business at arm's length was not void as against public policy).

[10] Precision Planning, Inc. v. Richmark Communities, Inc., 298 Ga. App. 78 (Ga. Ct. App. 2009) (reversing trial court order denying motion for partial summary judgment brought by an architect seeking to enforce a contractual liability limitation clause limiting damages to the fee received; noting that courts should exercise extreme caution in declaring a contract void as against public policy, and holding that the liability limitation is not contrary to Georgia public policy); see also, Mosteller Mansion v. Mactec Eng'g & Consulting of Ga., Inc., 2008 N.C. App. LEXIS 1011 (May 20, 2008) (unpublished) review denied, 362 N.C. 473 (2008) (upholding trial court order granting partial summary judgment for the defendant, a professional engineering firm, limiting the amount recoverable as damages to the amount of fees paid by plaintiff to defendant pursuant to a contractual liability limitation contained in the engineering services contract, and *holding that the provision did not violate Georgia's public policy*).

[11] Mistry Prabhudas Manji Eng'g v. Raytheon Eng'rs & Constructors, Inc., 213 F. Supp. 2d 20 (D.C. Mass. 2002) (holding that design professionals may contractually limit their liability to clients, and noting that in the commercial setting, a limitation of damages clause will rarely be found unconscionable).

[12] See, e.g., 1745 Wazee, LLC v. Castle Builders, Inc., 89 P.3d 422 (Colo. App. 2003) (liability limitation in construction contract upheld as valid and enforceable under Colorado public policy); Douglas Randall, Inc. v. AFA Protective Sys., 516 F. Supp. 1122 (E.D. Pa. 1981) (find-ing exculpatory clause in contract limiting a contractor's liability for negligence to be valid); Georgetown Steel Corp. v. Union Carbide Corp., 806 F. Supp. 74 (D.S.C. 1992), judgment rev'd on other grounds, 7 F.3d 223 (4th Cir. 1993) (unpublished) appeal after remand, 100 F.3d 950

Like Virginia, these courts recognize the import that the freedom to allocate liability plays in contracts between commercial entities, and in particular among owners and contractors.

### D.     CLAUSE 23.2 OF THE CSA LIMITS COORS' RECOVERY UNDER COUNT FIVE TO JCS' FEE.

Virginia courts adhere to the "plain meaning" rule.  Lerner v. Gudelsky Co., 230 Va. 124, 132 (Va. 1985).  "Where an agreement is complete on its face and is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself."  Id.[13] "[T]he function of the court is to construe the contract made by the parties, not to make a contract for them."  Doswell Ltd. P'ship v. Va. Elec. & Power Co., 251 Va. 215, 222 (Va. 1996).  Thus, where contract terms are clear and unambiguous, a court must construe the terms according to their plain meaning and "may not add to the terms of the contracts of parties by construction, in order to meet the circumstances of a particular case."  Bentley Funding Group, L.L.C. v. SK&R Group, L.L.C., 269 Va. 315, 329 (Va. 2005) (internal citations and markings omitted).

The plain and unambiguous language of Clause 23.2 of the CSA limits JCS' liability for all claims that "aris[e] out of the Project," unless the claims are "associated with" the CSA's indemnification provisions or "covered by" its insurance provisions:

---

(4th Cir. 1996) (engineer's limitation of liability clause enforced where contained in contract between parties of roughly equal bargaining power and losses limited to fee); Pride v. S. Bell Tel. & Tel. Co., 244 S.C. 615 (S.C. 1964) (upholding contractual limitation of liability for negligence).

[13] See also Berry v. Klinger, 225 Va. 201, 208 (1983); Ames v. Am. Nat'l Bank, 163 Va. 1, 38 (1934) ("The pole star for the construction of a contract is the intention of the contracting parties as expressed by them in the words they have used. . . . It is the court's duty to declare what the instrument itself says it says."); Great Falls Hardware Co. of Reston v. S. Lakes Village Ctr. Assocs., L.P., 238 Va. 123, 125 (1989) ("Where language is unambiguous, it is inappropriate to resort to extrinsic evidence; an unambiguous document should be given its plain meaning.").

> For claims other than those associated with CONTRACTOR's
> indemnification obligations hereunder, arising out of the Project
> and are not covered by Exhibit J and Sections 13.2 and 13.3,
> CONTRACTOR's liability shall not exceed the Fee as specified in
> Exhibit A.

(CSA at Clause 23.2.)  The allegations contained in Count Five are not "associated with" any

indemnification obligations imposed by the Agreement, nor are they "covered by Exhibit J or

Sections 13.2 and 13.3," which are insurance provisions of the Agreement.

