**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
Senior District Judge Richard P. Matsch

Civil Action No. 1:08-cv-00985-RPM
(Consolidated w/Civil Action No. 09-cv-00271-RPM)

COORS BREWING COMPANY AND
BRIGGS OF BURTON, PLC,

        Plaintiffs,

v.

JACOBS ENGINEERING GROUP INC.,
JACOBS INDUSTRIAL SERVICES, INC., a/k/a
JACOBS CONSTRUCTION SERVICES, INC., and
JACOBS CONSTRUCTION, INC.,

        Defendants,

and

JACOBS ENGINEERING GROUP INC. and
JACOBS CONSTRUCTION SERVICES, INC.,

        Third-Party Plaintiffs,

v.

BRIGGS OF BURTON, PLC,

        Third-Party Defendant.

---

## Coors' Response in Opposition to Jacobs' Motion for Judgment on the Pleadings on Contractual Limitation of Liability

---

       Coors Brewing Company ("Coors") respectfully submits its Response in Opposition to

Jacobs Construction Services, Inc.'s ("JCS") Motion for Judgment on the Pleadings on

Defendant's Contractual Limitation of Liability.  (Doc. No. 66).

**Summary of Argument**

JCS "urges" this Court—for the second time—to do what no Virginia court has ever done:  interpret Va. Code Ann. § 54.1-411 (2000) to mean that architects and engineers in Virginia can contractually limit their liability.  JCS previously moved for summary judgment on this issue (Doc. No. 27)—and lost (Doc. No. 53) (Order Denying Motion for Partial Summary Judgment).  The only thing that has changed since the Court's Order is that the statute has been "amended and reenacted"—which, as a matter of settled Virginia law, means the statute's legal effect has been changed, but only for contracts formed after the amended and reenacted statute's effective date (here, July 1, 2010).

The contract between Coors and JCS, which has an effective date of April 11, 2005, continues to be governed by the statute in effect when the contract was made.  And, as every Virginia court to have considered the matter has recognized, that statute prohibits the liability limitation that JCS says it obtained despite Virginia law.  The "amendment and reenactment" of the statute confirms that while JCS may be able to limit its liability to future Virginia clients after July 1, 2010, its liability to past clients such as Coors cannot be limited.  The motion should be denied, with prejudice.

**Standard of Review**

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is treated as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Atl. Richfield v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).  Under this standard, the Court must accept all well-pleaded allegations of the complaint as true and construe them in the light most favorable to the non-moving party.  *Realmonte v. Reeves*, 169 F.3d 1280, 1283 (10th Cir. 1999).  Well-pleaded

allegations are those that are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). "[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss is a harsh remedy requiring careful study. *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## Argument and Legal Authority

**I.      Applicable Virginia law prohibits limitation of an engineer's liability.**

### A.      "Amendment and Reenactment" in Virginia

The relevant law here, Section 54.1-411, was "amended and reenacted" by the Virginia General Assembly, effective July 1, 2010.[1] These two words—"amended" and "reenacted"— have settled meanings in Virginia law. Those meanings are exactly contrary to the result JCS requests here.

First, a statutory "amendment" is presumed to change the pre-existing law. *Baker v. Commonwealth*, 504 S.E.2d 394, 398 (Va. App. 1988) ("Legislative amendments are presumed as intended to effect a change in the law), *aff'd*, 516 S.E.2d 219 (Va. 1999) (quoting *Shaw v. Commonwealth*, 387 S.E.2d 792, 794 (Va. App. 1990)); *Chappell v. Perkins*, 587 S.E.2d 584, 587 (Va. 2003) ("Legislation is presumed to effect a change in the law unless there is a clear indication that the General Assembly intended that the legislation declare or explain existing

---

[1] *See* 2010 Virginia Laws Ch. 206 (SB104ER) (attached hereto as **Exhibit 1**). "Amended and reenacted" is on the face of the bill, and the effective date is reflected on Ex. 1 at p. 3 ("effective 7/1/10"). The language of Senate Bill SB104ER (Ex. 1) and House Bill 797ER (JCS's Memo. Ex. F) is identical.

law."); *Horner v. Dept. of Mental Health*, 597 S.E.2d 202, 205 (Va. 2004) (same); *Wisniewski v.*

*Johnson*, 286 S.E.2d 223, 225 (Va. 1982) (same).

Second, a statutory "reenactment," by definition, means that "the *changes* to a section of

the Code of Virginia … are effective *prospectively*[.]" Va. Code Ann. § 1-238 (emphases added);

*Berner v. Mills*, 579 S.E.2d 159, 161 (Va. 2003). By contrast, when the Virginia General

Assembly does not intend to make a substantive change, it "recodifies" the statute. *Waldrop v.*

*Commonwealth*, 495 S.E.2d 822, 825 (Va. 1998) ("Generally, there is a presumption that a

recodified statute does not make substantive changes in the former statute unless a contrary intent

plainly appears in the recodified statute.").

Virginia law therefore provides that an amended and reenacted statute changes prior

Virginia law, but does so only prospectively. *Baker*, 504 S.E.2d at 398; *Chappell*, 587 S.E.2d at

587; *Berner*, 579 S.E.2d at 161; Va. Code Ann. § 1-238. As explained below, the prospective

changes to Section 54.1-411 show that the liability limitation JCS obtained from Coors is

unenforceable under the prior version of the statute, which governs here.

