**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**
Senior District Judge Richard P. Matsch

Civil Action No. 1:08-cv-00985-RPM
(Consolidated w/Civil Action No. 09-cv-00271-RPM)

COORS BREWING COMPANY AND
BRIGGS OF BURTON, PLC,

        Plaintiffs,

v.

JACOBS ENGINEERING GROUP INC.,
JACOBS INDUSTRIAL SERVICES, INC., a/k/a
JACOBS CONSTRUCTION SERVICES, INC., and
JACOBS CONSTRUCTION, INC.,

        Defendants,

and

JACOBS ENGINEERING GROUP INC. and
JACOBS CONSTRUCTION SERVICES, INC.,

        Third-Party Plaintiffs,

v.

BRIGGS OF BURTON, PLC,

        Third-Party Defendant.

---

## Coors' Response in Opposition to Defendant Jacobs' Motion for Judgment on the Pleadings against Coors' Tort Claims

---

       Coors Brewing Company ("Coors") respectfully submits its Response in Opposition to

Defendant Jacobs' Motion for Judgment on the Pleadings against Coors' Tort Claims.  (Doc. No.

83).

**Summary of Argument**

Jacobs asks this Court to rule that Coors' tort claims against Jacobs Engineering Group

Inc. ("JEG") and Jacobs Construction Services, Inc. ("JCS") fail as a matter of law under the

economic loss rule.  JEG and JCS, as engineering design professionals, owed Coors legislatively

and judicially created duties that are separate, independent, and *different* from their contractual

duties.  The economic loss rule is not applicable here because Coors has adequately stated facts

to support a finding of an independent duty.  *See A.C. Excavating v. Yacht Club II Homeowners*

*Ass'n, Inc.*, 114 P.3d 862, 866-67 (Colo. 2005) ("Where there exists a duty of care independent

of any contractual obligations, the economic loss rule has no application and does not bar a

plaintiff's tort claim because the claim is based on a recognized independent duty of care and

thus falls outside the scope of the economic loss rule.") (citing *Town of Alma v. AZCO Constr.*

*Inc.*, 10 P.3d 1256, 1264 (Colo. 2000)).  *See also, Filak v. George*, 594 S.E.2d 610, 613 (Va.

2004) (Virginia economic loss rule bars claims only if the duty arises solely by contract rather

than imposed by law.).

Jacobs' motion to dismiss should be denied because Colorado and Virginia impose by

law independent duties on engineering design professionals that are different from the

contractual duties here, and the economic loss rule, therefore, has no applicability.

Jacobs' motion hinges in large part on *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66

(Colo. 2004), which was cited with approval by this Court in *Standard Bank, PLC v. Runge, Inc.*,

Civil Action No. 07-cv-01989-RPM, 2010 WL 358832 (D. Colo. Jan. 28, 2010).  But in both of

those cases the economic loss rule applied only because the contractual duties and the tort duties

were the same.

In *BRW*, the engineer owed the municipal owner a contractual duty of care to perform all work "in accordance with the standards of care, skill and diligence provided by competent professionals who perform work or services of a similar nature," and to ensure that all of its drawings and specifications reflected "customary professional standards." *BRW*, 99 P.3d at 67-68. This contractual duty was the same as the negligence duty of care raised in *BRW*, which alleged that the licensed engineer had "a professional duty to exercise reasonable care, including, but not limited to, preparing design drawings and specifications that were suitable for construction of the Project." *Id.* at 74. In other words, the negligence duty of care in *BRW* was not independent of or different from the contractual duty of care, and the economic loss rule applied.

In *Standard Bank*, this Court found that the plaintiff's tort claims were barred by the economic loss rule because the defendant had no duty to the plaintiff other than that in the proposal that became the contract. 2010 WL 358832 at *7. If, however, duties exist independent of the obligations set forth in a contract, it is error to bar tort claims under the economic loss rule. *Stiff v. BilDen Homes, Inc.*, 88 P.3d 639, 641–42 (Colo. App. 2003) (citing *Town of Alma v. AZCO Constr. Inc.*, *supra.*).

The Colorado Supreme Court, after *BRW*, clarified Colorado's economic loss rule by analyzing the statutory and common-law duties owed by builders. *A.C. Excavating*, 114 P.3d at 865–70. The court held that the economic loss rule has no application where there exists a duty of care independent of any contractual obligations. *Id.* at 866.

Here, as explained below, Coors has alleged sufficient facts to support a finding of an independent tort duty, and under the motion to dismiss standard, the Court must accept these allegations as true and construe them in the light most favorable to Coors.

Coors' tort claims more than meet the plausibility standard. Coors referenced in its complaint, and filed contemporaneously therewith, the certificates of review that are required under Colorado law when bringing tort claims against a licensed professional. *See* Compl. ¶¶ 79–80; Doc. Nos. 1–3. The purpose of the certificate of review statutes (C.R.S. §§ 13-20-601 to 602) is to avoid unnecessary time and costs in defending professional negligence claims and to weed out frivolous claims at an early stage of the judicial process. *Shelton v. Penrose/St. Francis Healthcare Sys.*, 984 P.2d 623, 628 (Colo. 1999).

Coors filed the proper certificates and that purpose has been served. The general rule under Colorado law is for the resolution of disputes on their merits. *Craig v. Rider*, 651 P.2d 397, 402 (Colo. 1982). Coors' tort claims have been properly investigated by an expert and should be sent to trial on the merits.

