**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
Senior District Judge Richard P. Matsch

Civil Action No. 1:08-cv-00985-RPM
(Consolidated w/Civil Action No. 09-cv-00271-RPM)

COORS BREWING COMPANY AND
BRIGGS OF BURTON, PLC,

              Plaintiffs,

v.

JACOBS ENGINEERING GROUP INC.,
JACOBS INDUSTRIAL SERVICES, INC., a/k/a
JACOBS CONSTRUCTION SERVICES, INC., and
JACOBS CONSTRUCTION, INC.,

              Defendants,

and

JACOBS ENGINEERING GROUP INC. and
JACOBS CONSTRUCTION SERVICES, INC.,

              Third-Party Plaintiffs,

v.

BRIGGS OF BURTON, PLC,

              Third-Party Defendant.

---

**Coors' Response in Opposition to Jacobs' Motion for Judgment on the Pleadings on the Application of Defendants' Contractual Limitation of Liability to Plaintiff's Tort Claims**

---

Coors respectfully submits its Response in Opposition to Jacobs' Motion for Judgment

on the Pleadings on the Application of Defendant's Contractual Limitation of Liability to

Plaintiff's Tort Claims (Doc. No. 141).

## Summary of Argument

Jacobs, an engineering design professional, argues that a contractual limitation-of-liability provision allows it to improperly bill its client, Coors, an unlimited amount of money, and once Coors notices the improper billings, Jacobs is required to refund only its fee. That position defies common sense where, as here, the engineer's fee is a tiny fraction of the money improperly billed and collected. The Court should not allow Jacobs to bill Coors as much as $89.3 million for rework that should not have been billed, and then limit Coors' remedy to a refund of Jacobs' "fee at risk"—at most $4.3 million. No reasonable party would understand a limitation-of-liability provision to be a "blank check" for a professional to bill its client for work not allowed to be billed under the professional's contract.

In its First Amended Complaint (FAC), Coors shows the Court what happened on the project, providing more than sufficient facts to allow the Court to draw the reasonable inference that Jacobs is liable for, among other things, professional malpractice for improper billings. Coors' claims are therefore facially plausible and should not be dismissed. Coors' restitutionary damages resulting from Jacobs' improper billings for rework outside the contracts should not be subject to the limitation-of-liability provision, or to the reperformance provision when reperformance is impossible.

The limitation-of-liability provision in the Construction Services Agreement (the "Design-Build Contract") does not apply to Coors' Count One - Negligence (Professional Malpractice) against Jacobs Construction Services, Inc. ("JCS") for five reasons:

(1) JCS is obligated under the terms of the Design-Build Contract to repay money

improperly billed.

(2) The limitation-of-liability provision is unenforceable because JCS cannot satisfy the *Kocinec* test.

(3) JCS's illusory promise to reperform renders the limitation of liability unenforceable.

(4) JCS's breach of its duty of good faith and fair dealing renders the limitation of liability unenforceable.

(5) Because JCS breached the Design-Build Contract, it cannot now seek to enforce the limitation-of-liability provision under Virginia's "first material breach" rule.

The reperformance provision in the Engineering Services Agreement (the "Alliance Agreement") does not apply to Coors' Count Four - Negligence (Professional Malpractice) against Jacobs Engineering Group Inc. ("JEG") for two reasons:

(1) JEG's promise to reperform was illusory—JEG had unfettered discretion in deciding whether to reperform or send the defective design to the field for construction—and the illusory promise deprives Coors any legal remedy after Coors has already incurred damages resulting from JEG's professional malpractice.

(2) JEG's breach of its duty of good faith and fair dealing renders the reperformance provision unenforceable.

Jacobs' motion should be denied and this case set for trial on the merits.

## Argument

### I.      Legal Standard

Jacobs moves for judgment on the pleadings under Fed. R. Civ. P. 12(c) on the grounds that the FAC fails as a matter of law because Count One - Negligence (Professional Malpractice)

against JCS and Count Four - Negligence (Professional Malpractice) against JEG are barred, in part, by the limitations of liability set forth in the respective contracts: the Construction Services Agreement (the "Design-Build" Contract) between Coors and JCS, and the Engineering Services Agreement (the "Alliance Agreement") between Coors and JEG.  Jacobs' Mot. at 1-2.