To determine whether any particular claim is covered by the CSA's Limitation of

Liability, one must determine whether the claim "aris[es] out of the Project."  (CSA at

Clause 23.2.)  The CSA defines "Project" in section 1.11:

> Project is the desired result of the Work, which is the subject of the
> Agreement Documents.  The Project is described as an expansion
> of COORS facilities in Elkton, Virginia to include a brew house
> grain handling, fermentation, yeast handling, beer processing, utili-
> ties, waste treatment plant, and associated infrastructure, as more
> fully specified in **Exhibit B**, Scope of Work.

(CSA at Clause 1.11.)  In its Complaint, Coors defines "Project" in much the same way, as

"Coors' new 7,000,000 barrel-per-year brewing facility in Elkton, Virginia (the 'Project')."

(Compl. ¶ 4.)

It is self-evident that Count Five "aris[es] out of the Project."  In Count Five,

Coors alleges that JCS breached the CSA by not properly managing the Project, not completing

the Project on time, billing Coors for rework done on the Project, and not "adequately

control[ling] the Project's cost."  (Compl. ¶ 61.)  Each allegation, calls into question JCS' per-

formance of Project-related duties as defined in the CSA.  Indeed, by its very nature, a breach of

the CSA, which was drafted to define the parties' duties, rights, and responsibilities for this

Project, must arise out of the Project.

Thus, it is clear from the plain and unambiguous language of section 23.2 of the

CSA that Coors' recovery under Count Five of the Complaint (if at all) is limited to Jacobs' Fee.

JCS respectfully requests that the Court enforce the liability limitation and enter partial judgment

on the pleadings in favor of JCS' affirmative defense as it applies to Count Five of the

Complaint.

## IV.

## <u>CONCLUSION</u>

As a matter of law, to the extent Jacobs is liable for breach of the CSA under

Count Five of the Complaint, Clause 23.2 limits Jacobs' liability to the Fee it received.


DATED:  June 10, 2010

<u>s/David G. Palmer</u>
David G. Palmer, COSB No. 2634
GREENBERG TRAURIG LLP
1200 17th Street, Suite 2400
Denver, Colorado  80202
Telephone:  (303) 572-6500
Facsimile:  (303) 572-6540
E-mail:  PalmerDG@gtlaw.com
Attorneys for Defendant/Third-Party Plaintiffs
JACOBS ENGINEERING GROUP INC., JACOBS
INDUSTRIAL SERVICES, INC., a/k/a JACOBS
CONSTRUCTION SERVICES, INC., and
JACOBS CONSTRUCTION, INC.


DATED:  June 10, 2010

<u>s/Albert E. Peacock III</u>
Samuel A. Keesal, Jr., COSB No. 21130
Scott T. Pratt, CASB No. 67192
Terry Ross, CASB No. 58171
Albert E. Peacock III, CASB No. 134094
Elizabeth P. Beazley, CASB No. 138198
KEESAL, YOUNG & LOGAN
400 Oceangate, P.O. Box 1730
Long Beach, California  90802
Telephone:  (562) 436-2000
Facsimile:  (562) 436-7416
E-mail:  al.peacock@kyl.com
Co-Counsel for Defendant/Third-Party Plaintiffs
JACOBS ENGINEERING GROUP INC., JACOBS
INDUSTRIAL SERVICES, INC., a/k/a JACOBS
CONSTRUCTION SERVICES, INC., and
JACOBS CONSTRUCTION, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of June 2010, a true and accurate copy of MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT JACOBS CONSTRUCTION SERVICES, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS ON DEFENDANT'S CONTRACTUAL LIMITATION OF LIABILITY was electronically filed with the Clerk of Court using the CM/ECF system which sent notification via email to:

Randall H. Miller, Esq.
HOLME ROBERTS & OWEN LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203-4541
E-mail:  Randy.Miller@hro.com

Robert C. Chambers, Esq.
SMITH CURRIE & HANCOCK LLP
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia 30303-1227
E-mail:  RCChambers@smithcurrie.com

Christian Heath Hendrickson, Esq.
SHERMAN & HOWARD LLC
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
E-mail:  chendrickson@shermanhoward.com

Paul F. Keneally, Esq.
UNDERBERG & KESSLER LLP
300 Bausch & Lomb Place
Rochester, New York 14604
Telephone:  584-238-2724
Facsimile:  584-258-2822
E-mail:  pkeneally@underbergkessler.com

GREENBERG TRAURIG LLP

s/ Jennifer Stafford
Jennifer Stafford
1200 17th Street, Suite 2400
Denver, Colorado 80202
Telephone:  303-572-6500
Facsimile:  303-572-6540
Email:  StaffordJL@gtlaw.com