      **B.**      **Before amendment and reenactment, Section 54.1-411 plainly prohibited engineering corporations like JCS from limiting their liability to their clients.**

The statute in effect when the parties contracted prohibited design professionals in

Virginia from limiting their liability by contract. The statute's relevant part provides:

> A. Nothing contained in this chapter or in the regulations of the Board shall prohibit the practice of architecture, engineering, land surveying or the offering of the title of certified landscape architect or certified interior designer by any corporation, partnership, sole proprietorship, limited liability company, or other entity provided such practice or certification is rendered through its officers, principals or employees who are correspondingly licensed or certified. **No such organization shall *limit the liability* of any licensee or certificate holder for damages arising from his acts or *limit* such corporation, partnership, sole**

> **proprietorship, limited liability company, or other entity from *liability for acts of its employees or agents***.  No such corporation, partnership, sole proprietorship, limited liability company, or other entity, or any affiliate thereof, shall, on its behalf or on behalf of any such licensee or certificate holder, be prohibited from (i) purchasing or maintaining insurance against any such liability; (ii) entering into any indemnification agreement with respect to any such liability; or (iii) receiving indemnification as a result of any such liability.

Va. Code Ann. § 54.1-411(A) (2000) (emphasis added).

Virginia courts that have examined Va. Code Ann. § 54.1-411 have uniformly held that design professionals in Virginia ***cannot*** contractually limit their liability.  *Joule, L.L.C. v. Meyer Consulting Engineers Corp.*, No. 06-1410, 2007 WL 6894844 (Va. Cir. Ct. (Arlington) Aug. 30, 2007) (limitation of liability provision unenforceable as a matter of law under Va. Code Ann. § 54.1-411(A)) (Order attached as **Exhibit 2**); *Ed Peete Co. v. Meyer Consulting Engineers Corp.*, No. 06-1417 (Va. Cir. Ct. (Arlington) Aug. 30, 2007) (limitation of liability provision unenforceable as a matter of law under Va. Code Ann. § 54.1-411(A)) (Order attached as **Exhibit 3**); *The Bromptons @ Cherrydale, LLC v. Meyer Consulting Engineers Corp.*, No. 06-1418, 2007 WL 7042806 (Va. Cir. Ct. (Arlington) Aug. 30, 2007) (limitation of liability provision unenforceable as a matter of law under Va. Code Ann. § 54.1-411(A)) (Order attached as **Exhibit 4**); *Interstate, L.L.C. v. Triad Engineering, Inc.*, No. CL04-00169 (Va. Cir. Ct. (Rockingham) Sept. 12, 2008) (Va. Code Ann. § 54.1-411 appears to prohibit the limitation of liability sought by defendant) (Order attached as **Exhibit 5**).

In making the rulings in the *Meyer Consulting* cases, the court stated that the statute should be interpreted to prohibit an engineering corporation from contractually limiting its liability.  Hearing Transcript at 32:8–11 (Aug. 30, 2007) (Transcript attached as **Exhibit 6**).  The court further reasoned that "the fact that the statute at the end provides for other ways of

protecting engineers and other professionals subject to this code statute through maintaining insurance or entering into indemnity agreements or receiving indemnification as a result of other liabilities supports that." *Id.* at 32:12–17.  The judge in the *Meyer Consulting* cases, Hon. James F. Almand—who held that the engineer's limitation-of-liability provision was unenforceable as a matter of law under the statute—was a member of the Virginia General Assembly when the statute was passed.[2]

These decisions by Virginia courts are supported by the plain language of Section 54.1-411.  Virginia courts are bound by the plain meaning of statutory language, and must apply that plain language. *Lynchburg Div. of Social Servs. v. Cook*, 666 S.E.2d 361, 368 (Va. 2008).  "If the language is plain and unambiguous, there is no need for judicial construction; the language will be applied as written." *Gillespie v. Commonwealth of Virginia*, 636 S.E.2d 430, 432 (Va. 2006).

Here, the statutory language is plain:

> No such organization shall limit the liability of any licensee or certificate holder for damages arising from his acts or limit such corporation, partnership, sole proprietorship, limited liability company, or other entity from liability for acts of its employees or agents.

Va. Code Ann. § 54.1-411(A) (2000).  The application of this language is straightforward.  JCS is a corporation (an "organization") which has purported to "limit" its "liability" for the "acts of its employees or agents."  This is exactly what Section 54.1-411 says JCS cannot do.

JCS argues that Section 54.1-411's reference to limiting liability for acts of "employees

---

[2] *See* Virginia House of Delegates bio for Delegate James F. Almand, *available at* http://dela.state.va.us/dela/Membios.nsf/94f6e9b9c9b5678f85256b1b00732227/a35bd8220206e74e85256b35005fb6 ed?OpenDocument&Highlight=0,Almand (accessed June 30, 2010).  Judge Almand was a member of the Virginia House of Delegates from 1978–2003.  The statute was first passed in 1982 as House Bill 604 (1982 Acts, c.590) enacted, in part, as Section 54-37.3 of the Code of Virginia.  The statute is now Section 54.1-411.

or agents" means only that the "act of organization" does not preclude liability for the acts of employees or agents. JCS's Memo. at 9. This is incorrect.

First, the statute does not refer to "the act of organization." It refers instead to "no such organization." The immediately preceding reference is to "any corporation, partnership, sole proprietorship, or limited liability company." Under the rule of the last antecedent, "no such organization" therefore means "no such corporation, partnership, sole proprietorship, or limited liability company." *Roman v. Ondeo Degremont, Inc.*, 627 S.E.2d 539, 542 (Va. App. 2006) ("'Such' is a descriptive and relative word, and refers to the last antecedent, unless the meaning of the sentence would be impaired.") (quoting *Strawberry Hill Land Corp. v. Starbuck*, 97 S.E.2d 362, 367 (Va. 1918)); *City of Lynchburg v. English Constr. Co.*, 675 S.E.2d 197, 201 (Va. 2009); 2A N. Singer, *Sutherland on Statutory Construction*, § 47.33, p. 369 (6th rev. ed. 2000) ("Referential and qualifying words, where no contrary intention appears, refer solely to the last antecedent."). The organization, not the "act of organization," is prohibited from limiting its liability.