## Standard of Review

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is treated as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). Under this standard, the Court must accept all well-pleaded allegations of the complaint as true and construe them in the light most favorable to the non-moving party. *Realmonte v. Reeves*, 169 F.3d 1280, 1283 (10th Cir. 1999). Well-pleaded allegations are those that are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). "[T]o withstand a

motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss is a "harsh remedy" requiring careful study.  *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## Scope of Review

Jacobs previously moved for summary judgment on Coors' tort claims, arguing they should be dismissed under the economic loss rule.  (Doc. No. 27).  Coors came forward with legal argument, exhibits, and affidavits supporting its position that the economic loss rule was not applicable because there was an independent duty.  (Doc. No. 33).[1]  Jacobs' motion was denied.  (Doc. No. 53) (Order Denying Motion for Partial Summary Judgment, July 6, 2009). The economic loss rule in Colorado and Virginia has not changed since the Court denied Jacobs' motion for summary judgment.

In support of its current Motion for Judgment on the Pleadings against Coors' Tort Claims, Jacobs attached and relied on materials outside of the pleadings (Doc. No. 85).[2]  A motion to dismiss can be converted to a motion for summary judgment when "matters outside the pleadings are presented to and not excluded by the court."  *See* Fed. R. Civ. P. 12(d).  The Court has broad discretion in determining whether to accept materials beyond the pleadings. *Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998).  Under either the plausibility standard or the Rule 56 standard, Jacobs' motion should be denied once again.

---

[1] Coors incorporates herein by reference the legal arguments, exhibits, and affidavits of its Response in Opposition to Jacobs' Motion for Partial Summary Judgment (Doc. No. 33), and its Response in Opposition to Jacobs' Motion for Judgment on the Pleadings on Count Two Breach of Fiduciary Duty (Doc. No. 91).
[2] Jacobs attached newsletter articles written by Coors' counsel reporting on economic loss rule developments in Florida and Nevada.  The newsletter articles do not analyze Colorado or Virginia law.

**Argument and Legal Authority**

**I.      Coors' tort claims are not barred by the economic loss rule because JEG and JCS owed Coors an independent duty of care.**

JEG and JCS, as engineering design professionals, owed Coors legislatively and judicially created duties that are separate, independent, and different from their contractual duties.  For that reason, the economic loss rule, as asserted by Jacobs in its motion to dismiss, has no application to either contract.  The economic loss rule does not apply "where a plaintiff's tort claim is based on an independent duty of care."  *A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*, 114 P.3d 862, 867 (Colo. 2005).  *See also, Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004) (Virginia economic loss rule bars claims only if the duty arises solely by contract rather than imposed by law.).

Section I.A. provides an overview of Colorado's economic loss rule.  Section I.B. specifically addresses Count Two, Breach of Fiduciary Duty; Section I.C. addresses Count Three, Negligence against JEG; Section I.D. addresses Count Four, Negligent Misrepresentation; and Section II. addresses Count Six, Negligence against JCS under Virginia's economic loss rule.

**A.      Colorado's economic loss rule does not bar claims based on an independent duty.**

The Colorado economic loss rule does not bar Coors' breach of fiduciary duty, negligence, or negligent misrepresentation claims against JEG because these claims are based on duties of care that are independent and different from the duties of care JEG owed Coors under the Engineering Services Agreement (the "Alliance Agreement").

The Colorado Supreme Court has defined the economic loss rule as follows: "[A] party suffering only economic loss from the breach of an express or implied contractual duty may not

assert a tort claim for such a breach absent an independent duty of care under tort law." *A.C. Excavating*, 114 P.3d at 865. "By definition, the economic loss rule does not apply where the defendant owes the plaintiff a duty of care that is independent of any contractual duty." *Andrews v. Picard*, 199 P.3d 6, 10 (Colo. App. 2007) (citing *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1263 (Colo. 2000)).

In *A.C. Excavating*, the plaintiff was a homeowners association, representing individual unit owners, and seeking purely economic damages for construction defects. The defendants were construction subcontractors who had not dealt directly with any of the individual unit owners. The Colorado Supreme Court concluded that "the Association's negligent action is not barred by the economic loss rule." 114 P.3d at 865. In so holding, the court explained that *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041 (Colo. 1983), and *Town of Alma*, both "recognize that builders are under an independent duty of care to construct homes without negligence." 114 P.3d at 865.

The court interpreted *Cosmopolitan Homes*, as "suggest[ing] that this duty is broadly shared by builders in general." *A.C. Excavating*, 114 P.3d at 868. The court observed that, in applying the factors articulated in *Taco Bell, Inc. v. Lannon*, 744 P.2d 43 (Colo. 1987), for determining the existence of a duty of care concerning "work performed by general contractors as opposed to subcontractors, we do not see how they could create an independent tort duty upon the former group of builders, but not the latter." *A.C. Excavating*, 114 P.3d at 868.

This expansive language leaves little doubt that design-build contractors and EPCM contractors,[3] such as JEG and JCS, "and other builders are under an independent duty to act

---

[3] EPCM: **E**ngineer, **P**rocure, **C**onstruction **M**anagement.

without negligence" in the design-build construction arena. *A.C. Excavating*, 114 P.3d at 868.

### 1. JEG owed Coors a statutory duty of care under Colorado law independent of the Alliance Agreement.

Colorado statutory law recognizes several duties of care for design professionals that JEG was subject to as a regulated professional engineering corporation working in Colorado. Specifically, JEG was obligated to comply with the following statutory standards of care when providing professional services to Coors: (1) "safeguard life, health, and property and to promote the public welfare." C.R.S. § 12-25-101; (2) exercise "independent professional judgment in rendering professional services for the client." Dep't of Regulatory Agencies Rule 3.6.1, 4 Colo. Code Regs. 730-1; and (3) comply with "*generally accepted standards of engineering practice*." C.R.S. § 12-25-108(1)(b) (emphasis added).

An independent duty of care may derive from Colorado statutes. *A.C. Excavating*, 114 P.3d at 868–69. Jacobs argues that even if there were an independent statutory duty, Coors has not asserted a tort claim based on that duty. Jacobs' argument is unpersuasive for four reasons. First, Coors referenced in and filed with its complaint the C.R.S. § 13-20-602 Certificate of Review notifying Jacobs that Coors' tort claims had substantial justification under the law.