A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Atl. Richfield v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).  Under this standard, the Court must accept all well-pleaded allegations of the complaint as true and construe them in the light most favorable to the non-moving party.  *Realmonte v. Reeves*, 169 F.3d 1280, 1283 (10th Cir. 1999).  Well-pleaded allegations are those that are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  "[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1939 (2009).  Granting a motion to dismiss is a harsh remedy requiring careful study.  *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

Here, Coors' FAC shows the Court detailed facts of Jacobs' professional malpractice, such as negligent, improper billings for rework.  And Coors' direct damages resulting from Jacobs' professional malpractice should not be limited for the reasons explained below.

**II.     The limitation-of-liability provision in the Design-Build Contract does not limit Coors' direct damages resulting from JCS's improper billings.**

The Design-Build Contract's limitation-of-liability provision does not apply to Coors' Count One - Negligence (Professional Malpractice) against JCS because: (a) JCS is obligated under the terms of the contract to repay money improperly billed; (b) the limitation-of-liability provision is unenforceable because JCS cannot satisfy Virginia's *Kocinec* test; (c) JCS's illusory promise to reperform renders the limitation of liability unenforceable; (d) JCS's breach of its duty of good faith and fair dealing renders the limitation of liability unenforceable; and (e) JCS cannot seek to enforce the limitation-of-liability provision under Virginia's "first material breach" rule.

JCS's motion should be denied for any one of these separate and independent reasons.

**A.     Under the Design-Build Contract, JCS is obligated to repay money improperly billed and collected.**

Under Virginia law, the court's primary goal in construing written contracts is to determine the parties' intent. *Pocahontas Mining LLC v. CNX Gas Co., LLC*, 666 S.E.2d 527, 531 (Va. 2008). Intent is determined, whenever possible, from the words used. *Id.* Words are given their plain meaning. *Id.* No reasonable word or phrase will be treated as meaningless and the contract will be read as a whole. *Id.* At the end of the day, the interpretation adopted should be reasonable, and "absurd results" avoided. *Transit Cas. Co. v. Hartman's, Inc.*, 239 S.E.2d 894, 896 (Va. 1978).

Jacobs' argument that it should be allowed to improperly bill $89.3 million for rework and have its liability limited to its fee would render meaningless three important provisions of the Construction Services Agreement (the Design-Build Contract):

**Article 6, § 6.2(g)**

<u>Responsibility of Parties: Errors/Accuracy</u>. CONTRACTOR shall, without additional compensation, correct or revise any errors or deficiencies in the designs, drawings, or specifications provided pursuant to this Agreement ("Error Corrections"). Within fifteen (15) calendar days of identifying the need to address Error Corrections, CONTRACTOR shall provide written notification to COORS requesting COORS' approval of the Error Corrections.

Neither COORS['] review or acceptance of, nor payment for any of the services required under this Agreement shall be construed to operate as a waiver of any rights under this Agreement or of any course of action arising out of the performance of this Agreement, except in the event where CONTRACTOR brings a change or substitution of specific Work to COORS' attention and COORS grants its prior approval for such change or substitution of the specific Work, and CONTRACTOR shall be and remain liable to COORS for the negligent performance of any of the services furnished as set forth in Exhibit B, as provided for under this Agreement and for the length of the warranty periods as set forth in Article 17.

Construction Services Agreement Article 6, § 6.2 (g) at 7-8 (Doc. No. 1-3, at 7-8).

\* \* \*

**Construction Services Agreement**
**<u>EXHIBIT A</u>**
**CONTRACT SUM – PAYMENT PROVISIONS**
[…]
**<u>BILLING AND PAYMENT CONDITIONS</u>**
[…]
If errors in CONTRACTOR'S invoices are found after the invoices are paid, and COORS notifies the CONTRACTOR, then CONTRACTOR must adjust the future invoice to rectify such error found.

Construction Services Agreement, Exhibit A at 29 (Doc. No. 1-3, at 30-31).

\* \* \*

**Construction Services Agreement**
**Exhibit B**
**Part 3.3 Supply Management Plan, § 15.10 Applications for Payment**

Applications for Payment [AP] - Subcontractors shall be instructed to submit a draft application for payment to the Site Manager following that month in which

> the work was performed.  The Site Manager will pre-review the AP and advise the subcontractor of any comments. The formal AP will then be submitted [to] Site Manager for approval, and upon the Site Manager's approval, will be forwarded to Accounts Payable for payment. The FCA [Field Contracts Administrator] will also review the AP's for contractual compliance, and will facilitate these reviews and approvals with the Site Manager and his designee. [AP's] not in strict compliance will be rejected and returned to the subcontractor with an explanation.