Second, JCS does not explain how the "act of organization" would limit an organization's liability for the acts of its employees and agents. Virginia, like every other state, makes corporations and other business entities liable for the acts of their employees and agents acting within the course and scope of their employment. *See, e.g., Giant, Inc. v. Enger*, 515 S.E.2d 111, 112 (Va. 1999). Simply put, the "act of organizing" makes corporations liable for the acts of individuals. But under JCS's view, the Virginia General Assembly, mysteriously worried that a court would hold engineering corporations (and also partnerships, sole proprietorships, and limited liability companies) immune from liability for the acts of their employees and agents,

went out of its way to restate this settled rule in the statute.

This shows that JCS's reading cannot be right.  *See Branch v. Commonwealth*, 419 S.E.2d 422, 424 (Va. App. 1992) ("curious, narrow, or strained constructions" of a statute should be avoided); *Broadnax v. Commonwealth*, 485 S.E.2d 666, 669 (Va. App. 1997) (same).  There would be no need (indeed, it would be "curious," *see Branch*, 419 S.E.2d at 424) for the Virginia General Assembly to repeat this settled rule of corporate liability in the statute.  *Broadnax*, 485 S.E.2d at 669 (holding that legislature is presumed not to enact "unnecessary" statutory language); *Williams v. Commonwealth*, 56 S.E.2d 537, 543 (Va. 1949) ("We must assume the legislature did not intend to do a vain and useless thing.").

The plain effect of the language is what Coors has argued:  to prevent corporations, which are liable for the acts of their employees and agents, from limiting their liability to their clients when their employees and agents damage a client.  As between reading a statute to be a "vain and useless" repetition of a common-law rule, and a reading that has an actual effect, Virginia courts read their statutes to have real effects.  *Broadnax*, 485 S.E.2d at 669; *Williams*, 56 S.E.2d at 537.

Third, if the General Assembly were simply trying to ensure that organizations could be liable for the acts of their employees and agents, it picked strange language to accomplish that result.  The General Assembly did not simply provide that a given person or entity "is liable" or "may be liable" for certain acts, as it has in other statutes.  *Cf.* Va. Code Ann. § 6.1-32.18:1(B) ("The directors of the trust company, individually, jointly and severally, *shall be liable* for any failure of the trust company to refund such funds to the subscribers or shareholders.") (emphasis added); Va. Code Ann. § 2.2-804 ("[B]oth the employee who received the payment to which he

was not entitled and the employee who authorized the payment *shall be liable* for repayment to the employer.") (emphasis added); Va. Code Ann. § 2.2-115.E.2.b ("[T]he business beneficiary *shall be liable* to the political subdivision for repayment[.]") (emphasis added).  The General Assembly instead provided that no such organization shall "limit" its liability for those acts.  *See* Va. Code Ann. 54.1-411.  The statute's actual language therefore presumes, consistent with the common law, that organizations will be liable for the acts of their employees and agents, and expressly provides that they cannot "limit" that liability.  *See Morrison v. Nat'l Austrl. Bank*, ___ U.S. ___, 2010 U.S. LEXIS 5257 at **29–30 (June 24, 2010) ("In the first place, it would be odd for Congress to indicate the extraterritorial application of the whole Exchange Act by means of a provision imposing a condition precedent to its application abroad.").  As in *Morrison*, it would be "odd" for the Virginia General Assembly to indicate that corporations can be liable for their employees' acts through the sweeping statement that corporations may not "limit" their liability for such acts.

These considerations show that the Virginia courts were right to conclude that Section 54.1-411 prohibits engineering corporations from limiting their liability to their clients.  The recent amendment and reenactment of Section 54.1-411 only confirms the correctness of those conclusions.

### C.    The amendments to Section 54.1-411 changed Virginia law and apply only prospectively.

The amended and reenacted statute offers JCS no help in this case, because it is not retroactive under Va. Code Ann. § 1-238, and because the amendments changed the prior law.

### 1.    The substantive amendments to Section 54.1-411

The 2010 amendments made two substantive (or, as Delegate Griffith put it, "meat[y]")[3]

changes to Section 54.1-411. *See* 2010 Virginia Laws Ch. 206 (SB104ER) (attached hereto as

**Exhibit 1**). First, the Virginia General Assembly removed the prohibition against a "corporation,

partnership, sole proprietorship, or limited liability company" seeking to limit its liability "for

acts of its employees or agents," and replaced it with a provision that refers solely to the liability

of individuals. The new provision states that: "No *individual* practicing architecture,

engineering, land surveying, landscape architecture, or offering the title of certified interior

designer under the provisions of this section shall be relieved of responsibility that may exist for

services performed by reason of his employment or other relationship with such entity." **Ex. 1**

(emphasis added). The reference to corporate liability for acts of "employees or agents" was

completely removed.[4]

Second, the amended statute added a new part (iv) at the end of § 54.1-411(A). Now, in

addition to not being prohibited from (i) purchasing liability insurance, or (ii) entering into

indemnity agreements, or (iii) receiving indemnification, engineering corporations are no longer

prohibited from "(iv) limiting liability through contract." *Id*. For the reasons explained below,

this change in the law does not help JCS.