Second, Coors alleged in its complaint that JEG had a duty to provide the "reasonable care and skill usually exercised by design professionals, engineers, or architects and as otherwise applicable." Compl. ¶ 28. Coors also alleged that JEG breached that duty. Compl. ¶ 29. This duty tracks the statutory duty of "generally accepted standards of engineering practice." C.R.S. § 12-25-108(1)(b).

Third, Coors laid out the statutory duties in its Response to Jacobs' Motion for Partial Summary Judgment, and this information is now in the record. (Doc. No. 33 at 35, 43).

Finally, the Court may take judicial notice of the applicable statutory duties whether requested or not, and at any stage of the proceeding. Fed. R. Evid. 201(c), (f); *Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1503-04 (10th Cir. 1997) ("We conclude it was entirely appropriate for the district court to take judicial notice of the provisions of a [municipal ordinance]. Federal Rule of Evidence 201 authorizes a federal court to take judicial notice of adjudicative facts at any stage of the proceedings, and in the absence of a request of a party. This includes taking notice of provisions in municipal ordinances.") (citations omitted).[4]

**2.  JEG owed Coors a common-law duty of care under Colorado law independent of the Alliance Agreement.**

Colorado courts have repeatedly found that design professionals have an independent common-law duty of care to their employer or to a property owner to "exercise the ordinary skill and competence of members of their profession, and a failure to discharge that duty will subject them to liability for negligence." *Metropolitan Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313, 318 (Colo. 1981).

In a case remarkably similar to the present case, the Colorado Supreme Court recognized an independent duty of care owed by a design professional to a property owner. *Kellogg v. Pizza*

---

[4] Courts routinely take judicial notice of applicable statutes and regulations:

> It is well settled that a court may take judicial notice of municipal ordinances in ruling on a Rule 12(b)(6) motion to dismiss, and it may do so without converting the motion to a summary judgment motion. . . . Because the court must employ the same standard that it uses to analyze a Rule 12(b)(6) motion to dismiss to evaluate a Rule 12(c) motion for judgment on the pleadings and because Rule 12(d) by its express terms applies to both motions to dismiss and motions for judgment on the pleadings, the Court concludes that it may take judicial notice of municipal ordinances and agency rules and regulations in ruling on a motion for judgment on the pleadings. The Court may do so without converting the motion for judgment on the pleadings to one for summary judgment.

*Skogen v. City of Overland Park,* 2010 WL 973375 at *2 (D. Kan. Mar. 16, 2010).

*Oven, Inc.*, 402 P.2d 633, 635 (Colo. 1965).  In *Kellogg*, the property owner sued its architect for

negligence, alleging that the architect failed to properly estimate the cost of the project and failed

to adequately supervise the project's construction.  The Colorado Supreme Court held that the

architect had a common-law duty to furnish reliable information in estimating project cost:

> An architect who substantially underestimates, through lack of skill and care, the
> cost of a proposed structure, which representation is relied upon by the employer
> in entering in the contract and proceeding with construction, may not only forfeit
> his right to compensation, but may become liable to his employer for damages.

*Id*.

Numerous Colorado decisions have followed *Kellogg* in recognizing the independent

duty of care imposed on design professionals.  *See, e.g., Grynberg v. Agri Tech, Inc.*, 10 P.3d

1267, 1271 n.4 (Colo. 2000) ("In [*Kellogg*] we recognized that an undisputed independent duty

of care supported the negligence action"); *Rian v. Imperial Mun. Servs. Group, Inc.*, 768 P.2d

1260, 1263 (Colo. App. 1988) (a licensed professional's "contractual duties do not necessarily

define [its] tort liability" … "[t]he existence of negligence is measured by the normal standards

of skill and competence exhibited by members of a defendant's profession"); *Morrison v. City of

Aurora*, 745 P.2d 1042, 1045-46 (Colo. App. 1987) (providing specifications and design for pipe

gives rise to a tort duty despite existence of contract); *Jim Arnott, Inc. v. L & E, Inc.*, 539 P.2d

1333, 1339 (Colo. App. 1975) (architect may be liable for underestimated total cost of project if

architect's estimating error was substantial); *Perlmutter v. Flickinger*, 520 P.2d 596, 597 (Colo.

App. 1974) (architect has duty to use degree of knowledge, skill, and judgment ordinarily

possessed by a reasonable and prudent architect).

Jacobs downplays *Kellogg* because it predates Colorado's adoption of the economic loss

rule in *Town of Alma*.  In *A.C. Excavating*, however, the court pointed out that the rule of law

established by earlier cases "was not disturbed by our adoption of the economic loss rule because we specifically recognized that the economic loss rule has no application where a plaintiff's tort claim is based on an independent duty of care."  114 P.3d at 867.

> **3.    JEG's independent duties are different from and in addition to its contractual duties.**

JEG's statutory and common-law duties detailed above are separate, independent, and different from JEG's contractual duties.  Under the Alliance Agreement, JEG was "responsible to Coors for the professional quality, the technical accuracy, and the performance and coordination of all designs, drawings, specifications, and other services provided by JEG." Compl. ¶ 12.  JEG was also contractually required to provide professional services to Coors that were of the "highest professional quality."  Compl. ¶ 13.  These contractual duties are different from JEG's duty to:

- "safeguard life, health, and property and to promote the public welfare,"  C.R.S. § 12-25-101;

- exercise "independent professional judgment in rendering professional services for the client,"  Dep't of Regulatory Agencies Rule 3.6.1, 4 Colo. Code Regs. 730-1;

- comply with "generally accepted standards of engineering practice,"  C.R.S. § 12-25-108(1)(b);

- "exercise the ordinary skill and competence of members of their profession," *Metropolitan Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313, 318 (Colo. 1981); and

- furnish reliable information in estimating project cost.  *Kellogg v. Pizza Oven, Inc.*, 402 P.2d 633, 635 (Colo. 1965).