Part 3.3, § 15.10 of the Construction Services Agreement's Exhibit B.

Read as a whole, these provisions prohibit JCS from invoicing for its own rework—and entitle Coors to a credit because JCS billed and was paid for design omissions.  FAC ¶¶ 185-189. Additionally, JCS's major trade subcontracts prohibited its subcontractors from billing for rework.  FAC ¶ 96.  Part 3.3, § 15.10 obligated JCS to reject any improper subcontractor pay applications.  That did not happen.  JCS's subcontractors improperly billed for rework, and JCS passed these improper costs on to Coors.  FAC ¶¶ 153, 155, 161-62.

Jacobs argues that Article 22 of the Design-Build Contract "specifically precludes recovery of economic loss in tort."  Jacobs' Memo. at 2.  That is not an accurate interpretation of the contract provision, which states in relevant part: "neither CONTRACTOR nor COORS shall in any event be liable to the other for special, indirect or consequential damages, including ***damages for economic loss*** (such as business interruption or loss of profits)." (emphasis in original).  The mutual limitation is on "special, indirect or consequential damages," not direct damages for improperly billing for rework that was not to have been billed under the contract. The provision provides no help to Jacobs under the facts and circumstances of this case.

None of the cases cited by Jacobs involved a professional engineer limiting its damages for professional malpractice: *1745 Wazee, LLC v. Castle Builders, Inc.*, 89 P.3d 422 (Colo. App. 2003) (builder installing boiler); *Ripley Heatwole Co., Inc. v. John E. Hall Elec. Contractor,*

*Inc.*, 69 Va. Cir. 69 (Va. Cir. Ct. 2005) (electrical contractor installing fire alarm system); *Jones v. Dressel*, 623 P.2d 370 (Colo. 1981) (skydiving company); *Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781 (Colo. 1989) (ranch providing horseback riding to public); *C&O Ry. Co. v. Clifton Forge-Waynesboro Tel. Co.*, 224 S.E.2d 317 (Va. 1976) (railway company acting in private capacity); *Gill v. Rollins Protective Servs. Co.*, 722 F.2d 55 (4th Cir. 1983) (fire alarm-burglary company installing system).

The Colorado statute cited by Jacobs, C.R.S. § 13-20-806(4), concerns personal or bodily injury resulting from a construction defect and sheds no light on whether a professional engineer may limit its liability for negligently billing for rework.

By its own admission, JCS billed Coors as much as $83,969,532 for work outside the contract that should not have been billed to Coors.  FAC ¶¶ 163-190.  Jacobs argues it can improperly bill more than $83 million, with Coors' recovery limited to Jacobs' fee.  Acceptance of that argument would render meaningless the Design-Build Contract's provisions on rework and billing accuracy, and thereby produce an absurd result.  It would also contravene Virginia law on contract construction.

In fact, if Jacobs is correct, a court would be powerless even to enforce Jacobs' duty under Exhibit A to adjust future invoices.  If Coors had detected Jacobs' improper billings earlier—say after $25 million had been improperly billed—and asked Jacobs to credit future invoices, and Jacobs refused, under Jacobs' reading of the limitation provision, a court could not order any relief, not even specific performance, beyond Jacobs' fee at risk.  It is highly unlikely that the limitation provision was meant to allow Jacobs to bill, collect, and keep money that it

had no right to even bill under the contract.  If Jacobs believes that the Design-Build Contract is properly read that way, it may make that argument to the jury.

Under Jacobs' theory of professional liability, lawyers with limitation-of-liability provisions in their retainer agreements could improperly bill clients for services not requested and, when questioned about the improper bill, have to refund only the original fee quoted. Doctors could bill patients for procedures performed on different patients, and if the patient or insurance company paid the bill, the doctor's liability would be limited to the fee quoted for the procedure requested.  It is hard to imagine any court allowing such behavior.  Engineering design and construction management professionals, like Jacobs, should be held to the same standard imposed upon other professionals, such as lawyers and doctors.  *Gravely v. The Providence Partnership*, 549 F.2d 958, 960 (4th Cir. 1977) (duty of care owed by a design professional is generally the same as that imposed on lawyers and doctors).