### 2.    The 2010 amendments are not retroactive.

The 2010 amendments are inapplicable here because those amendments are not

retroactive under Virginia law. In Virginia, retroactive laws are not favored: a statute is always

---

[3] *See* JCS's Memo., Ex. G, Transcript at pp. 1–2.
[4] Presumably, if JCS were correct that the purpose of prior Section 54.1-411 was to make engineering corporations, partnerships, sole proprietorships, and limited liability companies liable for the acts of their employees and agents, the repeal of that language means that engineering corporations are *not liable* for the acts of their employees and agents after July 1, 2010. The unlikelihood of that extraordinary result again shows that JCS's understanding of prior Section 54.1-411 is simply incorrect.

construed to operate prospectively unless a contrary legislative intent is manifest. *Adams v. Alliant Techsystems, Inc.*, 544 S.E.2d 354, 356 (Va. 2001); *Washington v. Commonwealth*, 217 S.E.2d 815, 823 (Va. 1975) ("when a statute is amended while an action is pending, the rights of the parties are to be decided in accordance with the law in effect when the action was begun, unless the amended statute shows a clear intention to vary such rights"); *McIntosh v. Commonwealth*, 191 S.E.2d 791, 792 (Va. 1972); *Duffy v. Hartsock*, 46 S.E.2d 570, 576 (Va. 1948). "Retroactive effect will be given to a statute only when legislative intent that a statute be so applied is stated in clear, explicit, and unequivocal terms; otherwise, a statute will be applied prospectively only and applied only to cases that arise thereafter." *Foster v. Smithfield Packing Co.*, 390 S.E.2d 511, 513 (Va. 1990). Thus, there is a strong presumption against the retroactive application of statutes.

The Virginia General Assembly incorporated the substance of these basic principles into the language of Va. Code Ann. § 1-238, which provides direction concerning statutes—such as the one at issue here—that contain the word "reenacted" in their title or enactment. Section 1-238 states:

> "Reenacted," when used in the title or enactment of a bill or act of the General Assembly, means that the changes enacted to a section of the Code of Virginia or an act of the General Assembly are in addition to the existing substantive provisions in that section or act, and ***are effective prospectively unless the bill expressly provides that such changes are effective retroactively on a specified date***. The provisions of this section are declaratory of existing public policy and law.

Va. Code Ann. § 1-238 (2005)[5] (emphasis added).  Based on this provision, a "reenacted" statute

will apply retroactively only if the bill or act of assembly containing the legislation explicitly and

unequivocally meets the requirements of Section 1-238.  *Berner*, 579 S.E.2d at 161.

In *Berner*, the Virginia Supreme Court interpreted Section 1-238 (then codified at § 1-

13.39.3) and held that a "reenacted" bill that did not expressly state that it was retroactive in

nature compelled a conclusion that the amendments were effective only prospectively.  579

S.E.2d at 161.  The plaintiffs in *Berner* asserted a wrongful death claim against a doctor

employed by a professional corporation.  After the Virginia Workers' Compensation

Commission held that a professional corporation was not immune from liability as a

"participating hospital" or "participating physician" under the Virginia Birth-Related

Neurological Injury Compensation Act, *id.* at 160, the Virginia General Assembly amended and

reenacted that Act, expanding the definition of the term "participating physician" to include

professional corporations, thereby expressly giving them immunity.  As part of the amendment

and reenactment, the General Assembly stated that the amendments were "declaratory of existing

law."  2000 Va. Acts, Ch. 207, Cl. 2.  Despite that, the Virginia Court of Appeals held that the

amendments were not retroactive, so the defendants were not immune from liability.  *Berner v.*

*Mills ex rel. Estate of Mills*, 560 S.E.2d 925 (Va. App. 2002).  The defendants continued to

appeal.

The Virginia Supreme Court was tasked with deciding whether the statutory amendments

should apply retroactively.  The defendants argued that the General Assembly plainly expressed

a retroactive intent by stating that the amended statute was "declaratory of existing law."

---

[5] This section was derived from former Va. Code Ann. § 1-13.39:3.

*Berner*, 579 S.E.2d at 161.  The defendants also contended that because the code was amended and reenacted shortly after the Court of Appeals held that a professional corporation did not qualify under the Act, that the amendments merely articulated "what always has been the law and what always should have been the interpretation thereof."  *Id*.  The Supreme Court disagreed with each of the defendants' arguments.

The court first recognized that retroactive laws are not favored, and that a "reenacted" statute will be applied retroactively only if the bill or act containing the legislation explicitly and unequivocally meets the requirements of [Va. Code Ann. § 1-238].  *Id*.  Because the bill employed the word "reenacted" and did not contain an express provision that the statutory changes would be effective retroactively on a specified date, the court held that the amendments were effective prospectively, not retroactively.  *Id*.

Next, the court held that the phrase "declaratory of existing law" was not a statement of retroactive intent because it would effectively nullify Section 1-238's clear direction that "reenacted" statutes contain changes to existing law that apply only prospectively unless the bills enacting them contain certain specified language.  *Id*. at 162.  The court stated that construction of the phrase "declaratory of existing law" as a statement of retroactive intent would render the language of [Section 1-238] self-contradictory and meaningless.  *Id*.  And basic rules of statutory construction prohibited the court from construing a statute in such a manner.  *Id*.