In sum, an engineering design professional, such as JEG, owes independent tort duties that "arise … by law." *A.C. Excavating*, 114 P.3d at 865-66.

Coors alleges that JEG had a duty to provide "services reflecting the highest professional quality" (its contractual duty), Compl. ¶ 28.  And that JEG had a duty to provide the "reasonable care and skill usually exercised by design professionals, engineers, or architects and as otherwise applicable" (different, independent duties imposed by law), Compl. ¶ 28.  Coors alleges that "JEG breached its duties by providing deficient services to Coors."  Compl. ¶ 29.  These allegations are enough to move Coors' claims well "across the line from conceivable to plausible."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).  Dismissing Coors' claims despite the additional factual support, exhibits, and affidavits it previously provided in its Response in Opposition to Jacobs' Motion for Partial Summary Judgment (Doc. No. 33) would appear to be a "harsh remedy." *Dias*, 567 F.3d at 1178 (granting a motion to dismiss is a "harsh remedy" requiring careful study).

## 4.    JEG's reliance on *BRW, Standard Bank,* and *First Franklin* is misplaced.

JEG cites *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66 (Colo. 2004); *Standard Bank, PLC v. Runge, Inc.*, Civil Action No. 07-cv-01989-RPM, 2010 WL 358832 (D. Colo. Jan. 28, 2010); and *First Franklin Fin. Corp. v. United Title Co., Inc.*, Civil No. 08-cv-01866-PAB-MEH, 2009 WL 3698526 (D. Colo. Nov. 5, 2009) to support its argument that Coors' tort claims should be dismissed under the Colorado economic loss rule.  Those cases are not persuasive because in each the economic loss rule applied because the contractual duties and tort duties were the same.  Here, as explained above, the contractual duties and the independent tort duties imposed by law are different, and the economic loss rule has no applicability.  *A.C. Excavating*, 114 P.3d at 865-66.

In *BRW*, the duties of care related to the breach of contract and negligence claims were the same.  Specifically, the licensed engineer in *BRW* owed the municipal owner it contracted with a contractual duty of care to perform all work "in accordance with the standards of care, skill and diligence provided by competent professionals who perform work or services of a similar nature," and to ensure that all of its drawings and specifications reflected "customary professional standards."  *BRW*, 99 P.3d at 67-68.  This contractual duty was the same as the negligence duty of care raised in *BRW*, which alleged that the licensed engineer had "a professional duty to exercise reasonable care, including, but not limited to, preparing design drawings and specifications that were suitable for construction of the Project."  *Id.* at 74.  In other words, the negligence duty of care in *BRW* was not independent of the contractual duty of care.

In contrast to *BRW,* the contractual and negligence duties of care alleged by Coors are independent and different.  JEG's contractual duty of care was to provide professional services of the "highest professional quality," whereas Coors' negligence claim focuses on JEG's duty to perform with the "reasonable care and skill usually exercised by design professionals."  Compl. ¶ 28.  These are two separate and distinct standards of care.  Moreover, the Alliance Agreement did not expressly memorialize Jacobs' duty not to underestimate, "through lack of skill and care, the cost of a proposed structure, which representation is relied upon by the employer in entering in the contract and proceeding with construction."  *Kellogg*, 402 P.2d at 635.  The duty not to underestimate is a common-law duty of care not found in the Alliance Agreement.

*BRW* is inconsistent with and distinguishable from the Colorado Supreme Court decisions of *A.C. Excavating; Town of Alma; Metropolitan Gas; Cosmopolitan Homes;* and *Lembke*

*Plumbing and Heating v. Hayutin*, 366 P.2d 673, 675 (Colo. 1961). The *BRW* court concluded that a duty of care memorialized in a contract "preempts" the court's need to inquire into whether an independent duty of care exists at common law. *BRW*, 99 P.3d at 74. But *A.C. Excavating*, decided after *BRW*, focused on whether an independent duty of care existed outside of a contract, not on what duty of care was memorialized within the contract.

The Colorado Supreme Court did not apply *BRW's* "preemption" approach to the economic loss rule when it decided *A.C. Excavating*, a year after *BRW* was issued. Moreover, the Tenth Circuit has found that *BRW* does not bar tort claims when an independent duty of care exists. *Level 3 Communications, LLC v. Liebert Corp.*, 535 F.3d 1146, 1162 (10th Cir. 2008) (Colorado's economic loss rule does not bar a claim for negligent misrepresentation where independent duty exists); *Colorado Visionary Acad. v. Medtronic, Inc.*, 397 F.3d 867, 869-74 (10th Cir. 2005) (Under Colorado law, "tort of negligent misrepresentation can arise from ordinary, arm's length bargaining that was expected to lead to a contractual relationship," and such a claim should not be dismissed under the economic loss rule).

In *Standard Bank*, this Court found that the plaintiff's tort claims were barred by the economic loss rule because the defendant had no duty to the plaintiff other than that in the proposal that became the contract. 2010 WL 358832 at *7. If, however, duties exist independent of the obligations set forth in a contract, it is error to bar tort claims under the economic loss rule. *Stiff v. BilDen Homes, Inc.*, 88 P.3d 639, 641–42 (Colo. App. 2003) (citing *Town of Alma v. AZCO Constr. Inc.*, *supra*.). If the independent duties imposed by law are different from the contractual duties, the economic loss rule has no applicability. *A.C. Excavating*, 114 P.3d at 865-66.

In *First Franklin*, the economic loss rule applied because the asserted tort claim alleged nothing more than a breach of the contractual terms.  2009 WL 3698526 at *5.  Here, Coors alleges that there were separate, independent, and different legislatively and judicially created duties—in addition to contractual duties—that were breached.