The Design-Build Contract, properly construed under Virginia law, does not allow Jacobs to improperly bill and get paid millions of dollars, and hide behind a limitation-of-liability provision when Coors asks for its money back.

> **B.    The Design-Build Contract's limitation-of-liability provision is unenforceable because JCS cannot satisfy the *Kocinec* test.**

Under Virginia law, the law that governs the Design-Build contract, contract provisions that limit liability are typically evaluated using a three-part test.  *Kocinec v. Public Storage, Inc.*, 489 F. Supp. 2d 555, 559 (E.D. Va. 2007) (diversity case applying Virginia law).  To limit its liability, JCS must prove that the limitation-of-liability provision:

(1)     Does not contravene Virginia public policy;

(2)    Could readily be understood by a reasonable person in Coors' position; and

(3)    Clearly and unequivocally releases JCS from precisely the type of liability alleged by Coors.

*Kocinec*, 489 F. Supp. 2d at 559 (citing *Hiett v. Barcroft Beach, Inc.*, 18 Va. Cir. 315, 318 (1989), *rev'd on other grounds, Hiett v. Lake Barcroft Cmty. Ass'n, Inc.*, 418 S.E.2d 894 (Va. 1992)).  JCS has not satisfied, and cannot satisfy, all three prongs of the *Kocinec* test.

Jacobs relies on a 105-year-old case and argues that the case stands for this proposition: "the burden lies on the party attempting to prove that a liability limitation is invalid, and not on the party seeking to enforce the term." Jacobs' Memo. at 3 (citing *Merriman v. Cover, Drayton & Leonard*, 104 Va. 428, 51 S.E. 817 (1905)).  Jacobs' reliance is misplaced because the case does not say that.  In *Merriman*, the court stated: "if the contract upon its face shows that it is reasonable ... and the defendant seeks to avoid it by some extrinsic matter which renders it illegal, the burden is upon him to establish such illegality." 51 S.E. at 821.

In any event, the Fourth Circuit applying Virginia law recently held "a defendant seeking to avoid liability under an exculpatory agreement must show (1) that the agreement does not contravene public policy, (2) that it could be readily understood by a reasonable person in the plaintiff's position, and (3) that it clearly and unequivocally releases the defendant from precisely the type of liability alleged by the plaintiff." *Kocinec*, 489 F. Supp. 2d at 559.  The court also held that contract provisions that limit liability and those that completely foreclose liability are both viewed as "exculpatory" clauses. *Id.*

Here, Coors did not understand the limitation-of-liability provision to relieve Jacobs from its professional obligations, including its contractual obligation of accurate billing.  And Coors

did not understand the provision to allow Jacobs to bill and get paid as much as $89.3 million for rework and other services that Jacobs expressly agreed not to bill, with Coors' only remedy a refund of Jacobs' $4.3 million fee.  No reasonable person in Coors' position would have understood the limitation-of-liability provision to lead to such an absurd result.  Jacobs has not and cannot satisfy prong two of *Kocinec*.

Coors alleges that Jacobs is liable for, among other things, improperly billing Coors for rework.  FAC ¶¶ 108-109.  Coors alleges that Jacobs admits being "entirely responsible" for $100 million in project cost overruns.  FAC ¶ 143.  The limitation-of-liability provision does not clearly and unequivocally release Jacobs from liability for improper billing or liability for being "entirely responsible" for $100 million in extra costs.  Jacobs has not and cannot satisfy prong three of *Kocinec*.

Under Virginia law, the key is not whether an exculpatory clause is in a contract of adhesion or a contract freely negotiated between sophisticated parties, but whether the clause can pass all three prongs of the *Kocinec* test.  Jacobs cannot meet its burden of showing that each prong of the test is satisfied.  Because Jacobs cannot satisfy all three prongs of *Kocinec*, the limitation-of-liability provision is void and unenforceable and Jacobs' motion should be denied. *Kocinec*, 489 F. Supp. 2d at 559.

### C.    JCS's illusory promise to reperform renders the limitation-of-liability provision unenforceable.

JCS promised to "correct or revise any errors or deficiencies in the designs, drawings, or specifications" without any additional compensation from Coors.  FAC ¶ 84.  Coors bargained for the engineering reperformance provision in exchange for the limitation-of-liability provision.