Here, JCS argues that because Section 54.1-411 was changed in response to the ruling in *The Bromptons* case, the changes in the statute were meant to "prevent future misinterpretations of the statute."  JCS's Memo. at 8.  That same argument failed in *Berner* and it should fail here. *Berner*, 579 S.E.2d at 161.  The *Berner* court refused to accept the argument that because a

statute was amended and reenacted soon after a court decision, that "the amendments did not

effect a substantive change in the law but merely articulated 'what always has been the law and

what always should have been the interpretation thereof.'"  *Id.*

      As with the reenacted statute in *Berner*, the statute at issue here clearly states that it is "an

Act to **amend and reenact** § 54.1-411 of the Code of Virginia" (**Ex. 1**) (emphasis added).  And

Virginia statutory law is straightforward:  "'Reenacted,' when used in the title or enactment of a

bill or act of the General Assembly, means that the changes … are effective prospectively unless

the bill expressly provides that such changes are effective retroactively on a specified date."  Va.

Code Ann. § 1-238.

      The Virginia General Assembly knew the exact requirements necessary to make a

reenacted code section retroactive:  an express provision in the bill and a specific date.  *Id.*  But

the legislature chose not to include those requirements in the amendments to Section 54.1-411.

Thus, the reenacted bill can only be prospective in nature.  Va. Code Ann. § 1-238; *Berner*, 579

S.E.2d at 161-62; *Taylor v. Commonwealth*, 604 S.E.2d 103, 107 (Va. App. 2004) ("absence of

this required language from the bill compels a conclusion that the amendments to those sections

are effective prospectively, not retroactively").[6]

      **3.      The amendments changed Virginia law.**

      Virginia courts presume that amendments are meant to change prior law.  *Chappell v.

Perkins*, 587 S.E.2d 584, 587 (Va. 2003) ("Legislation is presumed to effect a change in the law

---

[6] If the Court applies the amended and reenacted statute to Coors' claim, JCS's argument must still fail because such retroactive application would impair Coors' substantive rights—an impairment not allowed under Virginia law. "[T]he retroactive application of a statute impairing a 'substantive' right violates due process and is therefore unconstitutional." *Potomac Hospital Corp. v. Dillon*, 329 S.E.2d 41, 45 (Va. 1985), *cert. denied*, 474 U.S. 971 (1985). *See also Shiflet v. Eller*, 319 S.E.2d 750, 753-54 (Va. 1984) (substantive and vested rights are protected from retroactive application of statutes), *citing*, Va. Code Ann. § 8.01-1.

unless there is a clear indication that the General Assembly intended that the legislation declare or explain existing law."); *Horner v. Dept. of Mental Health*, 597 S.E.2d 202, 205 (Va. 2004) (same); *Wisniewski v. Johnson*, 286 S.E.2d 223, 225 (Va. 1982) (same).  When the legislature does not intend to make a substantive change, it "recodifies," rather than amends, a law.  *See Waldrop v. Commonwealth*, 495 S.E.2d 822, 825 (Va. 1998) ("Generally, there is a presumption that a recodified statute does not make substantive changes in the former statute unless a contrary intent plainly appears in the recodified statute.").  The Virginia General Assembly's decision to "amend and reenact" Section 54.1-411 therefore shows that the legislature changed the law prospectively.

Here, there is no indication that the General Assembly intended that the legislation simply declare or explain existing law.  Consequently, a change in the law, not a clarification, was intended by the amendment.  *See Horner*, 597 S.E.2d at 205 (holding that absent words in an amendment indicating that the General Assembly enacted it as a clarification of existing law, the presumption would be applied and the amendment viewed as a change in the law, not a clarification).

JCS's misreading of the floor statement of Delegate Griffith does not overcome this presumption.  First, contrary to JCS's argument, Delegate Griffith introduced the legislation to change the existing law—not clarify it—and he purposely did not include any language indicating that the statute would apply retroactively.  Affidavit of H. Morgan Griffith ¶¶ 4, 7 (July 1, 2010) (attached hereto as **Exhibit 7**).

Second, Virginia courts enforce the law as actually written and enacted:

> Unless a literal construction of a statute would result in internally conflicting provisions amounting to 'manifest absurdity,' courts

> cannot construe a statute in a manner that would result in holding
> the legislature did not mean what it actually expressed.

*Frazier v. Commonwealth*, 497 S.E.2d 879, 880–81 (Va. App. 1998); *see also Commonwealth v. Fairfax County Sch. Brd.*, 645 S.E.2d 337, 341 (Va. App. 2007) ("Courts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (citation and quotation omitted).  Not even JCS argues that applying the plain language of former Section 54.1-411 results in "manifest absurdity."  As Delegate Griffith put it, allowing engineering corporations to limit liability to their clients was "not actually in the code" and "not there." JCS's Memo., Ex. G, Transcript at p. 1.  Virginia courts do not apply law "not actually in the code" and "not there."  *Frazier*, 497 S.E.2d at 880–81.

JCS also relies on two 1999 affidavits from a different case to support its argument that the Virginia General Assembly's legislative intent was different from the plain language of the statute (affidavit of Delegate Clifton A. Woodrum; affidavit of lobbyist Robert Nebiker). Seventeen years after the statute's passage, Delegate Woodrum stated that the statute's language "may be subject to ambiguity."  *See* JCS's Memo. Ex. B, ¶ 6.  In his affidavit, Woodrum suggested language that in his opinion should have been in the statute to remove his perceived ambiguity.  *Id.* at ¶ 7.  The 2010 changes in the amended and reenacted statute, however, do not follow Woodrum's suggestion—further undercutting JCS's reliance on the affidavit.  No Virginia court has ever agreed with Woodrum's equivocation on possible ambiguity, or his seventeen-year-old recollection of the statute's intent.  Nor did the Virginia General Assembly attempt to cure an ambiguity when it amended and reenacted the statute.  It instead changed the law to allow contractual limitations of liability.  *See* Griffith Aff. ¶¶ 4, 7 (**Ex. 7**).