**B.     Coors' Count Two breach of fiduciary duty claim against JEG is based on a duty of care independent of the Alliance Agreement and is not barred by the economic loss rule.**

Jacobs now moves for the *third* time to dismiss Coors' breach of fiduciary duty claim.[5] Coors incorporates herein by reference its Response in Opposition to Jacobs' Motion for Partial Summary Judgment (Doc. No. 33) and its Response in Opposition to JEG's Motion for Judgment on the Pleadings on Count Two for Breach of Fiduciary Duty (Doc. No. 91).  Coors relies on, adopts, and incorporates the legal arguments, exhibits, and affidavits included in its previous filings as part of its opposition to Jacobs' instant motion.

As explained in Coors' Response (Doc. No. 91), the existence of a fiduciary relationship is a prerequisite to the finding of a breach of fiduciary duty—and the existence of a fiduciary relationship is a question of fact, not law.  *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 517–18 (Colo. 1986).  Coors alleged that it had a fiduciary relationship with JEG. Compl. ¶¶ 22–25.  Coors further supported these factual allegations with affidavits, deposition testimony, and exhibits.  *See* Doc. Nos. 91-1 to 91-6.  The duty that arises from this fiduciary relationship is independent and different from JEG's contractual duties.

---

[5] Jacobs first moved for partial summary judgment on this claim on Oct. 8, 2008.  (Doc. No. 27).  That motion was denied.  (Doc. No. 53).  Jacobs next moved for Judgment on the Pleadings on Plaintiff's Count Two for Breach of Fiduciary Duty on June 29, 2010.  (Doc. No. 76).  Jacobs attached materials outside the pleadings to that motion. (Doc. No. 78).  That motion has not yet been decided.  Jacobs, in its current motion, moves for Judgment on the Pleadings against Coors' Breach of Fiduciary Duty Claim once again.  (Doc. No. 83).

Count Two of the complaint alleges a fiduciary duty of care owed by JEG to Coors that is independent of the contractual duties of care owed by JEG to Coors under the Alliance Agreement. Specifically, Paragraph 22 of the complaint states that "Coors placed *special confidence* in JEG and trusted JEG to *provide advice and counsel* regarding the viability of the Project." (emphasis added). The complaint also alleges that JEG "breached the fiduciary duty it owed Coors by, among other things, failing to adequately prepare its cost estimate for the Project and thereby failing to provide *proper advice and counsel to Coors* regarding the viability of the Project." Compl. ¶ 23 (emphasis added).

The duty of care alleged under Paragraph 22 of the complaint epitomizes a common-law fiduciary duty of care that is independent of JEG's contractual duties. In *Paine, Webber*, the Colorado Supreme Court defined a common-law fiduciary duty in terms nearly identical to Coors' description of the fiduciary duty owed by JEG to Coors in Paragraph 22 of the complaint. 718 P.2d at 517. Specifically, the court found that a fiduciary duty exists when "there is *special confidence* reposed" in one party who is bound to act in good faith and with "due regard to interests of one reposing the confidence." *Id.* (emphasis added); *see also Turkey Creek, LLC v. Rosania*, 953 P.2d 1306, 1312 (Colo. App. 1998) ("A confidential relationship may give rise to a fiduciary duty if one party justifiably reposes a *special trust and confidence* in another so that ordinary vigilance and care is relaxed") (emphasis added).

The common-law fiduciary duty of care addressed in Paragraph 22 of Coors' complaint is different than the contractual duties of care that JEG was required to comply with under the terms of the Alliance Agreement. Specifically, Coors' breach of contract claim against JEG, Count One of the complaint, alleges that JEG was responsible to Coors under the Alliance

Agreement "for the professional quality, the technical accuracy, and the performance and coordination of all designs, drawings, specifications, and other services provided by JEG," and that JEG was responsible for providing services of the "highest professional quality." Compl. ¶¶ 12-13.   These Alliance Agreement duties at issue in Coors' breach of contract claim focus on the *quality* of the services that JEG was required to provide to Coors during the course of their contractual relationship.   In particular, JEG was required to provide professional services to Coors of the "highest professional quality." Compl. ¶ 13.   In contrast, the common-law fiduciary duty at issue in Coors' breach of fiduciary claim focuses on the nature of the fiduciary relationship between Coors and JEG, i.e., the "special confidence" that JEG owed to Coors as its fiduciary.   The contractual duty focused on the quality of services provided by JEG is not the same as the fiduciary duty focused on the special relationship existing between JEG and Coors. As such, the fiduciary duty addressed by Coors in Paragraph 22 of the complaint is recognized under Colorado law as separate and independent of JEG's contractual duties under the Alliance Agreement.

This premise is supported by *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, where the Tenth Circuit, interpreting Colorado law, refused to bar a breach of fiduciary duty claim under the economic loss rule because the court found that "[i]t is settled in Colorado that the economic loss rule applies only to tort claims based on negligence, and only to some negligence claims." 210 F.3d 1207, 1226 (10th Cir. 2000).   The Tenth Circuit explained that the plaintiff's breach of fiduciary duty claim was not synonymous with its breach of contract claim and that the fiduciary duty breach arose independently from the contractual relationships between the parties. *Id.; see also DerKevorkian v. Lionbridge Tech., Inc.*, Civil No. 04-cv-01160-LTB-CBS, 2006

WL 197320 at**6-8 (D. Colo. Jan. 26, 2007) (plaintiff's breach of fiduciary duty claim was not barred by Colorado's economic loss rule because plaintiff "adequately stated facts to support a finding of an independent fiduciary duty").

JEG cites *First Franklin* as support for its argument that Coors' breach of fiduciary duty claim should be barred under the economic loss rule because "the complaint defined the purported fiduciary duty in contractual terms, and failed to identify an independent duty that was different than that imposed by the contract." Jacobs' Memo. at 7. JEG mischaracterizes the applicability of *First Franklin* to Coors' complaint because Paragraph 22 of the complaint alleges a fiduciary duty owed by JEG to Coors that is independent of the contractual duty under the Alliance Agreement. While the plaintiff in *First Franklin* may have failed to plead a fiduciary duty of care, independent of the contract between the parties, that is not the case with Count Two of Coors' complaint.