FAC ¶ 198.  JCS's promise to correct or revise any errors or deficiencies without additional compensation from Coors was illusory and not valid consideration because JCS had unfettered discretion in choosing whether to correct its design defects or send the defective design to the field.  FAC ¶ 196.  JCS could never be held liable for failure to reperform its services because its field subcontractors took care of the design problems through field rework, and JCS billed Coors for the rework activities.  FAC ¶ 197.  JCS's unfettered discretion in determining whether it would reperform renders Coors' bargain illusory and the limitation-of-liability provision unenforceable.

Where one party to an agreement "has an unfettered choice of alternatives, and one alternative would not have been consideration if separately bargained for, the promise in the alternative is not consideration." *Heuser v. Kephart*, 215 F.3d 1186, 1191 (10th Cir. 2000) (citing *Restatement (Second) of Contracts* § 77 cmt. b (1981).  "[A]n apparent promise subject to the unfettered discretion ... [of one party] to accept or reject is a classic example of an illusory promise." *Id.* (internal quotation marks and citation omitted).

Here, JCS had unfettered discretion to either correct its design errors, or send the defective design to the field and have its subcontractors correct the errors with field rework.  This is an example of an illusory promise.  JCS chose not to correct its design errors, choosing instead to send its inaccurate and incomplete design to the field for construction, which resulted in tens of millions of dollars of rework that JCS billed to Coors.  FAC ¶ 108.

Under Virginia law, "where the consideration for the promise of one party is the promise of the other party, there must be absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement." *American Agricultural Chemical Co. v. Kennedy*

& *Crawford*, 48 S.E. 868, 870 (Va. 1904).  Colorado law is the same.  *Gould v. Rite-Way Oil &*
*Investment Co.*, 143 Colo. 65, 68, 351 P.2d 849, 850 (Colo. 1960).  A "valid contract must
possess mutuality of obligation."  *Heuser*, 215 F.3d at 1192.  "Mutuality means both sides must
provide consideration.  It is also elementary that a contract, which leaves it entirely optional with
one of the parties to perform, is not founded on mutual promises."  *Id.*

JCS's unfettered discretion in determining whether it would reperform renders Coors'
bargain illusory and the limitation-of-liability provision unenforceable.  *Id.* at 1191-92 (FAC ¶
206).

### D.     JCS's breach of its duty of good faith and fair dealing renders the limitation of liability unenforceable.

Every contract contains an implied duty of good faith and fair dealing.  *Levine v. Selective*
*Ins. Co. of America*, 250 Va. 282, 286-87, 462 S.E.2d 81, 84 (1995).  "[A] party may not exercise
contractual discretion in bad faith, even when such discretion is vested solely in that party."
*Virginia Vermiculite, Ltd. v. W.R. Grace & Company-Connecticut*, 156 F.3d 535, 542 (4th Cir.
1998) (applying Virginia law).

JCS knowingly billed Coors for rework, design omissions, and other services that should
not have been billed under the Design-Build Contract.  FAC ¶¶ 59-63, 66, 164-165, 185-187.
JCS was obligated under the Design-Build Contract to correct or revise any errors or deficiencies
in the designs, drawings, or specifications at its own expense.  FAC ¶ 84.  JCS did not do that.
Instead, JCS sent the inaccurate and incomplete design to the field for construction, with
instructions to its field subcontractors to take care of any problems.  FAC ¶ 108.  This resulted in
millions of dollars in rework that JCS improperly billed to Coors.  JCS had the discretion to
control the project design, and to control and direct the work of its subcontractors.  *See, e.g.,* FAC

¶¶ 78-79, 81, 83, 85, 192.

JCS exercised its discretion in bad faith by choosing not to provide a complete and accurate design, and directing its field subcontractors to take care of the design problems in the field. JCS then billed Coors for the field rework. JCS's deliberate act of sending inaccurate and incomplete design drawings and specifications to the field for construction, and JCS's deliberate act of directing its field subcontractors to take care of the design problems in the field, rendered JCS's reperformance of its defective and incomplete design impossible. FAC ¶ 193. JCS breached its duty of good faith and fair dealing by billing Coors for work that should not have been billed, and now JCS wants to hide behind a contractual limitation-of-liability provision. JCS did not deal fairly with Coors and should not now be allowed to limit its liability to a fraction of Coors' damages. JCS's right to limit its liability is qualified by a duty to act in good faith. *Virginia Vermiculite*, 156 F.3d at 542.