Lobbyist Nebiker stated what his *client's* intent was in seeking passage of the 1982

statute.  *See* JCS's Memo. Ex. C, ¶¶ 6–7.  But an after-the-fact affidavit of a lobbyist asserting

his client's intended meaning of a statute's language should be given no weight by the Court.

*See Bread Political Action Comm. v. Fed. Election Comm'n*, 455 U.S. 577, 582 n.3 (1982)

(expressly refusing to give probative weight to after-the-fact affidavit of amendment sponsor

regarding legislative intent).

      JCS argues that "courts may properly consult affidavits of legislators or others involved

in the passage of a bill to construe statutory language."  JCS's Memo. at 13.  In *Sch. Bd. of*

*Chesterfield County v. Sch. Bd. of City of Richmond*, the trial court was reversed because it

admitted testimony of a member of the Virginia General Assembly to alter the plain meaning of

a statute.  247 S.E.2d 380, 383 (Va. 1978).  The trial court violated Virginia's well-settled rules

of statutory construction by doing what JCS asks this Court to do—rely on the testimony of

legislators to urge a result at odds with the plain language of the statute.  *Id.* at 384.  "Where a

statute is plain and unambiguous there is no room for construction by the court and the plain

meaning and intent of the statute will be given to it."  *Id.*, citing *McClung v. County of Henrico*,

108 S.E.2d 513, 516 (Va. 1959).

      JCS cites *Brown v. Thompson*, 374 F.3d 253, 260 (4th Cir. 2004) for the proposition that

subsequent legislation declaring the intent of a statute should be given great weight in statutory

construction.  JCS's Memo. at 7.  JCS's reliance on *Brown*, which involved federal "*legislation*

declaring the intent of an earlier statute," is misplaced because JCS misunderstands the federal

principle.  Under federal law, subsequent legislation casts light on the meaning of an earlier law

when the subsequent legislation "is premised on" a certain interpretation of the meaning of an

earlier law.  *Loving v. United States*, 517 U.S. 748, 770 (1996) ("Although the language of

Article 36 seems further afield from capital aggravating factors than those of Article 18 or 56, it is the provision that a later Congress identified as the source of Presidential authority to prescribe these factors …. Article 106a itself, then, is premised on the President's having authority under Article 36 to prescribe capital aggravating factors, and subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction."). Here, the Virginia legislature's amendment and reenactment of Section 54.1-411 is not "premised on" JCS's interpretation of the effect of former Section 54.1-411—to the contrary, the legislature was seeking to change the legal effect of the statute by changing its plain language, which is why the statute was amended and reenacted. *See* Griffith Aff. ¶¶ 4, 6–7 (**Ex. 7**).

JCS's reliance on a "summary" declaring the bill to "contain a technical amendment" is also unavailing. JCS's Memo. at 7, Ex. D (bill summary). Virginia law expressly provides that bill summaries "shall not constitute a part of the legislation considered, agreed to, or enacted*, and shall not be used to indicate or infer legislative intent*." Va. Code Ann. § 1-247 (emphasis added). JCS fails to mention this Virginia statute in its memorandum to the Court.

Finally, JCS does not explain why, if original Section 54.1.-411 was never intended to prohibit liability limitations for "either the individual engineers or the corporation," Griffith goes out of his way to point out that "individuals" are *still* prohibited from "limiting by contract ... liability when dealing with a third party." JCS's Memo. at 7. ("[It] says that—they—they—the corporation, *not the individual, but the corporation*, can limit by contract its liability when dealing with a third party.") (emphasis added). Griffith's distinction between "the corporation's" newfound freedom to limit its liability, in contrast to the continuing inability of "the individual" to do so, again confirms that Coors' reading of former Section 54.1-411 is correct.

The amendment and reenactment of Section 54.1-411 establishes conclusively what Coors has pointed out all along: the version of Section 54.1-411 applicable to this case prohibits JCS from contractually limiting its liability to Coors.  This Court should follow the Virginia court decisions and conclude that the Virginia General Assembly meant exactly what it said in 1982 and apply the plain language of the statute.  JCS's motion should therefore be denied, with prejudice.

     D.      **The cases JCS relies upon in arguing that the limitation-of-liability provision is valid and enforceable are either inapplicable or unpersuasive.**

JCS relies on *Roanoke Properties Ltd. Partnership v. Dewberry & Davis*, No. 93-59-CIV-2-BO, 1996 U.S. Dist. LEXIS 10521 (E.D. N.C. June 3, 1996) (unpublished) to support its argument that § 54.1-411's "intent is to proscribe structuring an organization in such a way as to limit an agent's liability for his acts or an entity's liability for the acts of its agents."  JCS's Memo. at 10.  But the *Roanoke Properties* court did not have the benefit of the Virginia state court decisions described above.  Nor did the court quote or analyze the text of Section 54.1-411. *Roanoke Properties* cites one Virginia case, *C&O Ry. Co. v. Clifton Forge-Waynesboro Tel. Co.*, 224 S.E.2d 317, 321 (Va. 1976).  *C&O*, however, involved a railroad company that would not have been subject to § 54.1-411(A) (even if the statute had been in existence in 1976) because C&O's negligence did not involve engineering design.

*Roanoke* did not explain what it meant by "structuring an organization" (such as a corporation) in "such a way as to limit" its "liability for the acts of its agents," how this could be done under settled Virginia law making corporations liable for the acts of their agents, or why the court thought the Virginia legislature was concerned that engineering corporations might otherwise be immune from liability for the acts of their agents.  Significantly, because the

defendant won the case before the trial court, the court of appeals expressly "[did] not reach" the issue of whether the trial court's interpretation of Section 54.1-411 was correct. *See Roanoke Properties Ltd. Partnership v. Dewberry*, 1999 U.S. App. LEXIS 29839 at *2 n.2 (4th Cir. 1999).