Jacobs did not address the independent fiduciary duty of care alleged by Coors in Paragraph 22 of the complaint (that "Coors placed *special confidence* in JEG and trusted JEG to *provide advice and counsel* regarding the viability of the Project"). Instead, Jacobs focuses solely on the fiduciary duty of care owed by JEG to Coors under Paragraphs 20 and 21 of the complaint. Specifically, Paragraph 20 of the complaint states that "JEG agreed to comply with the National Society of Professional Engineers Code of Ethics in performing its services under the Alliance Agreement," and Paragraph 21 of the complaint states that the "National Society of Professional Engineers Code of Ethics required JEG to act for Coors as its faithful agent or trustee." JEG agreed to serve as a "faithful agent or trustee" of Coors under the Code of Ethics,

but that does not mean that JEG did not also owe a common-law fiduciary duty to Coors that was independent and different.

**C.** **Coors' Count Three negligence claim is based on a duty of care independent of the Alliance Agreement and is not barred by the economic loss rule.**

Under the general principles set out in Section I.A. above, Coors' negligence claim under Count Three of the complaint is not barred by Colorado's economic loss rule because JEG owed Coors statutory and common-law duties of care that were independent of JEG's duties of care under the Alliance Agreement. Colorado law recognizes that a design professional has both a statutory and a common-law duty to exercise reasonable care and skill when providing services to a property owner. The existence of these negligence duties of care owed by JEG to Coors were sufficiently alleged in Count Three of the complaint and are "plausible" on the face of the complaint. *Robbins,* 519 F.3d 1247. Jacobs' motion for judgment on the pleadings with regard to Count Three should be dismissed as explained in detail above because the independent duties imposed by law are different from the contractual duties, and the economic loss rule has no applicability. *A.C. Excavating*, 114 P.3d at 865-66.

**D.** **Coors' Count Four negligent misrepresentation claim is based on a duty of care independent of the Alliance Agreement and is not barred by the economic loss rule.**

Colorado law defines negligent misrepresentation as occurring when "[o]ne who, in the course of his business profession or employment, or in any other transaction in which he has a pecuniary interest, *supplies false information* for the guidance of others in their business transactions." *Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver*, 892 P.2d 230, 236 (Colo. 1995) *quoting* Restatement (Second) of Torts § 552 (1977) (emphasis added).

The Colorado Supreme Court has held that design professionals have an independent duty of care to an employer or property owner to refrain from providing false information during the course of their business relationship.  In *Kellogg,* a design professional was found liable for providing false estimating data to an employer even though a contractual relationship existed between the parties.  157 P.2d at 635; *see also Hamon Contractors, Inc. v. Carter & Burgess, Inc.,* 229 P.3d 282, 294 (Colo. App. 2009) (a design professional has a "common law duty to refrain from deliberate concealment or misrepresentation of material facts"); *Jardel Enterprises, Inc. v. Triconsultants, Inc.*, 770 P.2d 1301, 1305 (Colo. App. 1988) (*Kellogg* involved architects who "made negligent misrepresentations regarding the cost to build a building; therefore, they were held liable in negligence for economic damages").  This duty to refrain from providing false information is available to a plaintiff despite the fact that a contractual relationship between the parties exist.  *Keller v. A.O. Smith Harvestore Products, Inc.*, 819 P.2d 69, 72 (Colo. 1991) ("a claim of negligent misrepresentation based on principles of tort law, independent of any principle of contract law, may be available to a party to a contract" even where a contract "precludes [the] assertion of such a claim").

The Tenth Circuit has upheld the principal that a negligent misrepresentation claim can arise despite the existence of a contractual relationship.  In *Colorado Visionary Acad. v. Medtronic, Inc.*, 397 F.3d 867, 874 (10th Cir. 2005), the court applied Colorado law and held that "the tort of negligent misrepresentation can arise from ordinary, arm's length bargaining that was expected to lead to a contractual relationship."

In *Level 3 Communications*, the Tenth Circuit expressly stated that *BRW* does not bar a negligent misrepresentation claim where the duty of care exists independent of the parties' contract obligations.  535 F.3d at 1162–63.

Count Four of the complaint alleges a negligent misrepresentation duty of care owed by JEG to Coors that was independent of the contractual duties of care owed by JEG to Coors under the Alliance Agreement.  Specifically, Paragraph 44 of the complaint alleges that JEG had a duty to "exercise reasonable care or competence in obtaining or communicating" information to Coors regarding the Project's estimated total cost.  Coors alleges that JEG breached this duty of care by supplying "false information" concerning the estimate, which Coors relied upon "in its business transactions."  Compl. ¶¶ 42-43.

The duty of care alleged by Coors in the complaint required JEG to refrain from providing Coors false information during their business relationship.  This is a common law duty of care separate and distinct from the contractual duty of care that JEG owed to Coors under the Alliance Agreement.  Specifically, JEG was responsible under the Alliance Agreement "for the professional quality, the technical accuracy, and the performance and coordination of all designs, drawings, specifications, and other services provided by JEG," and for providing services of the "highest professional quality."  Compl. ¶¶ 12-13.  JEG's Alliance Agreement duties focused on the quality of the professional services that JEG was required to provide to Coors during the course of their contractual relationship.  JEG's contractual duties did not specifically require it to refrain from providing false information to Coors.  As such, JEG's common law duty to refrain from providing false information to Coors was independent of its contractual duty to ensure it provided Coors services of the "highest professional quality."  Compl. ¶ 13.