Taking Jacobs' argument to its logical conclusion, the limitation-of-liability provisions would insulate Jacobs from payment of damages even in instances where Jacobs' breach of contract was willful or in breach of the obligation of good faith and fair dealing. This argument, if correct, would undercut the principles of consideration and mutual obligation on which all contracts rest. Jacobs' limitation-of-liability provision is exculpatory. It anticipates that Jacobs may do something wrong for which it will be excused. Coors submits that parties do not bargain based on the assumption that the other party will fail to deal fairly or act in good faith. For that reason, a party should not be allowed to rely on an exculpatory clause to avoid damages caused by a breach of the obligation of good faith and fair dealing. *See United States ex. rel. Williams Electric Co., Inc. v. Metric Constructors, Inc.*, 480 S.E.2d 447, 449 (S.C. 1997) (breach of the

obligation of good faith and fair dealing prevents enforcement of an otherwise enforceable "no damages for delay" clause).

Coors contends that Jacobs' over billings are a violation of the obligation of good faith and fair dealing. Allowing Coors a full refund under the facts and circumstances is a logical extension of the reasoning in *Williams Electric*. It is probable that the Virginia Supreme Court would follow *Williams Electric* (*see Blake Construction Co./Poole & Kent v.Upper Occoquan Sewage Authority*, 587 S.E.2d 711, 718 (Va. 2003) (*Williams Electric* discussed as weighing on proper interpretation of Virginia statute limiting use of "no damage for delay" clauses)), because every Virginia contract contains an implied covenant of good faith and fair dealing. *Frank Brunckhorst Co., L.L.C. v. Coastal Atlantic, Inc.*, 542 F. Supp. 2d 452, 462 (E.D. Va. 2008) (applying Virginia law). And "it is a basic principle of contract law in Virginia, as elsewhere, that although the duty of good faith does not prevent a party from exercising its explicit contractual rights, a party may not exercise contractual discretion in bad faith, even when such discretion is vested solely in that party." *Virginia Vermiculite,* 156 F.3d at 542.

If the Design-Build Contract had expressly allowed Jacobs to bill for its own rework, then the covenant of good faith and fair dealing would not prevent it from doing so. *See Ward's Equipment, Inc. v. New Holland North America, Inc.*, 493 S.E.2d 516, 520 (Va. 1997). The contract, however, did not allow this. Jacobs had complete, unilateral control over its billings. Jacobs was obligated to act in good faith in exercising the unilateral discretion allowed by the contract.

The situation in Colorado is straightforward. "Every contract in Colorado contains an implied duty of good faith and fair dealing." *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d

462, 466 (Colo. 2003).  Whether a party acted in good faith is a fact issue that must be

determined on a case-by-case basis.  *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 499 (Colo. 1995).

In *Tricon Kent Co. v. Lafarge North America, Inc.*, the Colorado Court of Appeals ruled

that a no-damage-for-delay clause is unenforceable if the claimant can "show that the defendant

committed an affirmative, willful act that unreasonably interfered with the [claimant's]

performance of the contract, regardless whether it was undertaken in bad faith."  186 P.3d 155,

161 (Colo. App. 2008) (expressly adopting *Williams Electric*).  Thus Colorado, like Virginia and

South Carolina, recognizes inherent limitations on the enforcement of limitation-of-liability

clauses.

    **E.**     **JCS breached the Design-Build Contract and, under Virginia's "first material breach" rule, may not now seek to enforce the terms of that contract.**

Under Virginia law, the first party to materially breach a contract may not later seek to

enforce the terms of that contract.  *Horton v. Horton*, 487 S.E.2d 200, 204 (Va. 1997) ("[i]f the

first breaching party committed a material breach, … that party cannot enforce the contract");

*Countryside Orthopaedics, P.C. v. Peyton*, 541 S.E.2d 279, 285 (Va. 2001) ("when the first

breaching party commits a material breach, that party cannot enforce the contract"); *Centex

Constr. v. Acstar Ins. Co.*, 448 F. Supp. 2d 697, 714 (E.D. Va. 2006) (Under Virginia law, "a

party who commits the first material breach of a contract is not entitled to enforce the contract.").