JCS relies on *Fidelity & Cas. Co. of N.Y. v. Copenhaver Contracting Co., Inc.*, 165 S.E. 528 (Va. 1932) to support its argument that "the Virginia Supreme Court has specifically upheld the enforceability of liability limitations in construction and engineering contracts." JCS's Memo. at 12. JCS's reliance on *Copenhaver* is misplaced. Copenhaver, unlike JCS, was not responsible for engineering but was hired to grade and construct two roads. 165 S.E. at 529. *Copenhaver* was 50 years before the passage of Section 54.1-411, but Copenhaver would not have been subject to such a statute (even if one had existed in 1932) because it was not involved in the practice of architecture or engineering.

JCS cites *Gerald M. Moore and Son, Inc. v. Drewry*, 251 Va. 277 (Va. 1996) as an example of a case in which "the Virginia Supreme Court held that an engineering firm's liability was limited." JCS's Memo. at 15. *Moore* provides no support for JCS. In *Moore*, the court held that because the individual engineer did not have a contract with the plaintiff, the economic-loss doctrine barred the plaintiff's action for purely economic losses against the individual defendant, Joseph Drewry. 251 Va. at 279.

Contrary to JCS's argument, it does not matter for purposes of the instant motion that Joseph Drewry avoided personal liability in *Moore*, because here Coors sued JCS, with whom it has a contract, and not anyone within JCS personally. Therefore, the economic-loss doctrine is not at issue in Coors' Count Five, which is the only count JCS moves to dismiss.

Furthermore, while Joseph Drewry may have avoided personal liability, the engineering design firm, Drewry and Associates, Inc. ("D&A"), was found liable for breach of contract and negligence, and the judgment against D&A was never appealed, reversed, or vacated. *Gerald M. Moore and Son, Inc. v. Drewry and Assocs., Inc.*, 945 F.Supp. 117, 119 (E.D. Va. 1996).

JCS makes a freedom-of-contract argument and cites *Ripley Heatwole Co., Inc. v. John E. Hall Electrical Contractor, Inc.*, 69 Va. Cir. 69 (Va. Cir. Ct. 2005) and several other cases for the proposition that Virginia courts have routinely upheld contractual liability limitations. JCS's Memo. at 14. But none of the cited cases involved architects or engineers and they provide no help to JCS.

JCS argues "that sophisticated entities (such as Jacobs and Coors) must be afforded the freedom to contractually allocate risk." JCS's Memo. at 15. Jacobs cannot undo by contract what the Virginia General Assembly has determined to be the public policy of the Commonwealth simply by deeming its client "sophisticated." *Blake Constr. Co., Inc./Poole & Kent v. Upper Occoquan Sewage Authority*, 587 S.E.2d 711, 717 (Va. 2003) (a contract provision to perform an act prohibited by statute is void); *Shuttleworth, Ruloff and Giordano, P.C. v. R.J. Nutter, II*, 493 S.E.2d 364, 366 (Va. 1997) (holding that a contract provision that violates Virginia public policy is void and of no legal effect).

JCS cites several cases from other states and argues that these non-binding cases denied challenges to the enforceability of liability limitations in construction and engineering contracts. JCS's Memo. at 16. Whatever light those cases might shed on Virginia public policy and statutory interpretation, if any, they are of no application here because none of them involved the regulated profession of engineering in Virginia.

JCS cites *no* Virginia case in which a professional engineering corporation in privity of contract with the owner was allowed under Va. Code Ann. § 54.1-411 to contractually limit its liability to the owner.  That is because the statute's language is plain and unambiguous and Virginia courts apply it as written.

II.    **The Construction Services Agreement's limitation-of-liability provision is unenforceable because JCS cannot satisfy the *Kocinec* test.**

Even if JCS's interpretation of the statute were correct that would *not* make the limitation-of-liability provision valid and enforceable.  Under Virginia law, contract provisions that limit liability are typically evaluated using a three-part test.  *Kocinec v. Public Storage, Inc.*, 489 F. Supp. 2d 555, 559 (E.D. Va. 2007) (diversity case applying Virginia law).  JCS's statutory interpretation argument addresses only the first prong of *Kocinec*, public policy.  JCS's motion ignores the second and third prongs—most likely because JCS cannot meet its burden of proof.

To limit its liability, JCS must prove that the limitation-of-liability provision:

(1)    Does not contravene Virginia public policy;

(2)    Could be readily understood by a reasonable person in Coors' position; and

(3)    Clearly and unequivocally releases JCS from precisely the type of liability alleged by Coors.

*Kocinec*, 489 F. Supp. 2d at 559, *citing*, *Hiett v. Barcroft Beach, Inc.*, 18 Va. Cir. 315, 318 (1989), *rev'd on other grounds*, *Hiett v. Lake Barcroft Cmty. Ass'n, Inc.*, 418 S.E.2d 894 (Va. 1992).  JCS cannot satisfy even one of *Kocinec's* prongs, much less all three—and the limitation-of-liability provision is therefore void and unenforceable.

JCS's motion addresses only Count Five–Breach of Contract.  Under Count Five, Coors alleges, among other things, that:

- JCS did not provide adequate and competent site management.

- JCS did not effectively administer and manage its construction subcontractors.

- JCS did not control or manage Project costs.