The Colorado economic loss rule does not bar Coors' negligent misrepresentation claim because it is based on a duty independent of any contractual obligations. *See Town of Alma*, 10 P.3d at 1263 (Court held that the tort of negligent misrepresentation is based on a common law claim that is "expressly designed" to remedy economic loss independently of a breach of contract claim).

Jacobs again relies primarily on *BRW* to support its conclusion that "[i]n Colorado, a claim for negligent misrepresentation is barred by the Economic Loss Rule where the alleged negligent misrepresentation occurs during the performance of a contract." Jacobs' Memo. at 15. Jacobs' reliance on *BRW* to support this conclusion is misplaced. *BRW* does not stand for the proposition that a negligent misrepresentation claim is *per se* barred by the Colorado economic loss rule where the negligent misrepresentation "occurs during the performance of a contract" as Jacobs would have the Court believe. *Id.* To the contrary, the negligent misrepresentation claim in *BRW* was barred because it arose "from a contractual duty," not because the negligent misrepresentation occurred during the performance of a contract. *BRW*, 99 P.3d at 74. Specifically, the *BRW* negligent misrepresentation claim was based on an affirmative duty of a party to a contract to provide verbal reports to another contractual party regarding work that was not being performed in accordance with the contract. The duty to provide verbal non-compliance reports was a contractual duty in *BRW*, and the court found that the negligent misrepresentation duty of care was not independent of that contractual duty of care.

Here, Coors' complaint alleges no such affirmative contractual duty for JEG to provide non-compliance report information to Coors. To the contrary, JEG's contractual duty under the Alliance Agreement was to provide professional services to Coors of the "highest professional

quality." Compl. ¶ 13.  JEG's obligation to refrain from providing false information to Coors is independent of JEG's contractual duty to provide services to Coors of the "highest professional quality."  *Id.*  Because Coors' negligent misrepresentation claim as alleged is supported by a common-law duty of care independent of JEG's contractual duties of care, the claim should not be dismissed under the economic loss rule.[6]  *See Town of Alma*, 10 P.3d at 1263; *Keller,* 819 P.2d at 72; *Kellogg*, 157 P.2d at 635; *Level 3 Communications,* 535 F.3d at 1162-63; *Colorado Visionary Acad.,* 397 F.3d at 874.

## II.     Coors' tort claim against JCS is not barred by the Virginia economic loss rule.

The Virginia economic loss rule does not bar Coors' Count Six negligence claim against JCS because the claim is based on a duty of care that is separate and independent of the duty of care applicable to JCS under the Construction Services Agreement.

### A.     Virginia law recognizes an independent negligence duty of care for design professionals.

Virginia statutory law imposes several independent duties of care on an engineer to adhere to the minimum standards of the profession when providing services to an employer or property owner.  Specifically, a Virginia engineer is required to "adhere to the minimum standards and requirements pertaining to the practice of [the engineering] profession."  18 Va. Admin. Code 10-20-730(C).  Furthermore, a design professional is required to protect "the

---

[6] Jacobs also relies on *Hamon Contractors,* 229 P.3d at 293 for the premise that "where a misrepresentation is alleged during the course of a party's performance of services under a construction or engineering services contract, the contract provides the only remedy to recover economic losses."  Jacobs' Memo. at 16.  Jacobs' reliance on *Hamon* is as equally misplaced as its reliance on *BRW*.  The Colorado Court of Appeals in *Hamon* acknowledged that a design professional has a "common law duty to refrain from deliberate concealment or misrepresentation of material facts." *Hamon,* 229 P.3d at 294.  However, the *Hamon* Court rejected the plaintiff's negligent misrepresentation claim because the duty requiring the defendant to refrain from providing false information to the plaintiff existed only because of the interrelated contracts between the parties.  Here, JEG's common-law duty to refrain from providing false information to Coors is different than its contractual duty of care to provide services to Coors of the "highest professional quality."

health, safety, and welfare of the general public." 18 Va. Admin. Code 10-20-690; *see also* Va. Code Ann. §§ 54.1-100 *et seq., 54.1-400 et seq.* (Virginia regulates the practice of engineering in the state through a comprehensive statutory and regulatory framework). Under Virginia law, the practice of engineering includes by statutory definition "responsible administration of construction contracts." Va. Code Ann. § 54.1-400.

Virginia courts have long recognized that an independent duty of care, separate and distinct from a contractual duty of care, "may arise from statute, from a municipal ordinance, or from the relation of the parties." *Rice v. Turner*, 62 S.E.2d. 24, 26 (Va. 1950); *see also Kamlar Corp. v. Haley*, 299 S.E.2d. 514, 517 (Va. 1983) (the law of torts is well equipped to offer redress for losses suffered by reason of a "breach of some duty imposed by law to protect the broad interests of social policy").

**B.     Coors' negligence claim against JCS is based on duties of care independent of the Construction Services Agreement.**

Count Six of the complaint alleges a negligence duty of care owed by JCS to Coors that was independent of the contractual duties of care owed by JCS to Coors under the Construction Services Agreement. Specifically, Paragraph 66 of the complaint alleges that "JCS owed Coors a duty to provide design, engineering, construction, and other services *using the ordinary and reasonable skill usually exercised by design professionals*, engineers, or architects and as otherwise applicable." (emphasis added). The duty of care alleged in Paragraph 66 of the complaint is substantially similar to the statutory duty of care imposed upon JCS by 18 Va. Admin. Code 10-20-730(C), which requires a Virginia engineer to "adhere to the minimum standards and requirements pertaining to the practice of [the engineering] profession." *See also* 18 Va. Admin. Code 10-20-690 (JCS was required to protect "the health, safety, and welfare of

the general public" when performing its duties for Coors).[7]  As an engineer, JCS has a statutory

duty to properly administer the construction contracts.  Va. Code Ann. § 54.1-400.  Coors alleges

that "JCS breached its duties by providing deficient services to Coors."  Compl. ¶ 67.  And that

"JCS's deficient services caused Coors to incur costs and expenses that Coors would not

otherwise have incurred."  Compl. ¶ 68.