Under the first material breach rule, "it is pellucidly clear that defendant may not enforce the

contract against plaintiff even though the parties continued to perform under the contract" after

the material breach occurred.  *Tandberg, Inc. v. Advanced Media Design, Inc.*, 2009 WL

4067717, at *4 (E.D. Va. Nov. 23, 2009) (applying Virginia law).

Here, JCS was the first party to materially breach when it, among other things, improperly billed and collected for rework and other services that were not reimbursable under the Contract. FAC ¶¶ 100-205. Coors' well-pleaded factual allegations must be taken as true for purposes of Jacobs' motion. *Iqbal*, 129 S. Ct. at 1950. Improper billings under a cost reimbursable contract defeat the essential purpose of the contract and are, therefore, material breaches. *See Horton*, 487 S.E.2d at 204. Under Virginia law, JCS should not be allowed to seek enforcement of the contract's limitation-of-liability provision when it was the first party to commit a material breach. *Id.* at 203-04.

### III. The reperformance provision in the Alliance Agreement does not limit Coors' direct damages resulting from JEG's professional malpractice.

Jacobs argues that JEG's liability under the Engineering Services Agreement (the Alliance Agreement) is limited to JEG reperforming its engineering design. Jacobs' Memo. at 3. The Alliance Agreement's reperformance provision does not apply to Coors' Count Four - Negligence (Professional Malpractice) against JEG because: (a) JEG's illusory promise to reperform deprives Coors of any legal remedy and (b) JEG's breach of its duty of good faith and fair dealing renders the reperformance provision unenforceable.

#### A.    JEG's promise to reperform was illusory.

JEG's promise was illusory because JEG had unfettered discretion in choosing whether to reperform or send its inaccurate, incomplete, and defective design to the field for construction. JEG's promise to reperform, at no cost to Coors, is no remedy at all after Coors has already incurred damages resulting from JEG's decision to send the defective design to the field and bill Coors for the field rework caused by the defective design.

JEG promised to "correct or revise any errors or deficiencies in its designs, drawings, specifications or other services" without additional compensation from Coors.  Alliance Agreement, Article 3, § 3.2 (FAC ¶ 280).  JEG's promise was illusory because JEG had unfettered discretion in choosing whether to correct its design defects or send the defective design to the field.  JEG could never be held liable for failure to reperform its services because its field subcontractors took care of the design problems through field rework, as directed by Jacobs, and Jacobs billed Coors for the rework activities.  For the same reasons explained above in Part II.C., JEG's unfettered choice of alternatives renders JEG's promise to reperform illusory and the promise is insufficient consideration.

Under Colorado law, "[t]here is an important qualification (to the rule that a promise is a good consideration for a promise) which is, that there must be an absolute mutuality of engagement so that each party may have an action on it, or neither will be bound."  *Gould v. Rite-Way Oil & Investment Co.*, 143 Colo. 65, 68, 351 P.2d 849, 850 (Colo. 1960).  Here, there is no mutuality of obligation because JEG had the option to either correct any errors or deficiencies in its designs, drawings, or specifications, or send the inaccurate and incomplete drawings and specifications to the field.  JEG chose the latter option, resulting in rework that Jacobs improperly billed to Coors.

JEG's unfettered discretion in deciding whether to reperform or send the defective design to the field for construction deprives Coors of any legal remedy, and this lack of remedy renders JEG's promise to perform illusory.  *Id.*

Jacobs' argument that Coors' remedy under Count Four for professional malpractice against JEG is limited to reperformance is unpersuasive because that is no remedy at all after

Coors has already incurred damages resulting from JEG's errors and deficiencies. Jacobs' motion for judgment on the pleadings to apply the reperformance clause to Coors' Count Four should be denied.

**B.**     **JEG's breach of its duty of good faith and fair dealing renders the reperformance provision unenforceable.**

As discussed above in Part II.D.,"[e]very contract in Colorado contains an implied duty of good faith and fair dealing." *Cary*, 68 P.3d at 466. "Whether a party acted in good faith is a question of fact which must be determined on a case by case basis." *Amoco Oil Co.*, 908 P.2d at 499.

"The duty of good faith and fair dealing may be relied upon when the manner of performance under a specific contract term allows for discretion on the part of either party." *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006) (internal quotation marks and citation omitted). "Discretion in performance occurs when the parties, at formation, defer a decision regarding performance terms of the contract leaving one party with the power to set or control the terms of performance after formation." *Id.* (internal quotation marks and citation omitted).