- JCS billed Coors for correction of design errors and omissions, ignoring its contract obligation to correct errors and omissions without additional compensation.

- JCS billed Coors for subcontractor rework resulting from substandard, unacceptable work that subcontractors were obligated to correct without additional payment.

Compl. ¶ 61(d)-(h).

Under JCS's limitation-of-liability theory, if JCS billed Coors for correction of design errors and subcontractor rework—costs that it was not allowed to bill under the Construction Services Agreement—Coors' only remedy would be a refund of the fee it paid JCS.  If the amount of improperly billed services and rework exceeded the amount of the fee, Coors would be out of luck and JCS would get to pocket the extra money.  Neither the undisputed facts nor the controlling law support such a fundamentally unfair outcome.

In Virginia, the key is not whether an exculpatory clause is in a contract of adhesion or a contract freely negotiated between sophisticated parties, but whether the clause can pass all three prongs of the *Kocinec* test.  JCS cannot meet its burden of showing that each prong of the test is satisfied.  Therefore, the Contract's limitation-of-liability provision is unenforceable.[7]

---

[7] *See* Coors' Response in Opposition to Jacobs' Motion for Partial Summary Judgment (Doc. No. 33) at pp. 18–23 for a full discussion of the application of the *Kocinec* test to the issues in this case.

**III.    JCS breached the Construction Services Agreement and, under Virginia's "first material breach" rule, may not now seek to enforce the terms of that contract.**

Coors alleges that JCS was in material breach of the contract.  Compl. ¶ 61.  Coors' allegations must be taken as true for the purposes of JCS's motion.  *Realmonte v. Reeves*, 169 F.3d 1280, 1283 (10th Cir. 1999).  Under Virginia's "first material breach" rule, the first party to materially breach a contract may not later seek to enforce the terms of that contract.  *Horton v. Horton*, 487 S.E.2d 200, 204 (Va. 1997) ("[i]f the first breaching party committed a material breach, … that party cannot enforce the contract"); *Countryside Orthopaedics, P.C. v. Peyton*, 541 S.E.2d 279, 285 (Va. 2001) (same); *Centex Constr. v. Acstar Ins. Co.*, 448 F. Supp. 2d 697, 714 (E.D. Va. 2006) (Under Virginia law, "a party who commits the first material breach of a contract is not entitled to enforce the contract.").  Under the first material breach rule, "it is pellucidly clear that defendant may not enforce the contract against plaintiff even though the parties continued to perform under the contract" after the material breach occurred.  *Tandberg, Inc. v. Advanced Media Design, Inc.*, 2009 WL 4067717 at *4 (E.D. Va. Nov. 23, 2009) (applying Virginia law).

Here, JCS was the first party to materially breach when it, among other things, improperly billed and collected for rework and other services that were not reimbursable under the Contract.  Compl. ¶ 61(g)-(i).  Improper billings under a cost reimbursable contract defeat the essential purpose of the contract and are, therefore, material breaches.  *See Horton*, 487 S.E.2d at 204.  Under Virginia law, JCS should not be allowed to seek enforcement of the contract's limitation-of-liability provision when it was the first party to commit a material breach.  *Id.* at 203-04.

**Conclusion**

For the foregoing reasons, Coors respectfully requests that the Court deny JCS's Motion

for Judgment on the Pleadings on Defendant's Contractual Limitation of Liability, with

prejudice.

Respectfully submitted July 2, 2010.

*s/ Charles W. Surasky*
Charles W. Surasky
cwsurasky@smithcurrie.com
Robert C. Chambers
rcchambers@smithcurrie.com
John M. Mastin, Jr.
jmmastin@smithcurrie.com
SMITH, CURRIE & HANCOCK LLP
2700 Marquis One Tower
245 Peachtree Center Avenue NE
Atlanta, Georgia 30303-1227
Tel: 404-521-3800
Fax: 404-688-0671

Randall H. Miller
randy.miller@hro.com
James N. Phillips
james.phillips@hro.com
HOLME ROBERTS & OWEN LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203-4541
Tel: 303-861-7000
Fax: 303-866-0200

*Attorneys for Plaintiff*
*Coors Brewing Company*

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on July 2, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

David G. Palmer
**GREENBERG TRAURIG LLP**
1200 17th Street, Suite 2400
Denver, Colorado 80202
Tel:   303-572-6500
Fax:   303-572-6540
Email:  palmerdg@gtlaw.com

AND

Albert E. Peacock, III
Paul T. Ross
**KEESAL, YOUNG & LOGAN**
400 Oceangate
P.O. Box 1730
Long Beach, California  90801
Tel:   562-436-2000
Fax:   562-436-7416
Email:  al.peacock@kyl.com
             terry.ross@kyl.com

*Attorneys for Defendants and
Third-Party Plaintiffs
Jacobs Engineering Group Inc. and
Jacobs Construction Services, Inc.*

Christian H. Hendrickson
**SHERMAN & HOWARD L.L.C.**
633 17 Street, Suite 3000
Denver, Colorado 80202
Tel.: 303-297-2900
Fax: 303-298-0940
Email:
chendrickson@shermanhoward.com

AND

Paul F. Keneally
**UNDERBERG & KESSLER LLP**
300 Bausch & Lomb Place
Rochester, New York 14604
Tel.: 585-258-2800
Fax: 585258-2821
Email:
pkeneally@underbergkessler.com

*Attorneys for Plaintiff and
Third-Party Defendant
Briggs of Burton, PLC*

*s/ John M. Mastin, Jr.*
John M. Mastin, Jr.
**SMITH, CURRIE & HANCOCK LLP**

*Attorneys for Plaintiff
Coors Brewing Company*