These statutory duties of care are different from the contractual duty of care that JCS was

required to comply with under the terms of the Construction Services Agreement.  Specifically,

Paragraph 52 of Coors' complaint alleges that JCS was required under the Construction Services

Agreement to "perform and complete the Work in a good and workmanlike manner satisfactory

and acceptable to Coors."  Coors' negligence claim focuses on JCS's failure to provide

professional services with the "ordinary and reasonable skill usually exercised by design

professionals" to "adhere to the minimum standards and requirements" applicable to design

professionals, and to properly administer the construction contracts, whereas Coors' breach of

contract claim focuses on JCS's failure to perform in a "workmanlike manner" that was

"satisfactory and acceptable to Coors."

The negligence duty of care and the contractual duty of care that Coors alleges JCS

breached are two different standards when applied to design professionals.  The negligence duty

of care required JCS to perform with ordinary and reasonable skill as measured against the

ordinary and reasonable skill of other design professionals.  In contrast, the contractual duty of

care under the Construction Services Agreement required JCS to merely perform its work in a

workmanlike manner, or satisfactorily.

---

[7] As with the Colorado statutory duties, the Court may take judicial notice of the applicability of these statutory duties of care.  *See Zimomra v. Alamo Rent-A-Car, Inc.,* 111 F.3d 1495, 1503-04 (10th Cir. 1997).

**C.   The Virginia economic loss rule does not bar Coors' negligence claim because it is based on an independent duty of care.**

A claim for breach of JCS's duty to perform with the ordinary and reasonable skill of other design professionals is not barred by the Virginia economic loss rule.  For Coors to pursue a tort claim under Virginia law, it need only show that the "duty tortiously or negligently breached [is] a common law duty, not one existing between the parties solely by virtue of the contract." *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d. 344, 347 (Va. 1998); *see also Gerald M. Moore and Son, Inc. v. Drewry,* 467 S.E.2d. 811, 812 (Va. 1996) (engineering firm was found liable under Virginia law for both breach of contract and negligence claims by a property owner, despite the existence of Virginia's economic loss rule).  Here, the common-law duty requiring JCS to perform with the ordinary and reasonable skill of a design professional flows from JCS's statutory duty under Virginia law to "adhere to the minimum standards and requirements pertaining to the practice of [the engineering] profession." 18 Va. Admin. Code 10-20-730(C); *see also* 18 Va. Admin. Code 10-20-690.  Virginia statutory law imposed an affirmative duty on JCS, separate and apart from the Construction Services Agreement, to exercise a minimum degree of skill and competence in designing and constructing the Project.

Because Coors' negligence claim at Count Six of the complaint sufficiently alleges that JCS's "duty tortiously or negligently breached [is] a common law duty, not one existing between the parties solely by virtue of the contract," the claim is not barred under the economic loss rule. *Richmond Metro. Auth.,* 507 S.E.2d. at 347.

## Conclusion

Jacobs' motion to dismiss Coors' tort claims as a matter of law should be denied because Coors' tort claims are based on statutory and common-law duties independent of the Alliance Agreement and the Construction Services Agreement. The economic loss rule therefore does not apply to Coors' tort claims under either Colorado or Virginia law.

Coors has alleged sufficient facts to make each of its tort claims and its breach of fiduciary duty claim plausible. For the foregoing reasons, Coors respectfully requests that the Court deny Jacobs' Motion for Judgment on the Pleadings on Plaintiff's Tort Claims.

Respectfully submitted August 2, 2010.

*s/ Robert C. Chambers*
Robert C. Chambers
rcchambers@smithcurrie.com
Charles W. Surasky
cwsurasky@smithcurrie.com
John M. Mastin, Jr.
jmmastin@smithcurrie.com
SMITH, CURRIE & HANCOCK LLP
2700 Marquis One Tower
245 Peachtree Center Avenue NE
Atlanta, Georgia 30303-1227
Tel: 404-521-3800
Fax: 404-688-0671

Randall H. Miller
randy.miller@hro.com
HOLME ROBERTS & OWEN LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203-4541
Tel: 303-861-7000
Fax: 303-866-0200

*Attorneys for Plaintiff*
*Coors Brewing Company*

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on August 2, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

David G. Palmer
**GREENBERG TRAURIG LLP**
1200 17th Street, Suite 2400
Denver, Colorado 80202
Tel:   303-572-6500
Fax:   303-572-6540
Email:  palmerdg@gtlaw.com

and

Albert E. Peacock, III
Paul T. Ross
**KEESAL, YOUNG & LOGAN**
400 Oceangate
P.O. Box 1730
Long Beach, California  90801
Tel:   562-436-2000
Fax:   562-436-7416
Email:  al.peacock@kyl.com
       terry.ross@kyl.com

***Attorneys for Defendants and
Third-Party Plaintiffs
Jacobs Engineering Group Inc. and
Jacobs Construction Services, Inc.***

Christian H. Hendrickson
**SHERMAN & HOWARD L.L.C.**
633 17 Street, Suite 3000
Denver, Colorado 80202
Tel.: 303-297-2900
Fax: 303-298-0940
Email:
chendrickson@shermanhoward.com

and

Paul F. Keneally
**UNDERBERG & KESSLER LLP**
300 Bausch & Lomb Place
Rochester, New York 14604
Tel.: 585-258-2800
Fax: 585258-2821
Email:
pkeneally@underbergkessler.com

***Attorneys for Plaintiff and
Third-Party Defendant
Briggs of Burton, PLC***

_s/ John M. Mastin, Jr._        
John M. Mastin, Jr.
**SMITH, CURRIE & HANCOCK LLP**

***Attorneys for Plaintiff
Coors Brewing Company***