Here, Section 4.2 of the Alliance Agreement states in relevant part:

> [Coors] shall have no direction and control over [JEG] or [JEG's] employees and subcontractors or the manner and method utilized by [JEG] and is interested only in results obtained by [JEG]. [JEG] shall determine and have sole discretion over the manner and methods utilized to achieve the results desired by [Coors] and shall be solely responsible for the direction, control and supervision of its acts and those of its employees and subcontractors incident to the performance of this Agreement.

FAC, Exhibit 1, Engineering Services Agreement (the Alliance Agreement), § 4.2 (Doc. No. 138-1, at 3-4).

Because Section 4.2 gave JEG discretion to control the manner and methods, and the sole responsibility for the direction, control, and supervision of its acts and those of its subcontractors, including Briggs, the implied covenant of good faith and fair dealing applies to Section 4.2.  *See Parker*, 138 P.3d at 292.

JEG exercised its discretion in bad faith by not having Briggs' design done under the direct control and personal supervision of a registered Virginia professional engineer as required by law, and then by sending the inaccurate and incomplete design to the field for construction.  FAC ¶¶ 255-56, 260-63, 329.  JEG was obligated under the Alliance Agreement to correct or revise any errors or deficiencies in the design or specifications at its own expense.  FAC ¶ 280.  JEG failed to do that.  Instead of directing Briggs to provide a complete and accurate design, JEG chose to send the defective design to the field for construction, and Jacobs directed its field subcontractors to take care of the problems by performing rework that it billed to Coors.  Now that the project is finished, JEG argues that its liability should be limited to reperforming work when the reperformance of such work has no value.

JEG's right to limit its liability to reperformance is qualified by a duty to act in good faith.  JEG breached its duty of good faith and fair dealing and its motion should be denied.

### Conclusion

For the foregoing reasons, Coors respectfully requests that the Court deny Jacobs' Motion for Judgment on the Pleadings on the Application of Defendant's Contractual Limitation of Liability to Plaintiff's Tort Claims and send this case to trial on the merits.

Respectfully submitted April 29, 2011.

*s/ Charles W. Surasky*
Charles W. Surasky
cwsurasky@smithcurrie.com
Robert C. Chambers
rcchambers@smithcurrie.com
John M. Mastin, Jr.
jmmastin@smithcurrie.com
**SMITH, CURRIE & HANCOCK LLP**
2700 Marquis One Tower
245 Peachtree Center Avenue NE
Atlanta, Georgia 30303-1227
Tel: 404-521-3800
Fax: 404-688-0671

Randall H. Miller
randy.miller@hro.com
Michael J. Hofmann
michael.hofmann@hro.com
**HOLME ROBERTS & OWEN LLP**
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203-4541
Tel: 303-861-7000
Fax: 303-866-0200

*Attorneys for Plaintiff*
*Coors Brewing Company*

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on April 29, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

David G. Palmer
**GREENBERG TRAURIG LLP**
1200 17th Street, Suite 2400
Denver, Colorado 80202
Tel:   303-572-6500
Fax:   303-572-6540
Email:  palmerdg@gtlaw.com

and

Albert E. Peacock, III
Paul T. Ross
**KEESAL, YOUNG & LOGAN**
400 Oceangate
P.O. Box 1730
Long Beach, California  90801
Tel:   562-436-2000
Fax:   562-436-7416
Email:  al.peacock@kyl.com
           terry.ross@kyl.com

***Attorneys for Defendants and
Third-Party Plaintiffs
Jacobs Engineering Group Inc. and
Jacobs Construction Services, Inc.***

Christian H. Hendrickson
**SHERMAN & HOWARD L.L.C.**
633 17 Street, Suite 3000
Denver, Colorado 80202
Tel.: 303-297-2900
Fax: 303-298-0940
Email:
chendrickson@shermanhoward.com

and

Paul F. Keneally
**UNDERBERG & KESSLER LLP**
300 Bausch & Lomb Place
Rochester, New York 14604
Tel.: 585-258-2800
Fax: 585258-2821
Email:
pkeneally@underbergkessler.com

***Attorneys for Plaintiff and
Third-Party Defendant
Briggs of Burton, PLC***

_s/ John M. Mastin, Jr._
John M. Mastin, Jr.
**SMITH, CURRIE & HANCOCK LLP**

***Attorneys for Plaintiff
Coors Brewing Company***

- 22 -